**Nos. 2014-1335, -1368**

# United States Court of Appeals
*for the*
# Federal Circuit

APPLE INC., a California corporation,

*Plaintiff-Cross-Appellant,*

– v. –

SAMSUNG ELECTRONICS CO., LTD., a Korean corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 11-CV-01846-LHK, HONORABLE LUCY H. KOH

## OPENING BRIEF FOR DEFENDANTS-APPELLANTS

SUSAN R. ESTRICH
MICHAEL T. ZELLER
B. DYLAN PROCTOR
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

KATHLEEN M. SULLIVAN
WILLIAM B. ADAMS
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendants-Appellants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC*

*(For Continuation of Appearances See Inside Cover)*

Case: 14-1335 Document: 31 Page: 2 Filed: 05/23/2014

VICTORIA F. MAROULIS
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
(650) 801-5000

KEVIN A. SMITH
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

*Attorneys for Defendants-Appellants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC*

**CERTIFICATE OF INTEREST**

Counsel for Defendants-Appellants certifies the following:

**1. The full name of every party or amicus represented by me is:**

Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC

**2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

N/A

**3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

Samsung Electronics America, Inc. ("SEA") is a wholly-owned subsidiary of Samsung Electronics Co., Ltd. ("SEC"), a publicly held corporation organized under the laws of the Republic of Korea. SEC is not owned by any parent corporation and no other publicly held corporation owns 10% or more of its stock. No other publicly held corporation owns 10% or more of SEA's stock. Samsung Telecommunications America, LLC ("STA") is a wholly-owned subsidiary of SEA. No other publicly held corporation owns 10% or more of STA's stock.

Case: 14-1335 Document: 31 Page: 4 Filed: 05/23/2014

**4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:**

Quinn Emanuel Urquhart & Sullivan, LLP: Anne E. Abramowitz; William B. Adams; Anthony P. Alden; Carl G. Anderson; Brett J. Arnold; Katharine F. Barach; Robert J. Becher; Albert P. Bedecarre; Heather E. Belville; Kara M. Borden; Todd M. Briggs; Margret M. Caruso; Jon C. Cederberg; Melissa N. Chan; Prashanth Chennakesavan, Kenneth R. Chiate; Edward J. DeFranco; Susan R. Estrich; Michael L. Fazio; Ryan S. Goldstein; John S. Gordon; Diane Hutnyan; Kevin P.B. Johnson; Rachel H. Kassabian; Scott B. Kidman; Brian E. Mack; Victoria F. Maroulis; Joseph B. Martin; Joseph Milowic; Melissa Chan O'Sullivan; Thomas D. Pease John M. Pierce; William C. Price; B. Dylan Proctor; John B. Quinn; Carey R. Ramos; Kevin A. Smith; Christopher E. Stretch; Robert W. Stone; Kathleen M. Sullivan; Bill Trac; Mark Tung; Charles K. Verhoeven; Curran M. Walker; Scott L. Watson; Thomas R. Watson; Alan L. Whitehurst; Robert Wilson; Michael T. Zeller

Colt / Singer / Bea LLP: Benjamin L. Singer

Crone Hawxhurst LLP: Daryl M. Crone

DLA Piper US LLP: Thomas G. Pasternak

Hopenfeld Singer Rice & Saito: James E. Hopenfeld; Edward H. Rice; Marina N. Saito

Sheppard Mullin Richter & Hampton LLP: Gary L. Halling; Mona Solouki

Steptoe & Johnson LLP: John M. Caracappa; Paul A. Gennari; Michael R. Heimbold; Huan-Yi Lin; Kfir B. Levy; Dylan Ruga

Dated: May 23, 2014

Respectfully submitted,

By: /s/ Kathleen M. Sullivan
Kathleen M. Sullivan
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
kathleensullivan@quinnemanuel.com

*Attorney for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ viii

STATEMENT OF RELATED CASES ........ xvii

PRELIMINARY STATEMENT ........ 1

JURISDICTIONAL STATEMENT ........ 3

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF THE CASE ........ 4

A. The Design Patents ........ 4

B. The Trade Dresses ........ 6

C. The Utility Patents ........ 7

D. The Trial ........ 8

E. The District Court's Orders On Post-Trial Motions ........ 10

F. The Partial Damages Retrial ........ 11

G. The Final Judgment ........ 12

SUMMARY OF ARGUMENT ........ 14

STANDARD OF REVIEW ........ 19

ARGUMENT ........ 20

I. THE JUDGMENT OF $399 MILLION FOR DESIGN-PATENT INFRINGEMENT SHOULD BE REVERSED ........ 20

A. No Properly-Instructed Jury Could Find Design-Patent Infringement Liability ........ 21

  Case: 14-1335 Document: 34 Page: 7 Filed: 05/23/2014

1. The District Court Erroneously Instructed The Jury On Design-Patent Scope And Infringement ....................................22

(a) Scope And Functionality ..............................................22

(b) Deceptive Similarity ......................................................24

(c) Prior Art .........................................................................25

2. The Evidence Was Insufficient To Show Deceptive Similarity To The Patented Designs' *Ornamental* Features ..........................................................................26

(a) Scope And Functionality ..............................................26

(b) Deceptive Similarity ......................................................28

(c) Prior Art .........................................................................32

B. No Properly-Instructed Jury Could Award Samsung's Entire Profits For Design-Patent Infringement ..............................................35

1. The Design-Patent Damages Instructions Erred In Omitting A Causation Requirement .........................................36

2. The Design-Patent Damages Instructions Erred In Omitting A Nexus To The "Article Of Manufacture"..............38

3. A Reasonable, Properly-Instructed Jury Could Not Have Awarded $399 Million In Infringer's Profits.............................39

II. THE JUDGMENT OF $382 MILLION FOR TRADE-DRESS DILUTION SHOULD BE REVERSED .......................................................41

A. No Reasonable Jury Could Find Trade-Dress Dilution Liability .......43

1. The Evidence Was Insufficient To Show That The Asserted Trade Dresses Had The Requisite "Fame" ................43

(a) Advertisements ..............................................................44

(b) Sales of Goods ...............................................................46

(c) Actual Recognition ........................................................46

(d) Registration ....................................................................47

2. The Evidence Was Insufficient To Show That The Asserted Trade Dresses Were Nonfunctional ...........................47

(a) Unregistered Trade Dress .............................................48

(b) Registered Trade Dress..................................................52

3. The Evidence Was Insufficient To Show Likely Dilution Of The Asserted Trade Dresses ...............................................53

4. The Patent Clause Bars The Use Of Trade-Dress Law To Create A Perpetual Monopoly On Patentable Designs.............56

B. No Properly-Instructed Jury Could Award $382 Million In Trade-Dress Dilution Damages..........................................................57

1. Willfulness Was Not Established ............................................58

(a) The Trade-Dress Willfulness Instruction Was Erroneous....................................................................58

(b) The Evidence Was Insufficient To Show Willfulness .................................................................58

2. The Evidence Was Insufficient To Show Causation ................61

III. THE JUDGMENT OF $149 MILLION FOR UTILITY-PATENT INFRINGEMENT SHOULD BE REVERSED ...........................................64

A. No Reasonable Jury Could Find Liability As To The ’915 And ’163 Patents ..........................................................................64

1. Claim 8 Of The ’915 Patent Is Anticipated .............................64

2. Claim 50 Of The ’163 Patent Is Indefinite ...............................65

B. No Reasonable Jury Could Award $149 Million In Damages For Utility-Patent Infringement............................................................68

1. The Evidence Was Insufficient To Show $114 Million In Lost Profits For Infringement Of The ’915 Patent ...................68

2. The Evidence Was Insufficient To Show $35 Million In Reasonable Royalty Damages For Infringement Of The Three Utility Patents ....................72

IV. ALTERNATIVELY, THE COURT SHOULD GRANT A NEW TRIAL....................73

A. The Instructional Errors At A Minimum Require Vacatur And Remand....................73

B. A New Trial Is Warranted Because The $930 Million Judgment Is Excessive And Against The Weight Of The Evidence....................74

C. The District Court Abused Its Discretion By Excluding Evidence Of Samsung's Pre-iPhone Independent Development Of Smartphones....................76

CONCLUSION....................82

ADDENDUM

PROOF OF SERVICE

CERTIFICATE OF COMPLIANCE

Case: 14-1335 Document: 31 Page: 10 Filed: 05/23/2014

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
299 F.3d 1336 (Fed. Cir. 2002) ....................9

*Amini Innovation Corp. v. Anthony Cal., Inc.*,
439 F.3d 1365 (Fed. Cir. 2006) ....................21, 23

*Ancora Techs., Inc. v. Apple, Inc.*,
744 F.3d 732 (Fed. Cir. 2014) ....................20

*Apple Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012) ....................5

*Apple Inc. v. Samsung Elecs. Co.*,
695 F.3d 1370 (Fed. Cir. 2012) ....................36, 39

*Apple Inc. v. Samsung Elecs. Co.*,
735 F.3d 1352 (Fed. Cir. 2013) ....................10, 11, 36, 41

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
No. 12-cv-0630 (N.D. Cal.) ....................1

*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*,
501 F.3d 1314 (Fed. Cir. 2007) ....................25

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
457 F.3d 1062 (9th Cir. 2006) ....................48

*Avery Dennison Corp. v. Sumpton*,
189 F.3d 873 (9th Cir. 1999) ....................32, 43, 46

*Badger Meter, Inc. v. Grinnell Corp.*,
13 F.3d 1145 (7th Cir. 1994) ....................59, 61

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*,
750 F.2d 903 (Fed. Cir. 1984) ....................62

*Estate of Barabin v. AstenJohnson, Inc.*,
740 F.3d 457 (9th Cir. 2014) ....................................................................20

*Berry Sterling Corp. v. Prescor Plastics, Inc.*,
122 F.3d 1452 (Fed. Cir. 1997) ..................................................................23

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010)...................................................................................2

*Blockbuster Videos, Inc. v. City of Tempe*,
141 F.3d 1295 (9th Cir. 1998) ..............................................................59, 60

*Bobrick Washroom Equipment, Inc. v. American Specialties, Inc.*,
No. 12-56653, 2014 WL 1243801 (9th Cir. 2014).........................................43

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989).....................................................................................56

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988).....................................................................................19

*Buitton Et Fils S.A. v. J. Young Enterprises, Inc.*,
644 F.2d 769 (9th Cir. 1981) ......................................................................43

*Bush & Lane Piano Co. v. Becker Bros.*,
222 F. 902 (2d Cir. 1915) ...........................................................................38

*Bush & Lane Piano Co. v. Becker Bros.*,
234 F. 79 (2d Cir. 1916) .............................................................................38

*Calico Brand, Inc. v. Ameritek Imports, Inc.*,
527 F. App'x 987 (Fed. Cir. 2013) ...............................................................70

*Carbice Corp. v. Am. Patents Dev. Corp.*,
283 U.S. 27 (1931).........................................................................................3

*Carey v. Piphus*,
435 U.S. 247 (1978).......................................................................................5

*Cohen v. United States*,
100 Fed. Cl. 461 (Fed. Cl. 2011) .................................................................63

*Clamp Mfg. Co, Inc, v, Enco Mfg. Co., Inc.*,
870 F.2d 512 (9th Cir. 1989) ....................................................................48

*Commil USA, LLC v. Cisco Sys. Inc.*,
720 F.3d 1361 (Fed. Cir. 2013) ............................................................18, 73

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005) ............................................................66, 67

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
158 F.3d 1002 (9th Cir. 1998) .......................................................47, 50, 52

*Durling v. Spectrum Furniture Co.*,
101 F.3d 100 (Fed. Cir. 1996) ...................................................................21

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) .............................................23, 25, 26, 34

*Exxon Chem. Patents v. Lubrizol Corp.*,
64 F.3d 1553 (Fed. Cir. 1995) ...................................................................19

*In Re First Alliance Mortgage Co.*,
471 F.3d 977 (9th Cir. 2006) .....................................................................35

*First Brands Corp. v. Fred Meyer, Inc.*,
809 F.2d 1378 (9th Cir. 1987) ...................................................................45

*Gantt v. City of Los Angeles*,
717 F.3d 702 (9th Cir. 2013) .....................................................................19

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*,
162 F.3d 1113 (Fed. Cir. 1998) .................................................................25

*Gorham Co. v. White*,
81 U.S. 511 (1871)......................................................................................24

*Gracie v. Gracie*,
217 F.3d 1060 (9th Cir. 2000) ...................................................................58

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1 (1966)........................................................................................37

*Grain Processing Corp. v. Am. Maize-Prods.*,
185 F.3d 1341 (Fed. Cir. 1999) ....................68

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2000) ....................80

*Henderson v. George Washington Univ.*,
449 F.3d 127 (D.C. Cir. 2006)....................81

*Highway Cruisers of Cal., Inc. v. Security Indus., Inc.*,
374 F.2d 875 (9th Cir. 1967) ....................58, 59

*I.P. Lund Trading ApS v. Kohler Co.*,
163 F.3d 27 (1st Cir. 1998)....................42, 43, 57

*Ill. Watch Case Co. v. Hingeco Mfg. Co.*,
81 F.2d 41 (1st Cir. 1936)....................21

*InTouch Techs., Inc. v. VGO Comm'cns, Inc.*,
2014 WL 1855416 (Fed. Cir. May 9, 2014)....................20

*Int'l Seaway Corp. v. Walgreens Corp.*,
589 F.3d 1233 (Fed. Cir. 2009) ....................34

*Integrated Tech. Corp. v. Rudolph Techs., Inc.*,
734 F.3d 1352 (Fed. Cir. 2013) ....................19

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
456 U.S. 844 (1982)....................23, 47

*Lawson v. Trowbridge*,
153 F.3d 368 (7th Cir. 1998) ....................81

*Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*,
199 F.3d 1009 (9th Cir. 1999) ....................48, 50

*Lee v. Dayton-Hudson Corp.*,
838 F.2d 1186 (Fed. Cir. 1988) ....................21, 29

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
633 F.3d 1158 (9th Cir. 2011) ....................42

Case: 14-1335 Document: 33 Page: 14 Filed: 05/23/2014

*Lindy Pen Co. v. Bic Pen Corp.*,
982 F.2d 1400 (9th Cir. 1993) ....................................................................59, 61

*Lucent Techs. Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ..........................................................................35

*Mackie v. Rieser*,
296 F.3d 909 (9th Cir. 2002) .............................................................................36

*McEuin v. Crown Equip. Corp.*,
328 F.3d 1028 (9th Cir. 2003) ...........................................................................73

*Molski v. M.J. Cable, Inc.*,
481 F.3d 724 (9th Cir. 2007) .............................................................................74

*Moseley v. V Secret Catalogue, Inc.*,
537 U.S. 418 (2002)...........................................................................................54

*Nabisco, Inc. v. PF Brands, Inc.*,
191 F.3d 208 (2d Cir. 1999) ..............................................................................54

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 896 (2014)..........................................................................................66

*Nike, Inc. v. WalMart Stores, Inc.*,
138 F.3d 1437 (Fed. Cir. 1998) ..........................................................................37

*Nissan Motor Co. v. Nissan Computer Corp.*,
378 F.3d 1002 (9th Cir. 2004) ...........................................................................44

*Oakley, Inc. v. Int'l Tropic-Cal, Inc.*,
923 F.2d 167 (Fed. Cir. 1991) ...........................................................................25

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
122 F.3d 1396 (Fed. Cir. 1997) ..........................................................21, 23, 26, 27

*In re Omeprazole Patent Litig.*,
483 F.3d 1364 (Fed. Cir. 2007) ..........................................................................67

*Otis Clapp & Son Inc. v. Filmore Vitamin Co.*,
754 F.2d 738 (7th Cir. 1985) .............................................................................63

*PHG Techs. Inc. v. St. John Cos.*,
469 F.3d 1361 (Fed. Cir. 2006) ....................................................................23

*Pozen Inc. v. Par Pharm., Inc.*,
696 F.3d 1151 (Fed. Cir. 2012) ....................................................................20

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
702 F.3d 1351 (Fed. Cir. 2012) ....................................................................69

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
514 U.S. 159 (1995)......................................................................................47

*Rachel v. Banana Republic, Inc.*,
831 F.2d 1503 (9th Cir. 1987) ......................................................................42

*Read Corp. v. Portec, Inc.*,
970 F.2d 816, 825 (Fed. Cir. 1992) .........................................................21, 27

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ......................................................................36

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288 (Fed. Cir. 2010) ...............................................19, 21, 23, 25, 29

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995) ..................................................................36, 68

*Schnadig Corp. v. Gaines Mfg. Co.*,
No. C-1978, 1977 U.S. Dist. LEXIS 14906 (W.D. Tenn. July 20, 1977)..........38

*Seattle Box Co. v. Indus. Crating & Packing Inc.*,
731 F.2d 818 (Fed. Cir. 1984) ......................................................................66

*Secalt S.A. v. Wuzi Shenxi Constr. Mach. Corp.,*
668 F.3d 677 (9th Cir. 2012) ........................................................................50

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.*,
932 F.2d 1453 (Fed. Cir. 1991) ....................................................................70

*SynQor, Inc. v. Artesyn Techs., Inc.*,
709 F.3d 1365 (Fed. Cir. 2013) ....................................................................20

*TCPIP Holding Co. v. Haar Commc'ns, Inc.*,
244 F.3d 88 (2d Cir. 2001) ...........................................................................45

*Talking Rain Bev. Co. v. S. Beach Bev. Co.*,
349 F.3d 601 (9th Cir. 2003) ....................52

*TechSearch, LLC v. Intel Corp.*,
286 F.3d 1360 (Fed. Cir. 2002) ....................56

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
305 F.3d 894 (9th Cir. 2002) ....................41, 42, 43, 47

*Tie Tech, Inc. v. Kinedyne Corp.*,
296 F.3d 778 (9th Cir. 2002) ....................47, 51

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
532 U.S. 23 (2001)....................48, 51, 52

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ....................72

*Versa Prods. Co. v. Bifold Co.*,
50 F.3d 189 (3d Cir. 1995) ....................56

*Wal-Mart v. Samara Bros.*,
529 U.S. 205 (2000)....................44, 45, 54

*Smith v. Whitman Saddle Co.*,
148 U.S. 674 (1893)....................34

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ....................72, 73

*Wordtech Sys., Inc v. Integrated Networks Solutions, Inc.*,
609 F.3d 1308 (Fed. Cir. 2010) ....................74

*YKK Corp. v. Jungwoo Zipper Co., Ltd.*,
213 F. Supp. 2d 1195 (C.D. Cal. 2002) ....................60

*Yankee Candle Co. v. Bridgewater Candle Co.*,
259 F.3d 25 (1st Cir. 2001)....................45

*Young v. Grand Rapids Refrigerator Co.*,
268 F. 966 (6th Cir. 1920) ....................38

## Constitutional Provisions, Statutes & Rules

U.S. Const. Art. I, § 8, cl. 8 .......... 2, 26

15 U.S.C. § 1121 .......... 3

15 U.S.C. § 1128 .......... 3

15 U.S.C. § 1125(c)(1) .......... 41, 43

15 U.S.C. § 1125(c)(2)(A) .......... 42, 44

15 U.S.C. § 1125(c)(2)(A)(i) .......... 44, 45

15 U.S.C. § 1125(c)(2)(A)(ii) .......... 46

15 U.S.C. § 1125(c)(2)(A)(iii) .......... 46

15 U.S.C. § 1125(c)(2)(A)(iv) .......... 47

15 U.S.C. § 1125(c)(2)(B) .......... 52

15 U.S.C. § 1125(c)(4) .......... 42

15 U.S.C. § 1125(c)(5)(B) .......... 16

15 U.S.C. § 1125(c)(5)(B)(i) .......... 43, 58

28 U.S.C. § 1295(a)(1) .......... 3

28 U.S.C. § 1331 .......... 3

28 U.S.C. § 1367 .......... 3

28 U.S.C. § 1338 .......... 3

35 U.S.C. § 112(b) .......... 67

35 U.S.C. § 171(a) .......... 21

35 U.S.C. § 287(a) .......... 37

35 U.S.C. § 289 .......... 37, 38

Fed. R. Civ. P. 50(b) .......... 10

Fed. R. Civ. P. 59 ........................................................................................10, 75

Fed. R. Evid. 403 ............................................................................19, 76, 80, 81

Fed. R. Evid. 802..............................................................................................55

**Miscellaneous Authorities**

4 McCarthy on Trademarks (2008 ed.)............................... 43, 47, 54, 55, 59, 61, 62

## STATEMENT OF RELATED CASES

Defendants-Appellants identify the following appeals as related:

*Apple Inc. v. Samsung Elecs. Co.*, No. 2012-1105, 678 F.3d 1314 (Fed. Cir. 2012) (Bryson, J., joined by Prost, J.; opinion concurring in part and dissenting in part by O'Malley, J.).

*Apple Inc. v. Samsung Elecs. Co.*, No. 2012-1506 (Fed. Cir.) (voluntarily dismissed).

*Apple Inc. v. Samsung Elecs. Co.*, Nos. 2012-1600, 2012-1606, 2013-1146, 727 F.3d 1214 (Fed. Cir. 2013) (Prost, J., joined by Bryson & O'Malley, JJ.)

*Apple Inc. v. Samsung Elecs. Co.*, No. 2013-1129, 735 F.3d 1352 (Fed. Cir. 2013) (Prost, J., joined by Bryson & O'Malley, JJ.).

**PRELIMINARY STATEMENT**

In this case, the U.S. District Court for the Northern District of California (Koh, J.) awarded nearly $930 million to Apple Inc. ("Apple") for supposed design-patent infringement, trade-dress dilution and utility-patent infringement by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively, "Samsung"). The overwhelming bulk of that judgment concerns ***how Samsung's smartphones look***: The court awarded Apple $399 million for supposed infringement of three design patents claiming the rectangular shape, rounded corners, translucent screen, and colorful icons common to smartphones, and awarded Apple $382 million for supposed dilution of two trade dresses claiming similar features. Only a fraction of that judgment pertains to ***how Samsung's smartphones operate***: Apple was awarded $149 million for infringement of three of its utility patents. In another recent case in the same district court, involving the same district judge and same counsel and a similar number of accused products but involving only utility patents, Apple obtained a much smaller judgment of $119 million. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-cv-0630 (N.D. Cal.) (Dkt. 1884). The eye-popping judgment here thus resulted overwhelmingly from the supposed protection of mere appearances in complex, technological devices.

Such a judgment is unprecedented, and Samsung should not now be held liable under the Patent Act or trade-dress laws for designing and producing a rectangular, round-cornered, flat-screened, touch-screened phone. Such basic geometric shapes and concepts are "part of the storehouse of knowledge of all men … free to all men and reserved exclusively to none," *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010) (quotation omitted). Those shapes and concepts may not be monopolized under patent law, nor through the back door under the guise of trade-dress dilution law. To the contrary, granting a perpetual trade-dress monopoly over design elements that are the subject of patent protection, as the district court effectively did here, conflicts with the Patent Clause, in which the Framers allowed patent monopolies only for "limited Times." U.S. CONST. ART. I, § 8, cl. 8. The district court's rulings improperly allowed Apple to overreach in its claimed monopoly as to basic elements of design, and resulted in a grossly inflated judgment for design-patent infringement and trade-dilution. The district court also failed to apply required limitations on infringement and dilution damages, and the $781 million judgment on those theories should be reversed or vacated.

The $149 million judgment for infringement of Apple's utility patents likewise should be overturned. Two of Apple's three asserted patents are invalid as indefinite or anticipated, and the evidence fails to support any finding that utility patent-infringement caused Apple *any* loss.

At a minimum, a new trial is required in light of the instructional errors that infected the design-patent and trade-dress dilution judgment, and independent evidentiary errors that prejudiced Samsung's ability to counter Apple's relentless and improper accusations of "copying." This Court should accordingly reverse or vacate.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367. This Court has jurisdiction over Samsung's appeal of the district court's March 6, 2014 final judgment pursuant to 28 U.S.C. § 1295(a)(1). Samsung filed a timely notice of appeal on March 6, 2014. A08300-01.

## STATEMENT OF THE ISSUES

1.      Whether the judgment of $399 million in infringer's profits for infringement of Apple's D'677, D'087, and D'305 patents should be reversed.

2.      Whether the judgment of $291 million in infringer's profits and $91 million in lost profits for dilution of Apple's registered and unregistered trade dress should be reversed.

3.      Whether the judgment of $114 million in lost profits for infringement of Apple's '915 patent and $35 million in reasonable royalties for infringement of Apple's '163, '381, and '915 patents should be reversed.

4.     Whether, in the alternative, the judgment should be vacated and the case remanded for new trial based on (a) instructional errors as to design-patent infringement and trade-dress dilution; (b) the excessiveness of the judgment, which is against the weight of the evidence; and/or (c) improper exclusion of evidence concerning Samsung's independent development of its designs.

## STATEMENT OF THE CASE

This appeal arises from a final judgment after jury trial awarding $929,780,039 in damages to Apple. Apple's complaint accused twenty-eight Samsung products of infringing four design and three utility patents and of infringing and diluting one registered trade dress and three unregistered trade dresses.    A04000-63.    The jury found that twenty-three products, in various combinations, infringed three design patents (D'087, D'677, D'305), diluted two trade dresses, and infringed three utility patents ('381, '915, '163).  A00632-51

### A.     The Design Patents

Apple's D'677 patent claims the design of the front face of an "electronic device":



A01314. This Court has explained that it "shows a black, highly polished, reflective surface over the entire front face of the phone." *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1317 (Fed. Cir. 2012) ("*Apple I*").

Apple's D'087 patent likewise claims the design of a portion of an "electronic device":

A01302. The broken lines indicate that "[t]he parts of the side beyond the bezel, as well as the phone's back, are disclaimed." *Id.*

Apple's D'305 patent claims "the ornamental design for a graphical user interface for a display screen or portion thereof":

**FIG. 1**

A01291.

**B. The Trade Dresses**

Apple's registered trade dress claims the configuration of a device with "rounded silver edges, a black face, and an array of 16 square icons with rounded edges" that are described in further detail in the registration:

A01330-31.

Apple's unregistered trade dress claims a rectangular product with four evenly rounded corners, a flat clear surface covering the front of the product, the appearance of a metallic bezel around the flat clear surface, a display screen under the clear surface with substantial black borders above and below the screen and narrower black borders on either side, and (when the device is on) a row of small dots, a matrix of colorful square icons with evenly rounded corners, and an unchanging bottom dock of colorful square icons with evenly rounded corners set off from the other icons on the display. A07361.

As asserted, the Apple trade dresses did not include the Apple logo, the Apple trademark, or the round "home button" that appears at the bottom of every iPhone. *Id.*; A01330-31.

### C. The Utility Patents

The '381 patent (Claim 19) discloses a "snap-back" feature that allows a user to scroll beyond an electronic document's edge on a touch screen, such that an area beyond that edge is displayed but the document snaps back when the user lifts his finger so that the document's edge is aligned with the screen's edge. A1082-83.

The '915 patent (Claim 8) describes a computer-based method for distinguishing between scroll and gesture operations on a touch screen. The claimed computer instructions distinguish between a single input point and multiple input points, and perform a scroll or zoom on that basis. A01136.

The ’163 patent (Claim 50) relates to a technique for enlarging and translating a “structured electronic document” on a touch screen, and requires: (1) enlarging and translating a structured electronic document to “substantially center” a first box of content in response to a first gesture; and (2) translating the structured electronic document to “substantially center” a second box of content in response to a second gesture. A01250.

### D. The Trial

In August 2012, the district court held a thirteen-day jury trial (A08424-38) limiting each side to only twenty-five hours (A08392). Although Apple’s key theme at trial was that Samsung copied Apple’s innovations, the district court made numerous rulings hampering Samsung’s ability to rebut that charge: the court precluded Samsung from introducing evidence that it had independently developed a smartphone that looked similar to the later-released iPhone and that Apple had even accused of infringement until Samsung demonstrated that it was created prior to the release of the iPhone (A06832-33; A04024; A07464-73; A8651-8659; A40348-50), from introducing documents or calling its key witness on innovation (*id.*; A07475-7524; A8514-636; A07371-463), and from explaining how Samsung’s products differ from Apple’s (A40853:3-20) and each other (A40952-53). The court also denied (A43774) Samsung’s request (A06862; A06935; A07108; A07219-20) for a jury instruction that “copying is not an

element of patent infringement," despite Apple presenting copying as a central trial theme and despite clear law that copying "is of no import on the question of whether the claims of an issued patent are infringed," *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002).

Over Samsung's objection (A43865-68), the verdict form provided for a single damages award for each product without particularizing by patent/trade dress or damages theory. A00646-47; A43924-28. On August 24, 2012, the jury returned a verdict awarding Apple $1,049,343,540 in damages on twenty-three Samsung products and no damages on five products. A00646. As the district court concluded in ruling on post-trial motions (A00097-98; A24945), the basis for the jury's award could be reverse-engineered as follows:

For each of the eleven Samsung phones (Captivate, Continuum, Droid Charge, Epic 4G, Galaxy S II 2 (AT&T), Galaxy S II (T-Mobile), Galaxy S II (Epic 4G Touch), Galaxy S II (Skyrocket), Gem, Indulge, and Infuse 4G) for which the jury found infringement of one or more design patents but no trade-dress dilution, the jury awarded the entirety of Samsung's profits, which it determined to be 40% of Apple's claimed figure (reflecting a dispute over deductible costs). For each of the five Samsung phones (Fascinate, Galaxy S 4G, Galaxy S Showcase (i500), Mesmerize, and Vibrant) for which the jury found infringement of one or more design patents *and* trade-dress dilution, the jury awarded Apple's claimed

lost profits *plus* the same 40% of Apple's claimed figure for Samsung's profits. For five of the seven Samsung products that were found to infringe only utility patents (Exhibit 4G, Galaxy Tab, Nexus S 4G ('381 & '915), Replenish ('163 and '381), and Transform ('915)), the jury awarded half of Apple's claimed royalties. For the remaining two Samsung products found to infringe only utility patents, the jury awarded 40% of Apple's claimed figure for Samsung's profits on the Galaxy Prevail, and $833,076 for the Galaxy Tab 10.1 (WiFi).

**E. The District Court's Orders On Post-Trial Motions**

After trial, Samsung moved under Fed. R. Civ. P. 50(b) for judgment as a matter of law ("JMOL") and 59 for new trial or remittitur. A07605-08128. Apple moved under those rules for JMOL, new trial, and an amended judgment. A8669. The district court denied Apple's motions for permanent injunction (A08258-59) and willfulness enhancements (A08461-62). It also denied Samsung's motions (A08129-48; A00002-89) except insofar as it granted Samsung JMOL that infringement of the utility and design patents was not willful, and vacated and granted new trial as to $410,020,294 in damages on twelve Samsung products as to which Apple failed to provide a correct "notice date" and on one product on which the jury had erroneously awarded infringer's profits for utility-patent infringement.

A00110-12; A08169.[1]  The court declined to order new trial on five other products, despite similarly incorrect notice dates, because they had been found both to infringe design patents and to dilute unregistered trade dress, and the court ruled that notice was not required for trade-dress dilution.  A00109-10.[2]

### F.    The Partial Damages Retrial

In November 2013, the district held a five-day partial retrial on damages before a second jury, conducted under "Groundhog Day" rules (A08342-43) that precluded any challenges to previously decided issues.  This time the jury awarded Apple $290,456,793 in damages.  A00652-53.

For each of six Samsung devices found to infringe only utility patents (Exhibit 4G, Galaxy Prevail, Galaxy Tab, Nexus S 4G, Replenish, and Transform), the jury awarded 100% of Apple's claimed lost profits and reasonable royalty.  A00119.  For each of seven Samsung devices found to infringe both design and utility patents (Captivate, Continuum, Droid Charge, Epic 4G, Gem, Indulge, and Infuse 4G), the jury awarded 100% of Apple's claimed lost profits and reasonable

---

[1]    These thirteen products were:  Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Galaxy Prevail, Galaxy Tab, Gem, Indulge, Infuse 4G, Nexus S 4G, Replenish, and Transform.    The court initially vacated the award of $40,494,356 for the Galaxy S II AT&T, but ultimately reinstated it.  A08169.

[2]    The district court's post-trial rulings are reported at 932 F. Supp. 2d 1076 (N.D. Cal. 2013); 926 F. Supp. 2d 1000 (N.D. Cal. 2013); 920 F. Supp. 2d 1116 (N.D. Cal. 2013); 920 F. Supp. 2d 1079 (N.D. Cal. 2013); and 909 F. Supp. 2d 1147 (N.D. Cal. 2012).

royalty, plus the exact average of the parties' respective total Samsung profits calculations (which amounted to 61.4% of Apple's claimed infringer's profits). A00119-20; A00123; A00128 .

The district court denied Samsung's post-retrial motions (A08463-512) for JMOL, new trial, and/or remittitur.  A00116-44.

### G.    The Final Judgment

On March 6, 2014, the district court entered final judgment for Apple in the amount of $929,780,039.  A00001.  This amount represented the $1,049,343,540 award from the first trial, minus the vacated $410,020,294, plus the $290,456,793 awarded on retrial.  A00646; A00114; A08168-69; A00652; A00116.

Divided by damages theory, that judgment comprises $689,492,147 in Samsung's profits ($398,940,864 for design-patent infringement and $290,551,283 for dilution of unregistered trade dress), $204,909,622 in Apple's lost profits ($113,777,343 for utility-patent infringement and $91,132,279 for dilution of unregistered trade dress), and $35,458,270 in reasonable-royalty damages.  A00089-A00144.

Divided by cause of action, the judgment awards $398,940,864 for design-patent infringement, $381,683,562 for dilution of Apple's unregistered trade dress, and $149,235,613 for utility-patent infringement.

And divided by product, the judgment reflects ten damages awards from the first trial:

Fascinate ($143,539,179)

Galaxy S 4G ($73,344,668)

Galaxy S II (AT&T) ($40,494,356)

Galaxy S II (Epic 4G Touch) ($100,326,988)

Galaxy S Showcase (i500) ($22,002,146)

Galaxy S II (Skyrocket) ($32,273,558)

Galaxy S II (T-Mobile) ($83,791,708)

Galaxy Tab 10.1 (WiFi) ($833,076)

Mesmerize ($53,123,612)

Vibrant ($89,673,957)

and thirteen more from the retrial:

Captivate ($21,121,812)

Continuum ($6,478,873)

Droid Charge ($60,706,020)

Epic 4G ($37,928,694)

Exhibit 4G ($2,044,683)

Galaxy Prevail ($22,143,335)

Galaxy Tab ($9,544,026)

Gem ($4,831,453)

Indulge ($9,917,840)

Infuse 4G ($99,943,987)

Nexus S 4G ($10,559,907)

Replenish ($3,046,062)

Transform ($2,190,099).

## SUMMARY OF ARGUMENT

The judgment should be reversed, or at the very least vacated and remanded, for any of several, independent reasons.

**1.** The $399 million judgment for design-patent infringement should be reversed because no reasonable, properly-instructed jury could find infringement or damages. *First*, as to liability, the district court erred as a matter of law in instructing the jury on design-patent scope and infringement. Specifically, the district court failed to instruct the jury to "factor out" the unprotectable structural and functional elements of Apple's designs (*e.g.*, large rectangular form with rounded corners, grid of icons, etc.), thereby allowing Apple to obtain a monopoly over a basic geometric shape and functional features of a smartphone. It compounded this error, moreover, by ruling that the lack of real-world deception is irrelevant to design-patent infringement and by minimizing the role of prior art in the infringement analysis, notwithstanding that prior art can (and does here) render

small differences significant. While these instructional errors support a new trial, no such trial is necessary here and judgment should be entered for Samsung because the record is devoid of any evidence of deceptive similarity as to the *ornamental* features of Apple's designs, particularly when considering the prior art.

*Second*, even if the liability judgment is not reversed, the award of infringer's profits should be reversed because the district court erroneously instructed the jury that Apple was entitled to *all* profits that Samsung earned on devices found to infringe any Apple design patent, disregarding bedrock causation principles and statutory terms that limit infringer's profits to amounts derived from the "article of manufacture" to which the design is applied (here, the phone's front face or graphical user interface). These instructional errors led to a massive award despite the absence of evidence that the patented designs caused any sales of Samsung products, much less all Samsung's profits.

**2.** The $382 million judgment for trade-dress dilution should be reversed because no reasonable jury could find dilution liability or damages. *First*, as to liability, the district court erred in denying Samsung's JMOL motion premised on Apple's failure to prove fame or functionality, and the absence of actual or likely dilution. With respect to fame, no reasonable jury could find that Apple's claimed trade dresses were so widely recognized by the general public as to be famous designations of source by July 2010, when Samsung's use of the accused designs

began.  Apple's iPhone advertisements, sales of iPhones generally, surveys that did not test fame, and registration of some (but not all) of the trade dress at issue fail to show wide recognition of the trade-dresses-in-suit as *designations of source*.  With respect to functionality, no reasonable jury could find the registered trade dress covering a graphical user interface non-functional, and each of the features of Apple's unregistered trade dress—from rounded corners to a display screen under a clear surface—serves functional purposes as well.  And with respect to likely dilution, no reasonable jury could find likely blurring given the absence of evidence of actual blurring despite extensive sales of the accused products, the lack of intent by Samsung to create an association with the trade dresses, and the absence of evidence supporting other statutory factors.  A finding of trade-dress dilution here would grant a perpetual monopoly over design elements absent consumer confusion in violation of the limited terms required by the Patent Clause.

*Second*, even if trade-dress dilution liability is upheld, the trade-dress damages award should be reversed.  The court erred as a matter of law in failing to guide the jury on the element of willfulness required for an award of damages, and no properly-instructed jury could have found that Samsung willfully intended to trade on the recognition of Apple's asserted trade dresses or intended to harm Apple's reputation, as required by 15 U.S.C. § 1125(c)(5)(B).  Moreover, the awards of infringer's profits and lost profits should be reversed because there is no

evidence that Samsung gained any sales or that Apple lost any brand value or goodwill *because of* dilution, nor that all of Samsung's profits from the five products found to dilute Apple's trade dress were *derived from* the diluting trade dress.

**3.** The $149 million judgment for utility-patent infringement should be reversed. *First*, the district court erred in entering judgment on liability for infringement of the '915 and '163 patents. Samsung was entitled to JMOL that claim 8 of the '915 patent is invalid as anticipated because that claim covers a technique for using a single finger on a touchscreen to scroll a document or two fingers to zoom—the precise gestures disclosed in the earlier Nomura patent application. The district court's ruling that Nomura does not disclose an "event object" (a term used in claim 8) rests on an artificial limitation found nowhere in the '915 patent.

The district court also erred as a matter of law in ruling that the term "substantially centered" in claim 50 of the '163 patent is not indefinite. Claim 50 requires first and second "boxes of content" to be "substantially centered" on a touchscreen display, but provides no objective standard to measure the scope of the term "substantially." The district court relied on extrinsic evidence that did not show that a person of skill in the art would know whether a box that was not *exactly* centered was nevertheless "substantially centered."

*Second*, even if the liability judgment is not reversed, the district court erred in denying Samsung JMOL on lost profits for infringement of the '915 patent and reasonable royalties for all three utility patents. As to lost profits, no reasonable jury could have found either an absence of non-infringing alternatives to the '915 patent or that the advantages of that patent drove consumer demand, or that consumers purchased Samsung's products because of the '915 patented feature.

As to reasonable royalty, no reasonable jury could have awarded $35 million, where Apple's expert provided only a cursory explanation of how she arrived at her proffered rate and the district court filled the evidentiary void by relying on an expert report that was *not* before the jury.

**4.** Alternatively, the judgment should be vacated and the case remanded for new trial. *First*, had the district court properly instructed the jury as to the standard for design-patent infringement, the jury easily could have found that Samsung did not infringe Apple's properly construed design patents. Likewise, had the district court properly instructed the jury as to the applicable trade-dress dilution standards (including as to causation, willfulness, and/or apportionment), the jury easily could have found no damages on either theory or awarded at most a fraction of the judgment. *Second*, the judgment of liability and damages is against the great weight of the evidence and excessive, warranting a new trial at a minimum. *Third,* a new trial is warranted because the district court abused its

discretion in excluding under Fed. R. Evid. 403 Samsung's evidence of its pre-iPhone designs to rebut Apple's allegations of copying.

## STANDARD OF REVIEW

Applying regional circuit law (here that of the Ninth Circuit), this Court reviews the denial of a JMOL motion *de novo*, reversing "when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1356 (Fed. Cir. 2013) (quotation omitted).

This Court reviews the legal sufficiency of jury instructions *de novo. Commil USA, LLC v. Cisco Sys. Inc.*, 720 F.3d 1361, 1365 (Fed. Cir. 2013); *Gantt v. City of Los Angeles*, 717 F.3d 702, 706 (9th Cir. 2013). A new trial is warranted when an instruction was erroneous and "could have" changed the result. *Commil*, 720 F.3d at 1366-67. Where, however, "the evidence presented in the first trial would not suffice, as a matter of law, to support a jury verdict" for the plaintiff under correct instructions, judgment may be entered for the defendant "without a new trial." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 513 (1988); *Exxon Chem. Patents v. Lubrizol Corp.*, 64 F.3d 1553, 1558-61 (Fed. Cir. 1995) (same for infringement).

This Court reviews design-patent claim construction and utility-patent indefiniteness *de novo. Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94

(Fed. Cir. 2010); *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 734 (Fed. Cir. 2014). "Anticipation is a question of fact, and this court reviews the jury's findings for substantial evidence." *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1373 (Fed. Cir. 2013).

This Court reviews the denial of a new trial motion for abuse of discretion, reversing "if the court made incorrect and prejudicial admissibility rulings, or the verdict is contrary to the great weight of the evidence." *InTouch Techs., Inc. v. VGO Comm'cns, Inc.*, 2014 WL 1855416, *8 (Fed. Cir. May 9, 2014) (citing and applying Ninth Circuit law). Likewise, applying Ninth Circuit law, this Court reviews orders excluding evidence for abuse of discretion, granting a new trial absent a showing that the error was harmless. *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1161 n.6 (Fed. Cir. 2012) (regional circuit law applies); *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 462, 464-65 (9th Cir. 2014).

## ARGUMENT

### I. THE JUDGMENT OF $399 MILLION FOR DESIGN-PATENT INFRINGEMENT SHOULD BE REVERSED

The district court's instructional errors on design-patent scope and infringement effectively granted Apple a monopoly over the basic geometric shape and functional features of a smartphone, and allowed the jury to award Apple the entirety of Samsung's profits on sixteen products based on design features that make up only a minor portion of a phone. No properly-instructed jury could have

found design-patent infringement or such disproportionate damages on the record here, and the $399 million design-patent judgment should be reversed or vacated.

### A. No Properly-Instructed Jury Could Find Design-Patent Infringement Liability

The scope of design-patent protection is limited by the Patent Act to the "new, original and ***ornamental*** design for an article of manufacture." 35 U.S.C. § 171(a) (emphasis added). Design patents do not protect "structural or functional aspects" or "basic configuration[s]," *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988); "general design concept[s]," *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997), *see Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104 (Fed. Cir. 1996) (same); or "essential characteristics" such as being "relatively thin" and "sufficiently small to be readily held in the hand," *Ill. Watch Case Co. v. Hingeco Mfg. Co*., 81 F.2d 41, 45 (1st Cir. 1936).

Moreover, design-patent infringement analysis must rigorously factor out unprotected functional elements. *Richardson*, 597 F.3d at 1293-94. Infringement occurs only if "an ordinary person 'would be deceived by reason of the common features in the claimed and accused designs ***which are ornamental***.'" *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) (emphasis added) (quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 825 (Fed. Cir. 1992)).

The district court's instructions erred as to each of these basic rules.

**1. The District Court Erroneously Instructed The Jury On Design-Patent Scope And Infringement**

**(a) Scope And Functionality**

The district court failed to require, or even allow, the jury to exclude from its infringement analysis any of the structural or functional attributes of Apple's designs. The court instructed over Samsung's objection (A06936; A07164-65; A07220-22; A07239-43; A43775; A43916-18) that the "scope of [Apple's design patent] claim encompasses ***the design's visual appearance as a whole***" (A01390-91 (emphasis added)). The court instructed over Samsung's objection (A06930-31; A06936-37; A07242-43; A07168-69; A43918-20) that the jury "must find" infringement if "***the overall appearance*** of an accused Samsung design is substantially the same as ***the overall appearance*** of the claimed Apple design patent" and that the jury "should consider ***any*** perceived similarities" in making this comparison. A01394-95 (emphases added). The court instructed over Samsung's objection (A06342-45; A06745; A06936; A07108; A07175; A07233; A07242; A43920) that design patents protect the "***shape or configuration***" of an article of manufacture, without any limitations for structural, functional or any other aspects. A01401; *see* A40261:6-11 (similar); A40297:1-4 (similar). And, despite Samsung's requests, the district court neither itself construed the design patents so as to properly limit their scope nor instructed the jury to factor out

unprotected elements when comparing Apple's design patents to the accused products. A06936; A43775; A43918-20.

Those instructions reflected fundamental error. "Where a design contains both functional and non-functional elements, the scope of the claim ***must*** be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn*, 122 F.3d at 1405 (emphasis added) (quoted in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (*en banc*)). And infringement analysis ***must*** "factor[] out" such unprotected aspects so as to focus on "[ornamental] aspects alone." *Richardson*, 597 F.3d at 1293-94.

Elements are unprotected if their designs are "dictated by their functional purpose," *id.* at 1294, or cover the "structural … aspects of the article," *Lee*, 838 F.2d at 1188. Similarly, a design is unprotected if "alternative designs would adversely affect the utility of the specified article." *PHG Techs. Inc. v. St. John Cos.*, 469 F.3d 1361, 1365-67 (Fed. Cir. 2006) (quoting *Berry Sterling Corp. v. Prescor Plastics, Inc*. 122 F.3d 1452, 1456 (Fed. Cir. 1997)); *see also Amini*, 439 F.3d at 1371 (design is functional "if it affects the cost or quality of the article") (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982)).

In denying Samsung's JMOL motion, the district court erred in stating that "a 'filtering' instruction" is appropriate only in the context of "summary judgment or a bench trial," but not "when instructing a jury." A00051. As shown above, a

design's unprotected attributes may *never* be used to support infringement, regardless of procedural posture. The district court's infringement instructions were erroneous as to design-patent scope.

**(b) Deceptive Similarity**

The district court's infringement instructions were also erroneous with respect to the deceptive similarity requirement. Similarities between a patented design and an accused product must be sufficient to "deceive" an ordinary observer, "inducing him to purchase one supposing it to be the other." *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). While the court properly restated part of the *Gorham* rule (A01394), it then told the jury that "[y]ou do ***not*** need, however, to find that any purchasers ***actually were deceived or confused*** by the appearance of the accused Samsung products" (A01394 emphasis added), having overruled Samsung's objections to those instructions (A06930-31; A43816-21) and rejected Samsung's requested clarification that "the presence or absence of actual deception may be relevant to whether the hypothetical ordinary observer would be deceived" (A43820-21).

The court's instruction thus invited the jury to consider irrelevant the lack of any real-world deception. That was error, for deception is the touchstone of design-patent infringement, which turns on "whether an ordinary observer would be deceived into thinking that any of the [accused] designs were the same as [the]

patented design." *Richardson,* 597 F.3d at 1295; *see Egyptian Goddess,* 543 F.3d at 670 (same); *Oakley, Inc. v. Int'l Tropic-Cal, Inc.*, 923 F.2d 167, 169 (Fed. Cir. 1991) (same); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998) (focusing on whether "a purchaser would be misled"). Thus, *actual* purchaser deception—and the lack thereof as here—is relevant in assessing whether the *ordinary* purchaser "would be" deceived, and the district court erred as a matter of law in suggesting the opposite to the jury.

**(c) Prior Art**

The district court also erred in inviting the jury to disregard or minimize prior art in its infringement analysis. Over Samsung's objection (A06930-31; A07168-69; A43917-20), the district court relegated considerations of prior art to a series of optional "guidelines" that need not be considered in determining "whether the overall appearances of the accused design and the claimed design are substantially the same." A01394.

That was incorrect, for deceptive similarity must be assessed through the eyes of a hypothetical ordinary observer—"a person who is either a purchaser of, or sufficiently interested in, the item that displays the patented designs and who has the capability of making a reasonably discerning decision," *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007)—and that observer must be familiar with all prior art. As this Court has cautioned,

"differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian Goddess*, 543 F.3d at 678. The district court's instructions erred in making prior art a mere option for the jury to consider.

**2. The Evidence Was Insufficient To Show Deceptive Similarity To The Patented Designs' *Ornamental* Features**

The above design-patent instructional errors warrant reversal of the judgment (or at a minimum, remand for new trial, *see infra* Part IV.A), for no reasonable, properly-instructed jury could have found design-patent liability on the record here, even taking all inferences in favor of Apple. It was thus error for the district court to deny JMOL to Samsung on design-patent liability.

**(a) Scope And Functionality**

The evidence was insufficient, *first*, to support deceptive similarity as to the ***ornamental*** features of Apple's designs. Apple's experts focused on the "substantially similar overall visual impression" between Apple's designs and the accused products (A41381 (Kare); A41066 (Bressler)), and formed their opinions of "overall similarity" without excluding any functional elements of the designs (A41093, A41210 ("how [the phones] function really was insignificant" to hardware expert); A41447, A41474, A43486 (GUI expert did not consider functionality at all). Such opinions provide no evidence of similarity based ***solely*** on protected ***ornamental*** elements, as required. *See OddzOn*, 122 F.3d at 1405-06

(affirming summary judgment of non-infringement based on lack of evidence of similarity limited to "***ornamental*** aspects") (emphasis added); *Read*, 970 F.2d at 825-26 (reversing denial of JMOL of non-infringement where evidence of overall similarity was not tied to "the common features in the claimed and accused designs ***which are ornamental***") (emphasis added).

The uncontroverted evidence at trial showed the claimed features in Apple's design patents to be overwhelmingly not ornamental, but structural or functional. As to the D'677 and D'087 patents, Apple's own design expert (Peter Bressler) agreed that "having a display element" is "necessary or functional for a smartphone" and that having "a clear cover over the display element" is "absolutely functional." A41200-03. Philip Schiller, a senior Apple design executive, acknowledged that a smartphone must have a speaker at the top in order to hear during phone calls. A40681; *see* A42617-18 (Samsung's expert Itay Sherman explaining that speaker must be at top of device). And the basic concept of an overall rectangular form with rounded corners reflects a structural element that cannot be monopolized. *E.g., OddzOn*, 122 F.3d at 1405. Likewise, as to the D'305 patent, Apple's expert admitted that icons are needed to communicate information and that an interface "must be organized so that there's enough space" for finger-operation (A41456-60; A41471-72; A41478-80), and the concept of a

grid of colorful icons is an element Apple does not own, as Apple's expert admitted (A41442-44; A41456-57; A41479-80).

The uncontroverted evidence also showed that Apple's designs offer significant utilitarian advantages over alternative designs, thus further demonstrating their functionality. Apple admitted that "larger screens" are an "advantage" or "benefit" that "the consumer wants" to view media. A40676-77; *see* A40873:18-19 ("you really do just want the device to be just one giant screen"). The screens on the phones are typically centered as they comprise the "main components" of the phones. A40871-72. Rounded corners make a smartphone more durable if dropped, easier to place in a pocket, and more comfortable to hold. A40869:13-40870:3; *see* A40682:13-15, A42613:12-42616:2. And Apple's designers acknowledged that the rounded rectangular form provides "size and shape/comfort benefits" and also is more "efficient." A28590; *see* A42612:3-22 .

**(b) Deceptive Similarity**

Once the functional features are properly factored out, the evidence was insufficient, *second*, to support ***deceptive*** similarity. Apple failed to present evidence that any purchaser "would ever be deceived" when purchasing an accused product, and its expert conceded that "by the end of the smartphone purchasing process, the ordinary consumer would have to know which phone they were buying" and that no evidence shows that "any consumer has ever purchased a

Samsung smartphone or an Apple smartphone believing it was actually a device manufactured by the other" or that "consumers have been confused at any time when purchasing Apple devices or Samsung devices into thinking they are devices from the other manufacturer." A41104-08. Apple's GUI design expert likewise did not consider "consumer behavior" at all. A41428-29. A properly-instructed jury would have considered this lack of any proof of actual consumer deception.

Moreover, as in *Richardson* and *Lee*, any deceptive similarity disappears when structural and functional elements are factored out, as they would have been by a properly-instructed jury:

**D'677:** Once rectangular form, rounded corners and a large rectangular display are ignored, the Samsung designs and the D'677 patent appear substantially different:

**D'677 (A01314)** | **Infuse 4G (A24736)** | **GSII (T-Mobile) (A24719)**

The same is true even if only the functional display screen is factored out:

**D'677 (A01314)** | **Infuse 4G (A24736)** | **GSII (T-Mobile) (A24719)**

While Apple's designs are "simple," "pure," and lacking in ornamentation (A40522-23), and depict only a lozenge shape (for the speaker) embedded in a rectangle with rounded corners and borders with specific proportions, Samsung's phones feature (i) metallic words at the top and bottom; (ii) multiple icons depicting touch keys at the bottom; (iii) visible sensors at the top left (A41165-69); (iv) a perforated more elongated speaker cover closer to the top (A41180-83); (v) rounded corners with different radii (A41145-46); and (vi) borders that are smaller at the top and bottom and wider on the sides. *See also* A20007; A20009; A20012; A20014; A20016; A20018; A20025; A20028-32; A24691-749.

**D’087**: Once the unprotected concept of a bezel is factored out, the D’087 patent features a bezel of uniform thickness as an important characteristic (A41133-34), while the Samsung phones found to infringe that patent include a bezel of uneven thickness:

A01302; A41134-35; A24712.

**D’305**: And once the unprotected concept of a grid of colorful icons is factored out, the Samsung GUIs differ substantially from the D’305 patent:

 

D’305 (A01289)

Fascinate (A24702)

The two GUIs differ as to: (i) arrangements of the icons (Samsung’s icons are alphabetical (A41453) and fill in Apple’s missing row ); (ii) the bar and symbols at the top (A41383-84; A41439); (iii) the aspect ratios of the screens; (iv) the use of page indicators at the top (A41384-85); (v) the use, size and color of a bottom dock of icons; and (vi) the appearance of individual icons (only the clock and phone bear any resemblance) (A41430-39; A41448). *See also* A2469-993; A24708; A24711; A24724; A24727; A24732-35; A24741.

**(c) Prior Art**

A properly-instructed jury also would have compared Samsung’s products with Apple’s patented designs in light of the prior art, which, as Apple admitted (A41113-24), discloses “rectangular” overall shapes with “rounded corners,” “large display screen[s]” that are “balanced vertically and horizontally within the

design," "narrower lateral borders," "larger borders above and below the screen," a bezel, and "lozenge shaped" speakers placed in the top border:

**A27590** **A29569** **A29573** **A24675**

**A05684**

Apple had to rely on "little details" (A43624) to distinguish its designs from this prior art, including (i) different width of "lateral borders" (A41116, A41157), and (ii) different location of "lozenge shaped speaker opening" (A41179). *See also*

A41136, A41160. Differences as to such "little details" would have been equally apparent to the ordinary observer comparing Apple's designs and Samsung's products, *see Int'l Seaway Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009), which should have precluded judgment of infringement. If anything, Apple's designs are closer to the prior art than to Samsung's products:

A01310; A27590; A24675; A24736; A24719

With a field this crowded, the "range of equivalents" must be construed "very narrowly." *Egyptian Goddess*, 543 F.3d at 676 (citation omitted). Even a *single* design difference may be enough to require non-infringement as a matter of law in light of the prior art. *E.g., Smith v. Whitman Saddle Co.*, 148 U.S. 674, 682 (1893); *Egyptian Goddess*, 543 F.3d at 681-83. The many significant differences here require a judgment of non-infringement.

## B. No Properly-Instructed Jury Could Award Samsung's Entire Profits For Design-Patent Infringement

Even if design-patent liability is affirmed, the award of $399 million in damages for design-patent infringement should be reversed or vacated, for it consists entirely of infringer's profits that no properly-instructed jury could find causally linked to any Samsung infringement on the record here. Damages must be reduced or voided where it is possible to "work[] the math backwards," *Lucent Techs. Inc. v. Gateway*, *Inc.,* 580 F.3d 1301, 1336 (Fed. Cir. 2009), and determine "to the dollar" that a jury award rests on an impermissible basis. *In Re First Alliance Mortgage Co.*, 471 F.3d 977, 1002-03 (9th Cir. 2006).[3] The $399 million award of Samsung's profits for design-patent infringement requires such reversal or vacatur here. The district court instructed the jury that Apple was entitled to ***all*** profits that Samsung earned on devices that infringe any Apple design patent,

[3] The juries here awarded a total of $497,815,289 in damages for eleven Samsung phones which were found to infringe one or more design-patents but not dilute trade dress—the Captivate, Continuum, Droid Charge, Epic 4G, Galaxy S II 2 (AT&T), Galaxy S II (T-Mobile), Galaxy S II (Epic 4G Touch), Galaxy S II (Skyrocket), Gem, Indulge, and Infuse 4G. A07558; A00630-31. Of this $498 million in damages, $398,940,864 reflected Samsung's profits, which were awarded *solely* on the basis of design-patent infringement. A00097-98; A00119. The jury *also* awarded $381,683,562 for five phones (the Fascinate, Galaxy S 4G, Galaxy S Showcase (i500), Mesmerize, and Vibrant) that were found to both infringe design patents and dilute trade dress. A07558. Because the district court justified these awards *solely* on the basis of dilution of Apple's unregistered trade dress and not on the basis of design-patent infringement (A00109-10), they are discussed *infra*, Part II.B. If Apple seeks to justify these awards based on design-patent infringement, the arguments herein apply to these awards as well.

regardless of whether the infringement *caused any* such profits or whether such profits were *derived from* the patented design. That instruction was erroneous, and led to a design-patent damages award that is not sustained by evidence.

**1. The Design-Patent Damages Instructions Erred In Omitting A Causation Requirement**

Over Samsung's objection (A43924-29), the district court instructed the jury that it was authorized to award design-patent infringer's profits on the "***entire profit*** on the sale of the article to which the patented design is applied, and ***not just the portion of profit attributable to*** the design or ornamental aspects covered by the patent." A01403 (emphasis added). The court rejected Samsung's request for an instruction limiting such an award to the profit "that is attributable to whatever infringement you have found." A06982; *see* A43924:1-4.

Those instructional rulings were in error, for patent infringement is "essentially a tort," *Carbice Corp. v. Am. Patents Dev. Corp.*, 283 U.S. 27, 33 (1931), and tort damages require proof of ***causation*** before infringer's profits may be awarded, *cf. Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002) (copyright); *Carey v. Piphus,* 435 U.S. 247, 254-55 (1978). This court has long recognized such fundamental causation principles in setting limits upon all other patent remedies. *See, e.g.*, *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*) (causation required for lost profits damages); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (causation required for reasonable

royalties); *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1375 (Fed. Cir. 2012) ("*Apple II*") (causal nexus required for injunction); *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1361 (Fed. Cir. 2013) ("*Apple III*") (same).

Congress did not abandon these basic causation principles in enacting Section 289, which allows an award up "to the extent of [the infringer's] total profit" for applying a patented design to "an article of manufacture." 35 U.S.C. § 289. To the contrary, Section 289 treats an award of profits only as a ceiling, and provides that a patent-holder "shall not twice recover the profit ***made from*** the infringement." *Id.* (emphasis added). Any such interpretation of Section 289 that allowed disgorgement of infringer's profits absent any causal connection to infringement would raise serious constitutional questions under the Patent Clause, which does not authorize "enlarge[ment of] the patent monopoly without regard to the innovation, advancement or social benefit gained thereby." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 5-6, 86 (1966). The district court thus erred in instructing the jury that all infringer's profits must be awarded for design-patent infringement even absent any proof of causation.[4]

[4] In a post-trial order, the district court defended its failure to require any proof of causation based exclusively on *Nike, Inc. v. WalMart Stores, Inc.*, 138 F.3d 1437 (Fed. Cir. 1998). *See* A00100. In interpreting the term "damages" in the marking statute, 35 U.S.C. § 287(a), *Nike* observed in *dicta* that the Patent Act of 1887 "removed the *apportionment* requirement when recovery of the infringer's profit was sought" for design-patent infringement. 138 F.3d at 1441 (emphasis added). *Nike* did not address *causation* at all.

### 2. The Design-Patent Damages Instructions Erred In Omitting A Nexus To The "Article Of Manufacture"

The district court also declined, over Samsung's objection (A43928-29), to instruct the jury that it may award only those profits that are "derived from" the "portion of the product as sold that incorporates or embodies the subject matter of the patent." A06984; *see* A43928-29. This was error. Section 289 permits an award of only those infringer's profits that are attributable to the "article of manufacture" to which the patented design is "applied." 35 U.S.C. § 289. The district court erred in construing "article of manufacture" as necessarily coextensive with the entire product as sold.

For example, in the *Piano Cases*, the Second Circuit construed the term "article of manufacture" as distinct from the entire product as sold. The court thus allowed an award of infringer's profits from the patented design of a ***piano case*** but ***not*** from the sale of ***the entire piano,*** which it reasoned had value for its musical capacity and not just for its outward appearance. *See Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902, 904-05 (2d Cir. 1915) ("*Piano I*") ("recovery should be confined to the subject of the patent" and thus "[w]hen the patent owner is awarded the profits due to his design he receives all he is entitled to"); *Bush & Lane Piano Co. v. Becker Bros.*, 234 F. 79, 81-82 (2d Cir. 1916) ("*Piano II*") (analogizing to book-binding patent and explaining that patentee may not obtain all

profits from sale of book, as "[t]he binding and the printed record of thought respond to different concepts; ***they are different articles***") (emphasis added).[5]

Section 289 would produce absurd results if infringer's profits were not limited to the specific article that incorporates the patented design. For example, infringement of a patented cup-holder design would require disgorgement of all profits from the sale of a car. And a car manufacturer that infringed one patentee's cup-holder design and another's dashboard design and a third's tail-light design would have to disgorge all its profits three times over. As the *Piano Cases* show, the article-of-manufacture limitation—which the district court here erroneously rejected—avoids these absurd results. *Cf. Apple II,* 695 F.3d at (causal nexus requirement prevents patentee from "seek[ing] to leverage its patent for competitive gain beyond that which the inventive contribution and value of the patent warrant").

**3. A Reasonable, Properly-Instructed Jury Could Not Have Awarded $399 Million In Infringer's Profits**

Based on the district court's erroneous instructions, the jury awarded Apple Samsung's ***entire profits*** from every smartphone found to infringe an Apple design

---

[5] *See also Young v. Grand Rapids Refrigerator Co.,* 268 F. 966, 973-74 (6th Cir. 1920) (affirming denial of all profits from sale of refrigerators where infringed patent related only to design of refrigerator's door latch); *Schnadig Corp. v. Gaines Mfg. Co.*, No. C-1978, 1977 U.S. Dist. LEXIS 14906, *7 (W.D. Tenn. July 20, 1977) (where design patent covered sectional sofa, denying profits from sale of corner table sold in set with sofa), *reversed in part and remanded on other grounds,* 620 F.2d 1166 (6th Cir. 1980).

patent.[6] But a properly-instructed jury never would have found that every cent Samsung earned from sales of its smartphones was caused by or derived from infringement of a few patented features of the phones' front faces or GUI—especially not after the structural and functional elements of those designs are properly factored out. Just as people who buy pianos like to play music rather than just look at their patented cases, and just as people who buy books do so not for those books' patented bindings but for the contents of their ideas, so people who buy smartphones like to use them as phones and vehicles for digital media access, not merely look at their front face or colorful icon grid. Profits under Section 289 thus should be limited to profits from those specific "articles of manufacture."

The record here is devoid of evidence supporting infringer's profits under that proper legal standard. Apple failed to establish that infringement of its limited design patents on the front faces or GUI caused ***any*** Samsung sales or profits. Apple's own surveys showed that purchasers chose Samsung and other Android phones based on a host of other factors, including: (i) larger screens, (ii) wireless carrier, (iii) trust in Google brand, (iv) Android app market, (v) integrated Google

---

[6] The infringer's profits awards include the amounts each jury determined to be the entirety of Samsung's profits. In the first trial, the jury determined that Samsung's total profit was 40% of the gross profits as presented by Apple's expert. A00097-98. In the second trial, the award of Samsung's total profits falls exactly halfway between each side's figures for Samsung's total profits, reflecting a compromise between the parties' experts' opinions as to Samsung's deductible costs. A00128.

services, (vi) turn-by-turn GPS navigation, and (vii) a desire for the latest technology. A28599; *see also* A31283-85; A40875:6-12 (consumers desire large screens). And Apple's own customers rated "attractive appearance and design" "relatively lower" than factors with "very high" importance, including web capabilities, ease of use, availability of apps, improved battery life, camera quality, and retina display. A27170-74. Just as this Court held that Apple had failed to show a "causal nexus" between the patented designs and consumer demand warranting an injunction, *Apple III*, 735 F.3d at 1365-66 & n.6, it should hold that this same failing defeats the award of Samsung's profits as well.

## II. THE JUDGMENT OF $382 MILLION FOR TRADE-DRESS DILUTION SHOULD BE REVERSED

The district court further erred in denying Samsung JMOL on the $382 million trade-dress dilution award—which covered much the same intellectual property as the design patents.[7] Trade-dress dilution claims are blunt weapons: they do not require proof of a likelihood of confusion—which is "the 'core element' of trademark infringement law," *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002) (superseded by statute on other grounds); the

[7] The jury awarded a total of $381,683,562 for five phones at issue here—the Fascinate, Galaxy S 4G, Galaxy S Showcase (i500), Mesmerize, and Vibrant. A00647. Although each of these products was also found to infringe at least one design patent, the district court ruled Apple's notice dates as to patent infringement defective and thus sustained these awards *solely* on the basis of dilution of Apple's unregistered trade dress, as to which it held Apple was not required to prove notice. A00107-10.

fact or absence of competition between the parties is irrelevant to such a claim and actual economic injury need not be shown, 15 U.S.C. § 1125(c)(1); and they no longer require that "the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark," *Thane*, 305 F.3d at 905; *see Levi Strauss & Co. v. Abercrombie & Fitch Trading Co*., 633 F.3d 1158, 1172 (9th Cir. 2011).[8] Thus, "[d]ilution causes of action, much more so than infringement and unfair competition laws, tread very close to granting 'rights in gross' in a trademark," *Avery Dennison Corp. v. Sumpton*, 189 F.3d 873, 875 (9th Cir. 1999), and risk "hampering competition and the marketing of new products," *Thane*, 305 F.3d at 905. These risks are most severe where, as here, a plaintiff sues on trade dresses reflecting a product's configuration and design. *E.g., I.P. Lund Trading ApS v. Kohler Co*., 163 F.3d 27, 50 (1st Cir. 1998) (reversing preliminary injunction based on product-design trade dress).

To counter those dangers, trade-dress dilution requires strict proof that a mark/dress is (i) famous, *i.e*., "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner," 15 U.S.C. § 1125(c)(2)(A); (ii) nonfunctional, *see id.* § 1125(c)(4) ("In a civil action for trade dress dilution … for trade dress not registered …, the

[8] On this non-patent issue, this Court applies the law of the regional circuit. *Apple III*, 735 F.3d at 1374.

person who asserts trade dress protection has the burden of proving that the claimed trade dress, taken as a whole, is not functional.");[9] and (iii) likely diluted, *i.e.*, the defendant's "use of a mark or trade name in commerce … is likely to cause dilution by blurring or tarnishment," *id.* § 1125(c)(1). None of those elements was proven as a matter of law on the record here.

Nor could any reasonable, properly-instructed jury award trade-dress dilution damages here, for the record failed to establish that Samsung "willfully intended to trade on the recognition of the famous mark," *id.* § 1125(c)(5)(B)(i), or caused Apple $382 million in trade-dress dilution damages.

## A. No Reasonable Jury Could Find Trade-Dress Dilution Liability

### 1. The Evidence Was Insufficient To Show That The Asserted Trade Dresses Had The Requisite "Fame"

Trade-dress dilution requires that a mark/dress be famous— a term used in the dilution context not in its colloquial sense but rather as a term of art requiring that the mark/dress must be "truly prominent and renowned," *Avery*, 189 F.3d at 875 (quoting *I.P. Lund*, 163 F.3d at 46), "part of the collective national consciousness," *Thane*, 305 F.3d at 911-12, and a "household name" for the entire domestic consuming population, *id.* at 911; *see* 4 McCarthy on Trademarks

[9] The plaintiff bears the burden of proving nonfunctionality, *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1506 (9th Cir. 1987), but registration shifts the burden of proof to the defendant, *Buitton Et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 775 (9th Cir. 1981). *See Bobrick Washroom Equipment, Inc. v. American Specialties, Inc.*, No. 12-56653, 2014 WL 1243801 (9th Cir. 2014).

§ 24:104, 24:106 (2008 ed.) ("McCarthy") (recognition by "75% of the general consuming public of the United States" should be required), measured at the time the allegedly diluting use began, *see Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1013 (9th Cir. 2004).

Moreover, a mark/dress is not famous merely if it is widely recognized *generally*; it must be famous "***as a designation of source*** of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (emphasis added). While words or packaging may inherently "identify the source of the product," *Wal-Mart v. Samara Bros.*, 529 U.S. 205, 212 (2000), the same is not true "[i]n the case of ***product design***," which "almost invariably serves purposes other than source identification," *id*. at 213 (emphasis added).

Even viewing all inferences in the light most favorable to the verdict, Apple failed to show fame as a matter of law:

**(a) Advertisements**

Contrary to the district court's JMOL ruling (A00060), Apple's iPhone advertisements did not show trade-dress fame. Only advertisements *of the mark*/dress are relevant to fame, 15 U.S.C. § 1125(c)(2)(A)(i), but the Apple advertisements in evidence did not feature the asserted trade dresses. *See* A24896,

A27139, A27141-44, A27150-52.[10] Moreover, Apple's advertisements failed to show ***wide recognition*** of the trade dress, 15 U.S.C. § 1125(c)(2)(A)(i) (noting "duration, extent, and geographic reach"), for there was no evidence of who saw them, and that gap was not filled by evidence of Apple's overall advertising budget and charts listing iPhone ads not in evidence (*contra* A00055 (citing A24897-98 & A24900, A244902)). *See TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 99 (2d Cir. 2001) (evidence that plaintiff spent "'tens of millions of dollars' advertising its mark" was insufficient absent evidence of "when expended, or how effectively"). Finally, Apple failed to demonstrate that its advertising established fame of the trade dresses ***as a designation of source***. *See Wal-Mart*, 529 U.S. at 212-13 (product-design normally does not designate source); *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) ("evidence of extensive advertising or other promotional efforts" does not show secondary meaning (let alone fame) absent proof that "prospective buyers would associate the trade dress

---

[10] For example, Apple's '983 registered trade dress consisted of the design and "configuration" of sixteen specific icons in an application menu (A01330-31), but the advertisements Apple introduced do not track that configuration (*see, e.g.,* A27139 (television commercial omitting tan television console icon); A24896 & A27150-52 (print advertisements depicting more icons than in the trade dress). Likewise, Apple's unregistered trade dress claimed the combination of *eight specific* hardware and GUI design attributes (A07357), but none of the advertisements displays the eighth element (a bottom dock of icons "which does not change as other pages of the user interface are viewed"), and the television advertisement does not display the sixth element ("a row of small dots on the display screen").

with a particular source"); *Yankee Candle Co. v. Bridgewater Candle Co.,* 259 F.3d 25, 44 (1st Cir. 2001) (same).

**(b) Sales of Goods**

Apple also failed to prove the "amount, volume, and geographic extent of sales of goods or services offered under the mark," 15 U.S.C. § 1125(c)(2)(A)(ii). A chart of "cumulative unit sales" for *all* iPhone models combined (A24901) cannot show which sales were for models, if any, that practiced either trade dress. *See Avery Dennison*, 189 F.3d at 873 (no fame despite $3 billion in sales because "[n]o evidence indicates what percentage of these dollar figures apply to the 'Avery' or 'Dennison' trademarks").

**(c) Actual Recognition**

There also was no evidence of the "extent of actual recognition of the mark," 15 U.S.C. § 1125(c)(2)(A)(iii). The district court cited the surveys of Drs. Poret and Van Liere (A00060), but both fail to support fame. The Poret survey covered only the *unregistered* trade dress; purported to measure secondary meaning (not fame); was conducted as of June 2011 not July 2010 (*see* A41611-12, A41616-17); and surveyed only smartphone purchasers and not "consumers in general," *Avery Dennison*, 189 F.3d at 879. The Van Liere survey did not ask participants about Apple's specific trade dresses but merely measured "the extent to which consumers associate the look and the design of Samsung Galaxy phones with iPhone."

A41697; *see* A41715:5 ("I did not test Apple devices."). Moreover, Van Liere's finding of mere 37 and 38 percent "net associations" with the iPhone "for the two Samsung products" (A41701) falls far short of the recognition required for a "household name," *Thane*, 305 F.3d at 911.

**(d) Registration**

Apple's failure to register its unregistered trade dress, 15 U.S.C. § 1125(c)(2)(A)(iv), permits the inference that its trade dress is not "so 'famous' that it is entitled to the extraordinary protection of the antidilution statute," 4 McCarthy at § 24:106. The '983 trade dress was registered, but "[o]ne cannot logically infer fame from the fact that a mark is one of the millions on the Federal Register." *Id.*

**2. The Evidence Was Insufficient To Show That The Asserted Trade Dresses Were Nonfunctional**

The district court likewise erred in denying Samsung JMOL that Apple's trade dresses were functional. "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's ***reputation***, from instead inhibiting legitimate competition by allowing a producer to control ***a useful product feature***." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 164 (1995) (emphases added); *see Tie Tech, Inc. v. Kinedyne Corp.,* 296 F.3d 778, 785 (9th Cir. 2002) (similar). "[A] product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article," *Inwood*, 456 U.S. at 850 n.10, as distinct from providing "assurance that a

particular entity made, sponsored, or endorsed a product," *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.,* 158 F.3d 1002, 1006 (9th Cir. 1998) (quotation omitted). "[I]n order to establish nonfunctionality the party with the burden must demonstrate that the product feature serves *no purpose* other than identification." *Id.* at 1007 (emphasis in original) (quotation omitted). A feature that satisfies this "traditional rule" of utilitarian functionality is unprotectable. *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 33 (2001).

Even if a trade-dress feature lacks such utilitarian functionality, it may still be unprotected as functional if it has "'intrinsic' aesthetic appeal" to consumers that has no bearing on source-identification. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1068-73 (9th Cir. 2006). In short, a feature is functional if "exclusive use" of that feature "would put competitors at a significant ***non-reputation-related*** disadvantage." *TrafFix*, 532 U.S. at 32 (emphasis added) (quotation omitted).

**(a) Unregistered Trade Dress**

"For an overall product configuration to be recognized as a trademark, the entire design must be nonfunctional." *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1012 (9th Cir. 1999) (quoting *Clamp Mfg. Co, Inc, v, Enco Mfg. Co., Inc.*, 870 F.2d 512, 516 (9th Cir. 1989)). Apple failed to meet the

"heavy burden," *TrafFix*, 532 U.S. at 30, of proving that its unregistered trade dress is non-functional here.

It was undisputed at trial that each feature of Apple's unregistered trade dress is functional; according to Apple, the "theme of the overall design of the iPhone" was to create a "phone that was beautiful and ***simple and easy to use***" (A40722 (emphasis added)):

| Feature | Evidence |
| --- | --- |
| A rectangular product with four evenly rounded corners | "[R]ounded corners certainly help you move things in and out of your pocket." A40682:13-15. |
| | Rounded corners "feel better," are easier to "put it in your pocket," and promote "durability" because rounded corners are less likely to crack. A40869-70. |
| | Rectangular form minimizes wasted space by corresponding with rectangular display screen. A42612. |
| A flat clear surface covering the front of the product | Clear front cover is "absolutely functional." A41202:25-41203:4. |
| | Flat screens require less glass than curved screens to manufacture, have improved touch sensitivity, and reduce distortion. A40870-71. |
| | Flat front surface that extends edge-to-edge permits easy finger-manipulation while holding a device. A42616-17. |
| | Extension of glass edge-to-edge allows attachment of the glass over borders. |

| | |
|---|---|
| | A40873-74. |
| The appearance of a metallic bezel around the flat clear surface | Bezel means "you don't have to worry about the ground hitting the glass" if user drops phone. A40495:17-19. |
| A display screen under the clear surface | The screen allows user to receive visual information. A40676-77; A40874-75. |
| Under the clear surface, substantial black borders above and below the display screen and narrower black borders on either side of the screen | Dark borders "hide internal wiring and components." A40681:15-20.<br><br>Narrow borders allow for larger display. A43610-11.<br><br>Substantial border above and below display make room for speaker, microphone, and capacitive keys. A40872. |
| When the device is on, a row of small dots on the display screen | Indicates to user that there are multiple pages of application icons that can be accessed. A41452-53. |
| When the device is on, a matrix of colorful square icons with evenly rounded corners within the display screen | *See infra* at 51-52 ('983 registration). |
| When the device is on, a bottom dock of colorful square icons with evenly rounded comers set off from the other icons on the display, which does not change as other pages of the user interface are viewed | *See infra* at 51-52 ('983 registration).<br><br>The dock of icons at the bottom that does not change is "for the most commonly used icons" so that they are always available. A40630:23-24. |

A trade dress comprised of such a collection of functional features is not protectable. *See Leatherman*, 199 F.2d at 1013-14; *Disc Golf*, 158 F.3d at 1006-09; *Secalt S.A. v. Wuzi Shenxi Constr. Mach. Corp.*, 668 F.3d 677, 686 (9th Cir.

2012) ("Since at least some … utilitarian advantage stems from the visual appearance, the presumption of functionality remains intact.").

In addition, Apple's unregistered trade dress here is unprotected as aesthetically functional.  Apple's stated goal in designing the iPhone was to create a "beautiful object" whose design would "really wow the world" and "have appeal to people that they lust after it because it's so gorgeous."  A40485, A40722-23; *see* A40627 ("people find the iPhone designs beautiful"); A40604 (iPhone was "beautiful and that alone would be enough to excite people and make them want to buy it"); A40637-38 ("most customers believe that attractive appearance and design is very important to their choice of buying a product, and specifically [Apple's] product");  A40724 (Samsung's phones are "trying to be as beautiful as the iPhone").

But trade-dress law gives Apple no right to corner the market on beauty, or even on beautiful smartphones.  To the contrary, trade-dress protection affords no "exclusive use" of those features that "would put competitors at a significant non-reputation-related disadvantage."  *TrafFix,* 532 U.S. at 32.  Beauty is not reputation-related, and thus the evidence at trial plainly failed to overcome the presumption of functionality in both the utilitarian and aesthetic senses.

### (b) Registered Trade Dress

Apple's registered trade dress is presumed valid, but that presumption was overcome by undisputed evidence of functionality. *See Tie Tech,* 296 F.3d at 783 (affirming summary judgment that registered trade dress was functional); *see Talking Rain Bev. Co. v. S. Beach Bev. Co.,* 349 F.3d 601, 603 (9th Cir. 2003) (same). Apple's '983 registered trade dress depicts a graphical user interface whose "whole point" "is to communicate" a "certain functionality" to the user A41456, A41458-59, A41444-48. For example, the spacing of the icons allows the user's fingers to accurately select the desired application (A41471); square icons provide "more real estate" in a rectangular display and reduce the "background space between" icons (A41474-77); colorful icons are both attractive and distinguish the icons from the black background of the display (A42539-41; A42548-49); and the design of specific icons allowed users to differentiate them from one another (A42541-42; A42560-61). This GUI design plainly offers "*some* utilitarian advantage," *Disc Golf,* 158 F.3d at 1007, and even if there are alternative designs, "the mere existence of alternatives does not render a product nonfunctional," *Talking Rain,* 349 F.3d at 604; *see TrafFix*, 532 U.S. at 33-34.[11]

[11] In addition to the GUI, the '983 registration also claims "the configuration of a rectangular handheld … device with rounded silver edges [and] a black face." A20036-38. Those elements are also functional as shown above.

### 3. The Evidence Was Insufficient To Show Likely Dilution Of The Asserted Trade Dresses

The district court further erred in denying Samsung's motion for JMOL on the ground that the evidence failed to show, even taking all inferences in favor of the verdict, any likely dilution of Apple's two trade dresses by "blurring," 15 U.S.C. § 1125(c)(2)(B) It bears emphasis that the trade dresses at issue are ***not*** "Apple" or "iPhone" or the overall appearance of an iPhone. They rather comprise features that are ***a subset*** of that overall appearance and that ***exclude*** such recognizable iPhone features as the home button and Apple logo. As to the two specific trade dresses at issue, the evidence was insufficient to support any of the six enumerated statutory factors relevant to likelihood of dilution:

**Degree of Similarity:** Contrary to the district court's ruling (A00061-62), Samsung's icon interfaces on the six products found to dilute are not similar in appearance to the sixteen icons in Apple's registered trade dress:

| Registration A01330-31 | Fascinate A24702 | Galaxy Si9000 A24708 | Galaxy S4G A24711 |
|---|---|---|---|



| Registration A01330-31 | Showcase A24724 | Mesmerize A24739 | Vibrant A24747 |
|---|---|---|---|

The sole icon that they even arguably share is the registration's thirteenth icon for a "white telephone receiver against a green background," which Apple's GUI expert admitted was not unique to Apple. A01330-31; A41442. The others are all completely different.

**Level of Distinctiveness:** Product-design trade dress is never inherently distinctive, *Wal-Mart*, 529 U.S. at 212-13, and non-inherently distinctive marks "may well be entitled to a lesser scope of protection" from dilution by blurring, 4 McCarthy § 24:119. Apple's trade dress is not highly distinctive here because, as shown above, it has a "logical relationship to" the functionality of a smartphone—unlike, say, a goldfish shape that has "no logical relationship to a cheese cracker," *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 217 (2d Cir. 1999), *abrogated on other grounds*, *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2002).

**Extent of Exclusive Use:** The record contains no evidence that Apple exclusively used either trade dress. Apple's experts did not testify, for example, that they had canvassed the smartphone market and determined that competitors' products did not use either trade dress.

**Degree of Recognition:** A plaintiff must show recognition beyond "fame" to satisfy this factor, 4 McCarthy § 24:119, and Apple's specific trade dresses are not famous (*see supra* Part II.A.1), let alone *more than* famous.

**Intent to Create Association With Trade Dress:** Contrary to the district court's assumption (A00062), any effort to "copy[]" Apple's *products* does not imply intent to create association with its *trade dresses*. And even any copying of trade dresses is as consistent with recognition of their *functional benefits* as with an intent to trade on their widespread recognition as designations of source.

**Actual Association:** The district court erred in relying (A00062 (citing (A24687-90)) on press reports that compared some of the accused products to certain iPhone models as evidence of actual association. Those reports were hearsay and not admitted for the truth of their contents. FED. R. EVID. 802; A08427 (court limiting instruction not to consider reports for truth of matter asserted); A06798-809.

The district court also erred in relying (A41700-01) upon a leading survey (A41722-23) that tested impressions of only one Samsung device (the Fascinate) as

to which dilution liability was found and thus provides no evidence of association as to the remaining four devices (A41698-99; A41727). And Apple's expert conceded, even as to that one device, that the survey might merely suggest top-of-mind association between the two largest competitors in the smartphone market, just as a consumer would likely associate a can of Coca-Cola with Pepsi for reasons unrelated to any trade-dress dilution. A41723-24.

And the district court misplaced reliance (A00062) on an Apple expert's testimony that it was his "belief" that there had been dilution (A41525:22), for an expert's bare conclusion is not substantial evidence, *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002). That same expert conceded that he was aware of no empirical evidence of any harm to Apple's brand. A41538-39. Nor was there any marketplace data showing dilution even though the accused products had been sold in large quantities for an extended period. *Cf. Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189, 205 (3d Cir. 1995).

For all the above reasons, the district court should have granted Samsung JMOL on trade-dress dilution.

#### 4. The Patent Clause Bars The Use Of Trade-Dress Law To Create A Perpetual Monopoly On Patentable Designs

The Supreme Court has permitted the protection of product design through state or federal trademark law where needed "to prevent consumer confusion as to source." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165 (1989).

But it has never approved a patent-like monopoly on designs under the guise of trade-dress dilution law, where confusion is not required even as to claims against competitors. The district court here allowed just that result, and that was constitutional error.

The Patent Clause authorizes Congress to provide "exclusive Rights" to inventions and discoveries only for "limited Times." U.S. CONST., ART. I, § 8, cl. 8. That limitation, enforced in the Patent Act, may not be evaded under the different statutory heading of trade-dress protection. "Giving patent-like protection a new name does not avoid constitutional limitations." *I.P. Lund*, 163 F.3d at 53 (Boudin, J., concurring); *see id. at* 50 (majority opinion) (vacating product-design trade-dress dilution injunction and recognizing "constitutional constraints" of Patent Clause). Accordingly, if the trade-dress liability judgment is not reversed for insufficient evidence, it should be reversed as an unconstitutional application of the trade-dress dilution statute.

### B. No Properly-Instructed Jury Could Award $382 Million In Trade-Dress Dilution Damages

If this Court does not reverse on trade-dress liability, it should nonetheless reverse the $382 million award of dilution damages, which includes $290,551,283 in Samsung's profits and $91,132,279 in Apple's alleged lost profits (A00097-98), as based on legal error and not supported by sufficient evidence.

### 1. Willfulness Was Not Established

#### (a) The Trade-Dress Willfulness Instruction Was Erroneous

Trade-dress dilution damages require willfulness, meaning actual intent to deceptively trade on a famous mark's recognition. 15 U.S.C. § 1125(c)(5)(B)(i). Mere *knowledge* is insufficient, as is reckless disregard. *See Gracie v. Gracie*, 217 F.3d 1060, 1068-69 (9th Cir. 2000); *Highway Cruisers of Cal., Inc. v. Security Indus., Inc.*, 374 F.2d 875, 875-76 (9th Cir. 1967). But the district court declined (A01424) to give Samsung's requested instruction (A07090) that Apple must prove that Samsung "intended to trade on the recognition of Apple's trade dress or intended to harm Apple's reputation," instead simply instructing the jury that it must determine "willfulness" without explaining what that stringent legal requirement means. The error was compounded by the court's instruction that willful *patent infringement* could be established by mere knowledge or "reckless disregard." A01409. By instructing as to willfulness regarding patent infringement but not trade-dress dilution, the court misled the jury to believe that "reckless disregard" is the universal standard for willfulness.

#### (b) The Evidence Was Insufficient To Show Willfulness

No properly-instructed jury could have found that Samsung "intended to trade on the recognition" of Apple's trade dress, and the district court therefore erred in denying Samsung JMOL on trade-dress dilution damages. *First,* there was

no evidence that Samsung even *knew of* Apple's purported trade dresses before Apple filed its complaint. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) (affirming finding of no willful trademark infringement where defendant's knowledge of trademark was "attenuated at best").

*Second,* the district court erroneously relied on evidence that Samsung "copied" Apple's designs (A00062), but evidence that a party intended to use a particular design does not show intent to trade on that design for its ***recognition as a source identifier***. *See, e.g.*, *Highway Cruisers*, 374 F.2d at 876 (affirming ruling that trademark infringement was "deliberate but not willful"); *Badger Meter, Inc. v. Grinnell Corp.,* 13 F. 3d 1145, 1160 (7th Cir. 1994) (no willfulness even though defendant "purposely copied" plaintiff's trade dress); 4 McCarthy § 23:122 ("The motivation for the act of 'copying' cannot blithely be assumed to be wrongful in any sense.").

*Third,* a violation of trademark rights "is not willful if the defendant 'might have reasonably thought that its proposed usage was not barred by the statute,'" *Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295, 1300 (9th Cir. 1998) (citation omitted), and Samsung "might have reasonably thought" that Apple's trade dresses were not famous, functional or not diluted. *See supra* Part II.A. The closeness of the trade-dress liability verdicts confirms the reasonableness of Samsung's positions: the jury found that two of Apple's four asserted trade

dresses were not protectable or famous, and that only six of seventeen accused phones were likely to dilute. A00641-43. And those six phones had many similarities to the phones that did not dilute:

| | Galaxy S (i9000) | Vibrant | Galaxy S 4G | Fascinate | Showcase | Mesmerize |
|---|---|---|---|---|---|---|
| Phones found to dilute | | | | | | |
| | **Infuse 4G** | **Galaxy SII (i9100)** | **Galaxy SII (AT&T)** | **Galaxy SII (Skyrocket)** | **Captivate** | **Galaxy SII (T-Mobile)** |
| Phones found not to dilute | | | | | | |

A24691-A24749.

*Fourth*, the novelty of Apple's claims for product-design dilution against a competitor is also inconsistent with willfulness. *See Blockbuster*, 141 F.3d at 1300 (defendant "could have reasonably thought that its [actions] did not violate [the Lanham Act], especially because this is a question of first impression."). As the district court stated, the claim was at the "outer reaches" of the law. A08461. *See YKK Corp. v. Jungwoo Zipper Co., Ltd.*, 213 F. Supp. 2d 1195, 1207-08 (C.D. Cal.

2002) (the "mis-use" of dilution law "in competitive situations is bound to upset the balance of free and fair competition and deform the anti-dilution doctrine"); 4 McCarthy § 24:74; *supra* Part II.A.4.

*Finally*, the district court's *grant* of JMOL to Samsung on willfulness with respect to infringement of Apple's design patents (A00078-79) confirms that no properly-instructed jury could have found willful trade-dress dilution. If the patent willfulness standard that requires neither intent nor even knowledge was not met, then *a fortiori* the more stringent and particularized trade-dress willfulness standard was not satisfied either.

As willfulness could not reasonably be found, the award of trade-dress dilution damages should be reversed.

### 2. The Evidence Was Insufficient To Show Causation

The awards of $291 million in infringer's profits and $91 million in lost profits for trade-dress dilution should be reversed for additional reasons. *First*, there was insufficient evidence that these (or any) amounts were ***caused*** *by* any dilution, as required for dilution damages. *E.g., Badger Meter*, 13 F.3d at 1157 (no damages where plaintiff "did not offer evidence of specific lost sales attributable to the confusion created by the infringement"); *Lindy Pen*, 982 F.2d at 1407-08 (plaintiff may recover only lost profits it "would have earned but for the infringement" or defendant's profits "on sales that are attributable to the infringing

conduct”); *Bandag, Inc. v. Al Bolser’s Tire Stores, Inc.*, 750 F.2d 903, 918 (Fed. Cir. 1984) (vacating award where plaintiff failed to show causation); *see* 4 McCarthy § 24:132 (causation required for dilution damages).

*Second*, no evidence shows that Samsung gained any sales because of dilution of Apple’s trade-dress-in-suit, or that Apple lost sales or goodwill because of such dilution. In fact, no evidence shows that Apple’s trade dress was *actually* diluted by Samsung’s conduct at all. *See* A41538-39. Apple’s own damages expert did not try to separately calculate the number of lost sales attributable to dilution—rather, his lost profits calculations mirrored his opinions for *patent infringement*, and he merely assumed without basis that dilution losses were the same. *E.g.*, A42082, A42090-92, A42121-25, A42129-30. Such evidence does not support an award of damages.[12]

*Third*, no evidence supports the jury’s awards of *all* $291 million of Samsung’s profits (every dollar that Samsung made) as to the products at issue. A42052-53; A42059-73; A43031-44; A00097-98. Even if Apple had shown causation, it is entitled at most to Samsung profits that were derived from

---

[12] In denying Samsung JMOL on dilution damages, the district court declined to address the sufficiency of the evidence because “there were no products for which the jury found trade dress dilution without design-patent infringement.” A00100-01. But, as noted, the district court upheld these same damages awards (elsewhere in the same order) based *solely* on dilution of Apple’s unregistered trade dress, concluding that only it did not require notice. A00109-10.

the dilution, and not from factors other than the design elements that comprise the trade-dress designs. No reasonable jury could find that all of Samsung profits on its six products derived from trade-dress dilution. *See* A28645; A26444; A31286.

*Fourth*, Apple's damages expert's lost profits projections were insufficient to support the award of $91 million in Apple's lost profits, as they depended on assumptions that the jury itself necessarily rejected. *See Otis Clapp & Son Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 746 (7th Cir. 1985). Apple's expert assumed that Apple would show liability for *all* of Samsung's accused products (A42121-25; A42129-30), that *all* of these products would have been excluded from the market, and that Apple would have then made additional sales *in proportion* to its estimated share of the remaining market (A42090-92). But the jury rejected these assumptions and rejected the majority of Apple's trade-dress claims, *see, e.g.,* A00641-44, and Apple offered no basis to adjust the expert's calculations. There was thus insufficient evidence of lost profits causation. *Cf. Cohen v. United States*, 100 Fed. Cl. 461, 482-84 (Fed. Cl. 2011) (granting summary judgment of no lost profits in copyright case because plaintiff's expert relied on unproven assumptions about but-for market).

Accordingly, the awards of dilution damages are not supported by evidence, and should be reversed.

Case: 14-1335 Document: 33 Page: 83 Filed: 05/23/2014

## III. THE JUDGMENT OF $149 MILLION FOR UTILITY-PATENT INFRINGEMENT SHOULD BE REVERSED

### A. No Reasonable Jury Could Find Liability As To The ’915 And ’163 Patents

#### 1. Claim 8 Of The ’915 Patent Is Anticipated

The district court erred in failing to rule claim 8 of the ’915 patent invalid as a matter of law. Claim 8 covers a technique for using a single finger on a touchscreen to scroll a document and two fingers to zoom. These exact gestures were disclosed in the Nomura patent application:

**[FIG. 8]** **[FIG. 5]**

Specifically, Nomura discloses a portable device that includes a map application that permits scrolling and zooming using one and two-finger gestures. A28323-24. As Samsung’s expert explained, each element of claim 8 was met by this reference (A42911-17), and claim 8 therefore is invalid as anticipated. *In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1371 (Fed. Cir. 2007).[13]

[13] The ’915 patent is presently in an *ex parte* reexamination before the PTO, initiated by an anonymous third party. Appl. No. 90/012,332, filed May 23, 2012. In that proceeding, the Examiner has rejected all claims of the ’915

The district court ruled that Nomura failed to disclose an "event object" and thus did not anticipate claim 8. A00070; *see* A43636-37. But Nomura discloses a device receiving touch user inputs that are then stored in a "movement history." A42913-14. This movement history is discussed throughout the Nomura specification and claims. A28277-37. Although Nomura does not include the source code for this "movement history," such source code is inherently disclosed in the Nomura reference. A42937-38. Apple's expert argued at trial that the "event object" was not inherently disclosed in Nomura because event objects refer to a particular "programming construct[]," as distinguished from other alleged alternatives such as "polling" and "procedural programming and languages." A43636-39. But nothing in the '915 patent limits the term "event object" in this way. Because Nomura includes the claimed "event object," the district court erred in not ruling that Nomura anticipates claim 8 as a matter of law.

**2. Claim 50 Of The '163 Patent Is Indefinite**

The district court erred when it ruled that the term "substantially centered" in claim 50 of the '163 patent is not indefinite. A00002-09. "[A] claim term, to be

patent. The examiner found claim 8 to be anticipated by U.S. Patent No. 7,724,242 to Hillis et al. ("Hillis") and obvious over Nomura in view of Dean Harris Rubine, "The Automatic Recognition of Gestures," CMU-CS-91-202, December 1991 ("Rubine"). A08712-8776, July 26, 2013 Final Office Action at 23-24. Apple appealed to the PTAB (A08777-80) and filed an Appeal Brief on February 26, 2014. The Examiner filed an Answer on May 2, 2014. The case will be forwarded to the PTAB in July 2014. MPEP 1208.

definite, requires an objective anchor." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005). Thus, "[w]hen a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree." *Seattle Box Co. v. Indus. Crating & Packing Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984); *see also Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 896 (2014) (granting certiorari to consider whether indefiniteness standard should be lower than "insolubly ambiguous" or "not amenable to construction").

The '163 patent provides no objective standard to measure the scope of the term "substantially centered." Claim 50 requires first and second "boxes of content" to be "*substantially* centered" on a touch-screen display. A01249-50. But the specification describes only exact centering, leaving unclear *what else* is within the scope of the claim. A01244, A01215. The specification also fails to provide any tests, parameters, or criteria for determining whether a box that is not *exactly* centered is nevertheless "*substantially* centered."

The testimony of Mr. Forstall, an inventor of the '163 patent, confirmed that this term is entirely subjective. He testified that "we call it substantially center it, but the goal is to move it to *the best viewing place for you*," and that "substantially centered, mean[s] center it *where it makes sense*." A40759-60. "[T]he definition

of [a term of degree] cannot depend on the undefined views of unnamed persons, even if they are experts, specialists, or academics." *Datamize,* 417 F.3d at 1352-53.

The district court agreed that the intrinsic record provided no guidance on the scope of "substantially centered." A00005-06. It nevertheless ruled the claim definite based on testimony of Samsung's expert that some products practiced this limitation and the conclusory opinion of Apple's expert that the term was "something that a person of ordinary skill in the art will have no problem understanding." A00006-08. But the fact that Samsung's expert could determine that boxes of content that are exactly centered are "substantially centered" does not show that a person of skill in the art would know whether a box that was *not* exactly centered was "substantially centered." A42931-32. Nor can the *ipse dixit* of Apple's expert that the term is definite raise an issue of disputed fact. *TechSearch*, 286 F.3d at 1372 (experts' conclusory statements do not preclude summary judgment).

Because the term "substantially centered" is indefinite, claim 50 is invalid. 35 U.S.C. § 112(b); *Datamize*, 417 F.3d at 1344.

### B. No Reasonable Jury Could Award $149 Million In Damages For Utility-Patent Infringement

#### 1. The Evidence Was Insufficient To Show $114 Million In Lost Profits For Infringement Of The '915 Patent

The second jury awarded Apple nearly $114 million in lost profits for ten Samsung products found to infringe Apple's '915 patent. A00652-53; A00119-20. To obtain such lost profits, Apple bore the burden of showing that it would have made additional profit *but for* Samsung's infringement. *E.g., Rite-Hite*, 56 F.3d at 1545; *see* A42081-93. Thus, Apple was required to establish the absence of acceptable non-infringing substitutes for the patented technology. *Grain Processing Corp. v. Am. Maize-Prods.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). Indeed, "market sales of an acceptable noninfringing substitute often suffice alone to defeat a case for lost profits." *Id.* at 1352.

In the first trial, the jury found that two Samsung products—the Intercept and Galaxy Ace—did not infringe the '915 patent (A00634); there is no dispute that these products offered the same functionality as the patented feature of the '915 patent (A50469-71; A50610). They were, accordingly, non-infringing alternatives. And each of these non-infringing substitutes was on the market at the relevant time (A32205; A50973-74; A51012) and a commercial success—sales of the Intercept yielded over $271 million in revenue (A29367-69), and the Galaxy

Ace was "one of [Samsung's] biggest sellers of all time" (A51013). Thus, no reasonable jury could have found that Apple carried its burden.

In denying Samsung's JMOL motion, the district court erred as a matter of law by rejecting these products as acceptable non-infringing alternatives. *First*, as to the Intercept, the court ruled that factors such as its screen size, keyboard and customer satisfaction levels could have led a jury to reject this product as an alternative. A00122-23. But the acceptable non-infringing alternatives analysis focuses on whether the alternative provides "the advantages *of the patented invention*," not whether it provides every unrelated advantage that a consumer might want. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1361 (Fed. Cir. 2012).

*Second*, as to the Galaxy Ace, the court ruled that it was not an "available" alternative because it infringed Apple's '381 and '163 patents. *See* A00122. But Apple's damages model was based on its expert's express assumption that Samsung would have designed around the '381 and '163 patents months *before* the lost-profits period began. A51204-05. Thus, under Apple's assumptions for damages, the Galaxy Ace would *not* have infringed the '381 and '163 patents when the lost-profits period began (A51204-06), and the Galaxy Ace's infringement of those patents provides no basis for rejecting it as an alternative.

But even if Apple had identified a difference between the patented functionality and that supplied in the Galaxy Ace and Intercept, Apple did not meet its burden of showing consumer demand *for the patented feature. E.g.*, *Calico Brand, Inc. v. Ameritek Imports, Inc.*, 527 F. App'x 987, 996-97 (Fed. Cir. 2013) (vacating lost profits award for failure to show consumers preferred patented mechanism to non-infringing alternatives); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (affirming denial of lost profits for failure to prove buyers "specifically want" patented feature). The record contains no evidence that purchasers of Samsung's products were driven by a specific desire for the '915 patented feature. Although the district court did not address this factor (A00120-23), this absence of evidence is dispositive.

Apple introduced testimony from two experts to attempt to meet its burden. *First*, Apple's damages expert, Julie Davis, cited evidence that users value "ease of use" (A50652-53), the iPhone's "easy and intuitive U/I" and "user experience," (A50653-A50661), and "gestures like the two fingered pinch and flick [which] add a game-like quality to interactions" (A50658; A30001). But the '915 patent does not claim "ease of use" or a good "user experience," or scrolling and zooming generally, or even "scroll[ing] with one finger and zoom[ing] with two fingers." A50455. Thus, none of this evidence shows demand for the patented feature. Moreover, Samsung's non-infringing alternatives provided the same functionality

as the ’915 patent, and none of this evidence even suggested that consumers preferred the ’915 patent’s technology over the non-infringing alternatives. *Slimfold Mfg.*, 932 F.2d at 1458.

*Second*, Apple’s survey expert, John Hauser, purported to measure whether consumers would pay a “price premium” for the patented feature, but he did not measure whether they would pay such a premium for the patented feature *over available non-infringing alternatives*. Hauser acknowledged that non-infringing products like the Galaxy Ace were functionally “pretty much the same as what the infringing alternative is,” yet he excluded the “one finger to scroll and two fingers to zoom” functionality in Samsung’s non-infringing products from his survey. A50610; *see* A08281-82 (denying renewed motion for permanent injunction in part because Hauser “failed to adequately account for noninfringing alternatives to the patented features”). Hauser’s survey thus fails to show demand for the patented feature over non-infringing alternatives, as required.

### 2. The Evidence Was Insufficient To Show $35 Million In Reasonable Royalty Damages For Infringement Of The Three Utility Patents

The second jury awarded $34,625,194 in reasonable royalty damages for thirteen products found to infringe Apple's utility patents—the full amount that Apple sought. A00652-53; A29792.[14] No evidence supports this award.

Apple's expert testified that her royalty rates were based on a *Georgia-Pacific* analysis, but offered only a cursory explanation of how she arrived at her proffered rates (A50707-11)—contravening this Court's requirement that an expert "fully analyz[e] the applicable factors" and provide "some explanation of both why and generally to what extent the particular factor impacts the royalty calculation." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012) (vacating award where plaintiff's expert offered only "generalized discussion of the *Georgia-Pacific* factors"); *accord Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011).

In upholding the reasonable-royalty award, the district court noted that Davis testified when addressing *lost profits* that evidence of demand was "also relevant to the determination of the amount of reasonable royalties." A00125 (quoting A50651-52). But Davis never explained *how* "demand" was "relevant" to her

[14] These products are: Exhibit 4G, Galaxy Prevail, Galaxy Tab, Nexus S 4G, Replenish, and Transform, Captivate, Continuum, Droid Charge, Epic 4G, Gem, Indulge, and Infuse 4G.

analysis of any *Georgia-Pacific* factor, much less provide the required "explanation of both why and generally to what extent the particular factor impacts the royalty calculation." *Whitserve*, 694 F.3d at 31. The district court also cited Davis' expert report. A00125. But that report was not in evidence and was never presented to the jury, and hence it cannot support the verdict. *E.g., McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1037 (9th Cir. 2003) ("Evidence not admitted at trial cannot be used in a review of [a jury's verdict]").

The district court also erred in upholding, without analysis, the first jury's award of $833,076 in reasonable royalties for the Galaxy Tab 10.1 WiFi. A00098; A00114. Apple's damages expert in the first trial merely stated that he performed a *Georgia-Pacific* analysis and used three valuation methods, but identified no evidence supporting his royalty rates. A42095-96.

## IV. ALTERNATIVELY, THE COURT SHOULD GRANT A NEW TRIAL

### A. The Instructional Errors At A Minimum Require Vacatur And Remand

As to each of the issues above where the district court denied JMOL after the first trial, Samsung moved alternatively for remittitur and/or a new trial, and the district court denied those motions. *See supra* at 10-12. Should this Court conclude that entry of judgment for Samsung is not warranted, at a minimum, a new trial is warranted. *See Commil*, 720 F.3d at 1366-67.

*First*, new trial on the design-patent claims is warranted by the district court's instructional errors on design-patent scope and infringement. *See supra* Part I.A. A jury properly instructed on the ordinary-observer test and on factoring out unprotected elements of Apple's designs could well have reached a different result. The same is true of a jury properly instructed to limit infringer's profits to those profits *caused* by the infringement and *derived from* the patented design. *See supra* Part I.B.

*Second*, new trial on the trade-dress claims is warranted by the district court's instructional error on the willfulness required for trade-dress damages. *See supra* Part II.B. A jury properly instructed as to the essential requirements of trade-dress dilution damages (including willfulness, causation, and apportionment), easily could have awarded either no damages or a fraction of the present award.

### B. A New Trial Is Warranted Because The $930 Million Judgment Is Excessive And Against The Weight Of The Evidence

An additional ground for new trial if the Court does not direct that judgment be entered for Samsung is that the judgment is excessive and against the weight of the evidence. *See, e.g.*, *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (new trial warranted where "the verdict is against the weight of the evidence, [] the damages are excessive, or []for other reasons, the trial was not fair to the party moving.") (quotation marks omitted); *Wordtech Sys., Inc v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1322 (Fed. Cir. 2010) (applying Ninth

Circuit law and reversing denial of defendants' Rule 59 motions on liability and damages issues).[15]

*First*, new trial for design-patent infringement is warranted because the great weight of the evidence shows that Apple's designs and the accused products are dissimilar.  *See supra* Part I.A.  The $399 million in design-patent infringer's profits is excessive and against the great weight of the evidence given the lack of proof that design-patent infringement caused anywhere near *all* of the sales of the Samsung products found to infringe.  *See supra* Part I.B.

*Second*, new trial on the trade-dress dilution claims is warranted because the great weight of the evidence shows that Apple's purported trade dresses are not famous or nonfunctional and that the accused products were not likely to dilute.  *See supra* Part II.A.  Likewise, the $382 million judgment for trade-dress dilution is excessive where the evidence does not show that Samsung knew of Apple's purported trade dresses before Apple filed its complaint, that any of Apple's losses or Samsung's gains were attributable to dilution of the trade dresses, that dilution of the trades dresses caused Samsung's profits, or that Apple's expert's lost-profits calculations were valid once the jury rejected his key underlying assumptions.  *See supra* Part II.B.

---

[15]    In its post-trial motions (A07616), Samsung moved in the alternative for a new trial on the design-patent infringement, trade-dress dilution, and utility-patent infringement claims.

*Third*, the judgment for infringement of the '915 patent should be vacated given the PTO Examiner's rejection of all claims of that patent. *See supra* at 64 n.13. Additionally, a new damages trial for all three utility patents is warranted because the evidence does not support either the $114 million award of lost profits for the '915 patent or the $35 million award of reasonable royalties for the three utility patents. *See supra* Part III.B.

### C. The District Court Abused Its Discretion By Excluding Evidence Of Samsung's Pre-iPhone Independent Development Of Smartphones

A new trial is also warranted because the district court abused its discretion under Fed. R. Evid. 403 by excluding certain evidence showing Samsung's independent development of smartphones resembling the iPhone ***well before Apple ever announced, displayed, or sold the iPhone***. Although the court had ruled pre-trial that Samsung could not introduce its pre-iPhone designs as prior art, it had ruled that such evidence was "admissible for other purposes, ***including to rebut an allegation of copying***." A06685 (emphasis added). At trial, however, the court reversed itself, allowing Samsung to argue only that the F700 was an "available alternative design" and relevant to the functionality of Apple's design patents and trade dress. A06832-33.

That ruling was an abuse of discretion under Rule 403. *First*, the independent development evidence was highly probative. Apple's relentless trial

mantra was that Samsung "copied" the iPhone and iPad designs. Apple used its opening and closing, and the testimony of virtually every witness, to amplify and echo this theme.[16] Apple even argued, contrary to the law, that "copying is … evidence of infringement" (A44121), and over Samsung's objection (A06862; A06935; A07107-09; A07219-10), the district court erroneously declined to instruct the jury that copying is irrelevant to infringement (A06935).

The independent development evidence was the most probative possible evidence Samsung could have presented to rebut these allegations of copying. For example, Samsung designer Hyoung Shin Park would have testified that she worked with a team of Samsung designers to independently create smartphones at

---

[16] *E.g.,* A40320 ("Samsung decided simply to copy."); A40323 ("Critics immediately chided Samsung for its obvious copying."); A40324 ("Samsung copied every detail …."); A40325-26 ("Samsung has not been honest about this copying."); A40328 ("Samsung has copied."); A40329 ("Samsung's decision to copy this design"); A40335 ("[T]hey copied it."); A44096 ("Samsung was copying."); A44097 ("Samsung was able to copy."); A44098 ("[O]ver 100 pages of detailed side-by-side comparison and instructions to copy."); *id.* ("Samsung used the iPhone in order to turn the GT i9000 into a copy."); *id.* ("Samsung copies the iPhone."); A44099 ("And so the direction was … [t]ake what was good about the Apple icons and put it in your phone."); A44101 ("iPhone knock-offs"); A44101 ("Samsung chose to continue on the copying path."); A44103-04 ("[T]hey were copies of Apple."); A44110 ("Samsung's well-documented copying. … They changed their original design into an iPhone look alike."); A44113 ("They copied ours."); A441201 ("Have I mentioned that Samsung copied the design? I think I may have said that."); A44120-21 ("They copied it."); A44129 ("[T]he copying designs."); A44130 ("While Samsung was copying the outside of the iPhone, it was also busy copying the user interface and the inner workings."); A44138-39 ("[I]t was copying."); A44146 ("[T]hink of the copying documents ….").

Samsung prior to Apple's launch of the iPhone (A07506-07; A24679), and the evidence would have shown that two of her 2006 designs, "Bowl" and "Q-Bowl" (A07508-A07516), had similarities to the Samsung phones that Apple claimed infringed or diluted the iPhone:



**"Bowl"** (A07403)                 **"Q-Bowl"** (A7415)

Ms. Park's designs featured a rounded rectangular shape, edge-to-edge flat transparent surface, black border mask, oblong speaker slot, continuous uniform bezel, minimal surface ornamentation, and a single control button. Samsung applied for a Korean Design Patent on Ms. Park's Q-Bowl design in December 2006, *before* Apple unveiled its iPhone (A07464-73), and later released the design commercially as the F700 (A07522):



**F700 (A27594)**          **KR'985 (A07464-73)**

Apple itself saw the F700 as so similar to the iPhone that it accused the F700 of being a copy of the iPhone before learning the actual pre-iPhone chronology of the F700's development. A04024.

The excluded evidence also would have shown that Samsung's design group independently developed a simple user interface concept before the iPhone was disclosed publicly and used it in the F700 phone. A07513. Like the iPhone's interface for its applications screen, Samsung's interface concept was based on a grid of rounded rectangular icons optimally sized and spaced for finger operation:



**Icon Layout (A8589)**

The designer of the accused Galaxy smartphones, Mr. Minhyuk Lee, was proffered

to testify that he was "involved in the design of the F700," that in designing the

accused products he consciously drew on the design of the F700, and that the F700

and accused Galaxy phones were part of a "continuum" of Samsung

designs.  A06821-24.  The probative value of this evidence to Samsung, like that of

the F700 evidence, cannot be contested.

*Second*, the district court had no basis to determine that the independent

development evidence would have prejudiced Apple.  Relevant evidence may be

excluded under Rule 403 only when "unfair prejudice, *substantially* outweighing

probative value" will result.  *United States v. Hankey*, 203 F.3d 1160, 1172 (9th

Case: 14-1335 Document: 34 Page: 100 Filed: 05/23/2014

Cir. 2000) (quotation omitted) (emphasis added). The district court identified nothing close to such prejudice here, holding only that the jury might consider this "as evidence of an independent derivation of the designs at issue," which the court implied had been excluded by the earlier ruling excluding it as evidence of prior art. A06833. Given Samsung's confirmation that it did not intend to argue that its pre-iPhone designs were prior art, and the court's limiting instruction that the F700 was not prior art (A08157-65; A06793-94; A41188; A42849), the court abused its discretion in excluding Samsung's pre-iPhone design documents and testimony for use for other unrelated purposes.

*Third*, the exclusion of the independent development evidence was not harmless to Samsung. The jury *was* permitted to hear Samsung's independent development evidence as to *iPad*-related design patents and trade dress (A42811-13; A29694-98), and later found for Samsung on those claims (A07549; A07552). The jury might well have done the same for the iPhone-related claims had the evidence not been wrongfully excluded.

*Finally*, even if the Rule 403 determination had initially been within the court's discretion, it was an abuse of discretion to permit Apple to introduce a counter-factual story to the jury, using "the excluded evidence as a shield to enhance its case and effectively destroy the other side's claim," while precluding Samsung from challenging that story. *Henderson v. George Washington Univ.*,

449 F.3d 127, 141 (D. C. Cir. 2006); *see Lawson v. Trowbridge*, 153 F.3d 368, 379-80 (7th Cir. 1998) (reversible error to exclude evidence necessary to rebut misleading impression). Apple took advantage of the "shield" that the district court created by criticizing Samsung for not rebutting "the many copying documents" that Apple introduced—which is precisely what Samsung was prevented from doing. *E.g.,* A44103 ("Samsung had a choice to defend itself [from copying allegations] in this case. Instead, they sent you lawyers."). It was an abuse of discretion to preclude Samsung from introducing evidence to rebut Apple's false argument. New trial should be granted for this reason alone if the judgment is not otherwise reversed.

## CONCLUSION

The judgment should be reversed or, alternatively, vacated and the case remanded for new trial.

Case: 14-1335 Document: 33 Page: 102 Filed: 05/23/2014

Dated: May 23, 2014

Respectfully submitted,

By: /s/ Kathleen M. Sullivan

Kathleen M. Sullivan
William B. Adams
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
kathleensullivan@quinnemanuel.com

Kevin A. Smith
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Susan R. Estrich
Michael T. Zeller
B. Dylan Proctor
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Victoria F. Maroulis
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendants-Appellants*

Case: 14-1335 Document: 33 Page: 103 Filed: 05/23/2014

# ADDENDUM

# ADDENDUM

## TABLE OF CONTENTS

| Document | Page |
|---|---|
| JUDGMENT (Dkt. 3017) | A1 |
| ORDER RE: INDEFINITENESS (Dkt. 2218) | A2 |
| ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW (Dkt. 2219) | A17 |
| ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW (Dkt. 2220) | A49 |
| ORDER RE: DAMAGES (Dkt. 2271) | A89 |
| ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, REMITTUR, OR A NEW TRIAL; DENYING APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND OTHER POSTTRIAL RELIEF (Dkt. 2947) | A116 |

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 11-CV-01846-LHK<br><br>JUDGMENT |

Judgment is entered against Samsung and in favor of Apple in the amount of $929,780,039. The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: March 6, 2014

Lucy H. Koh
LUCY H. KOH
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

United States District Court
For the Northern District of California

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 11-CV-01846-LHK<br><br>ORDER RE: INDEFINITENESS |

In this patent case, a jury found that Samsung had infringed several of Apple's patents, including Claim 50 of U.S. Patent No. 7,864,163 ("the '163 Patent") and four design patents: No. D618,677 ("the D'677 Patent"); No. D593,087 ("the D'087 Patent"); No. D604,305 ("the D'305 Patent"); and No. D504,889 ("the D'889 Patent"). Samsung now argues that Claim 50 of the '163 Patent and all four design patents are invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112. *See* Motion on Samsung's Non-Jury Claims, ECF No. 1988 ("Mot.").[1] Apple

[1] Samsung also argues that its infringement was not willful, and that Apple's patents are invalid for obviousness. Because Samsung also addressed these arguments in its motion for judgment as a matter of law, the Court does not address them in this Order.

opposed this motion, ECF No. 2027 ("Opp'n"), and Samsung filed a reply. ECF No. 2042 ("Reply"). This Court will first address the '163 Patent, and will then address the design patents.

**I. '163 INDEFINITENESS**

As an initial matter, this claim is not waived. Apple asserts that this argument is waived because Samsung did not seek claim construction of the term "substantially centered" or include the indefiniteness issue in its pretrial statement. However, failure to seek construction of a term during claim construction does not constitute waiver of an indefiniteness argument. For one thing, under this District's Patent Local Rules, the parties were limited in the number of terms for which they could seek construction.[2] *See* Pat. Loc. R. 4-1 (limiting parties to a total of 10 terms). Thus, failure to include a term at that stage cannot reasonably constitute a waiver. Further, Samsung has continued to raise the issue, first in invalidity contentions and in later in arguing for a jury instruction. *See* Pierce Reply Decl. Exh. 2 at 53 (invalidity contentions); ECF No. 1809 (proposed jury instruction). During trial, Apple agreed that Samsung could "make a JMOL on that" and "let the Court determine it." *See* Tr. at 3336:18-25. Finally, this Court specifically included indefiniteness of the '163 Patent as a topic Samsung could address in a non-jury brief. ECF No. 1965. There is no question that Apple has been on notice of Samsung's assertion of this claim. Accordingly, the Court finds that it is appropriate for Samsung to raise the issue now.

In order to be valid, a patent claim must "particularly point [] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. The purpose of this definiteness requirement is "to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). Patent claims are invalid for indefiniteness when they are not "amenable to construction," or are "insolubly ambiguous." *Exxon Research and Engineering Co. v. U.S.*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).

Samsung contends that the term "substantially centered" in the '163 Patent is an indefinite

[2] Although the parties originally identified 10 claim terms for construction, by the time of the *Markman* hearing, the parties stipulated to the construction of two terms and asked the Court to construe only eight terms. *See* Order Construing Disputed Claim Terms, ECF No. 849, at 1.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

term of degree, which cannot be construed because no objective anchor is provided in the specification. Claim 50, the only claim at issue in this litigation, reads:

> A portable electronic device, comprising:
> a touch screen display;
> one or more processors;
> memory; and
> one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including:
> instructions for displaying at least a portion of a structured electronic document on the touch screen display, wherein the structured electronic document comprises a plurality of boxes of content;
> instructions for detecting a first gesture at a location on the displayed portion of the structured electronic document;
> instructions for determining a first box in the plurality of boxes at the location of the first gesture;
> instructions for enlarging and translating the structured electronic document so that the first box is **substantially centered** on the touch screen display;
> instruction for, while the first box is enlarged, a second gesture is detected on a second box other than the first box; and
> instructions for, in response to detecting the second gesture, the structured electronic document is translated so that the second box is **substantially centered** on the touch screen display.

U.S. Patent No. 7,864,163 B2 (emphasis added).

The imprecise claim term at issue here, "substantially," is a word of degree. *See, e.g.*, *LNP Engineering Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1359 (Fed. Cir. 2001) (considering the term "substantially completely wetted"); *Exxon*, 265 F.3d at 1377 (considering the phrase "to increase substantially"). "When a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree." *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984). If the specification does not provide a standard for imposing a more precise construction of the term, the Federal Circuit has ruled that imposing a more precise construction would be error. *See Playtex Products, Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907 (Fed. Cir. 2005); *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1360 (Fed. Cir. 2003).

For example, in *Playtex*, the Federal Circuit, quoting *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1368 (Fed. Cir. 2004), stated that "substantial" implies "approximate" rather than "perfect." 400 F.3d at 907. The *Playtex* Court further stated that, "the definition of 'substantially flattened surfaces' adopted by the district court introduces a numerical tolerance to

the flatness of the gripping area surfaces of the claimed applicator. That reading contradicts the recent precedent of this court, interpreting such terms of degree." *Id.* The *Playtex* Court then discussed *Cordis*, 339 F.3d at 1360. In *Cordis*, the Federal Circuit held that: "The patents do not set out any numerical standard by which to determine whether the thickness of the wall surface is 'substantially uniform.' The term 'substantially,' as used in this context, denotes approximation." In refusing "to impose a precise numeric constraint on the term 'substantially uniform thickness,'" the *Cordis* Court held that "the proper interpretation of this term was 'of largely or approximately uniform thickness' unless something in the prosecution history imposed the 'clear and unmistakable disclaimer' needed for narrowing beyond this plain-language interpretation." *Playtex*, 400 F.3d at 907 (quoting *Cordis*, 339 F.3d at 1361).

Similarly, in *Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1311 (Fed. Cir. 2003), the Federal Circuit held that the phrase "generally parallel" envisions "some amount of deviation from exactly parallel." The *Anchor Wall* Court also noted that "words of approximation, such as 'generally' and 'substantially,' are descriptive terms 'commonly used in patent claims "to avoid a strict numerical boundary to the specified parameter."'" *Id.* at 1310-11 (internal citations omitted). Furthermore, the Court noted that "nothing in the prosecution history of the #015 patent family clearly limits the scope of 'generally parallel' such that the adverb 'generally' does not broaden the meaning of parallel." *Id.* at 1311.

In *Liquid Dynamics Corp*., 355 F.3d at 1369, the Federal Circuit construed a claim with the phrases a "substantial helical flow" and a "substantially volume filling flow" as "all flow patterns that are generally, though not necessarily perfectly, spiral, and that fill much, though not necessarily all, of the tank's volume." The Court held that, "Because the plain language of the claim was clear and uncontradicted by anything in the written description of the figures, the district court should not have relied upon the written description, the figures, or the prosecution history to add limitations to the claim." *Id.* at 1368.

Other Federal Circuit cases have also held that the term "substantially" does not require a strict numerical boundary. "We note that like the term 'about,' the term 'substantially' is a descriptive term commonly used in patent claims to 'avoid a strict numerical boundary to the

**United States District Court**
For the Northern District of California

specified parameter.''" *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) (quoting *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed. Cir. 1995)). "Expressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the minor variations that may be appropriate to secure the invention." *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002). Thus, the law is clear that a court need not, and indeed may not, construe terms of degree to give them greater precision, absent a standard for imposing a more precise construction in the specification.

In the instant case, the Court finds no standard for measuring the precise boundaries of "substantially centered" in the specification. Accordingly, under Federal Circuit precedent, it would be inappropriate for this Court to issue a construction of "substantially centered" that gives it greater precision.

The Federal Circuit has never suggested, however, that this lack of precision constitutes a lack of construability, so as to render a term of degree indefinite. Indeed, the Federal Circuit has construed such terms of degree. In so doing, the Federal Circuit has taken one of two approaches. In some cases, the Federal Circuit relies on the commonly understood meaning of other terms of degree. *See, e.g.*, *Cordis*, 339 F.3d at 1360 ("substantially uniform thickness" construed as "of largely or approximately uniform thickness"); *Anchor Wall*, 340 F.3d at 1311 ("generally parallel" construed as "some amount of deviation from exactly parallel"). In other cases, the Federal Circuit points to some contrasting example to provide an indication of what is *not* meant by the term. *See, e.g.*, *Playtex*, 400 F.3d at 909 ("substantially flattened surfaces" construed as "surfaces, including flat surfaces, materially flatter than the cylindrical front portion of the applicator"). In none of these cases has the Federal Circuit found that the term of degree was not amenable to construction or insolubly ambiguous.

Samsung has not attempted to argue that a court would be unable to issue such a plain meaning-based construction of the term "substantially centered."[3] Instead, Samsung has argued

[3] Neither party requested construction of the term "substantially centered." Moreover, Samsung did not make any noninfringement, anticipation, or obviousness argument that depended on a disputed interpretation of the term "substantially centered." *Cf. O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (noting that claim construction

United States District Court
For the Northern District of California

that the fact that the Court cannot issue a more *precise* construction, based on the lack of an objective standard in the specification, makes it impossible to construe the term *at all*, thus rendering the term indefinite. However, as the cases cited above demonstrate, this is simply not the law. The Federal Circuit has explained that "[e]xpressions such as 'substantially' are used in patent documents when warranted by the nature of the invention, in order to accommodate the minor variations that may be appropriate to secure the invention." *Verve*, 311 F.3d at 1120. Samsung has not contended, and this Court does not find, that the term "substantially centered" as used in this patent is not amenable to construction consistent with the Federal Circuit's constructions of terms of degree.

The parties have also presented extrinsic evidence that the term "substantially centered" can be understood by persons of ordinary skill in the art. The Federal Circuit has explained that although courts "have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on extrinsic evidence, such as expert testimony." *Datamize*, 417 F.3d at 1348 (internal quotation marks and citation omitted). The opinion of an expert can illuminate the meaning of an ambiguous term of degree. *See Datamize*, 417 F.3d at 1353-54; *Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, 1218 (Fed. Cir. 1991). The testimony of an inventor can also shed light on the meaning of a term insofar as the inventor is a person of ordinary skill in the art, but testimony about the inventor's subjective state of mind cannot bear on definiteness. *See CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1360 (Fed. Cir. 2011) (considering an inventor's testimony as testimony of one of skill in the art); *Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1370 (Fed. Cir. 2004) (noting a district court's proper rejection of inventor testimony concerning subjective intent).

Regarding "substantially centered," Apple's expert, Dr. Karan Singh, testified that "a person of ordinary skill in the art, or actually even a -- a person, a layman, would tell you that visually it's by and large centered." Declaration of John Pierce in support of Samsung's Reply

---

was required where the parties had an actual dispute about whether or not the term "only if" permitted any exceptions).

("Pierce Decl."), Exh. 1, Singh 4/26/12 Depo. Tr. 119:11-21. Dr. Singh also explained that "by and large, it's something that a person of ordinary skill in the art will have no problem understanding." Singh 8/10/12 Trial Tr. 1901:17-19.

Similarly, Samsung's expert, Mr. Gray, testified during his deposition that he had determined that some of Samsung's accused products were capable of substantial centering as contemplated in the '163 Patent:

> So of the products that I -- that I have tested, except for -- except for the tab -- I think the tab 10.1. Then at least on one occasion in the boxes that I tested, my best recollection today is that there were none of the products which were incapable of centering in at least one direction under some circumstances when that first gesture selected a box. My recollection -- or "substantially centered" is the language. But not in all cases, there's cases where they don't. But there are some -- some cases where at least they did center it at some -- as best I can recollect, or at least approximate a centering of it.
>
> And, in fact, let me rephrase. I think that my recollection is that even in the tab 10.1, there is occasions when -- when it when it enlarged and substantially centered.

Declaration of Nathan Sabri in support of Apple's Opposition ("Sabri Decl."), Exh. 3, Gray 5/4/12 Depo. Tr. 181:24-182:14. Mr. Gray further testified that a second box in some of the Samsung accused products was "substantially centered" on the touch screen display:

> I believe that I have observed on at least some of the accused devices the ability to, while a first box is enlarged, select a -- select a second box. And then in response to detecting the second gesture, that that second box is substantially centered -- translated so that the second box is substantially centered on the touch screen display.

Sabri Decl., Exh. 3, Gray 5/4/12 Depo. Tr. 185:16-22. However, at trial, Mr. Gray testified that "I don't know when something is substantially center [sic]. I know when something is fully centered or not centered, but 'substantially centered' is ambiguous. How would a patent – how would an engineer understand how to make something substantially centered or not?" Gray 8/15/12 Trial Tr. 2922:19-25.

The Court recognizes that "[t]he test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1373 (Fed. Cir. 2008) (quoting *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) (quoting *SmithKline*

*Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005). Nonetheless, Mr. Gray's ability during his deposition to determine whether parts of the accused Samsung products were substantially centered or not supports the conclusion that "substantially centered" is not insolubly ambiguous.

In sum, the Federal Circuit's cases establish that precise construction is not required, or even permissible, when a patent uses a term of degree such as "substantially," and the specification does not provide a standard for measuring the precise boundaries of that term of degree. Moreover, the evidence suggests that persons of ordinary skill in the art can understand the meaning of the term "substantially centered." Accordingly, the Court finds that the term "substantially centered" is not indefinite.

## II. DESIGN PATENT INDEFINITENESS

Apple claims that Samsung's design patent indefiniteness defense, like the utility patent indefiniteness defense, is waived. Apple asserts that Samsung cannot argue design patent indefiniteness now, because Samsung submitted an interrogatory response to a question about invalidity defenses that did not provide any details about the defense. Opp'n at 3. Apple further explains that Judge Grewal then struck expert testimony that included material beyond what was disclosed in that interrogatory response. ECF No. 1144.

This failure to disclose relevant evidence does not constitute waiver of the claim. Indeed, Samsung has continued to raise this issue, from its answer, ECF No. 80 at ¶ 278, through summary judgment briefing, ECF No. 931-1 at 15, and at trial, in its proposed jury instructions, ECF No. 1694 at 123-24. Thus, Apple has been on notice of this defense throughout the litigation. Accordingly, the Court properly entertains Samsung's motion at this time.

Samsung argues that all four of the design patents at issue in this case – the D'889, D'305, D'677, and D'087 Patents – are indefinite, for a variety of reasons.

### A. LEGAL STANDARD

The standard for indefiniteness is explained above. The definiteness requirement applies to design patents as well as utility patents. *See Litton Systems, Inc. v. Whirlpool Corp*, 728 F.2d 1423,1440-41 (Fed. Cir. 1984) (overruled on other grounds by *Egyptian Goddess, Inc. v. Swisa,*

United States District Court
For the Northern District of California

*Inc.*, 543 F.3d 665 (Fed. Cir. 2008)). Thus, even in design patents, "[c]laims are considered indefinite when they are not amenable to construction or are insolubly ambiguous . . . Indefiniteness requires a determination whether those skilled in the art would understand what is claimed." *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007).

There is little clear precedent on the question of how this standard is to be applied to design patents. Courts considering the question have analyzed whether "a person of skill in the art" would get "an overall understanding of the total substance of the designs." *Antonious v. Spalding & Evenflo Companies, Inc.*, 217 F.3d 849 (Fed. Cir. 1999) (unpublished); *see also Seed Lighting Design Co., Ltd. v. Home Depot*, C 04-2291, 2005 WL 1868152 (N.D. Cal., Aug. 3, 2005) (considering whether a person skilled in the art would understand the bounds of a design patent claim from inconsistent drawings); *HR U.S. LLC v. Mizco Int'l, Inc.*, CV-07-2394, 2009 WL 890550 (E.D.N.Y., Mar. 31, 2009) (design patent would be indefinite where "the overall appearance of the design is unclear").

As indefiniteness is intimately linked to claim construction, the cases discussing claim construction in design patents bear on the indefiniteness analysis. Further, the test for infringement certainly bears on the test for indefiniteness, since the ultimate inquiry for indefiniteness is whether a person having ordinary skill in the art could tell what is claimed – and therefore, what infringes. *See LNP Engineering*, 275 F.3d at 1360. Design patents protect "overall designs" rather than individual specific features. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-41 (Fed. Cir. 2009); *see also Egyptian Goddess*, 543 F.3d at 665 (noting the risk that a verbal description will lead a jury to "plac[e] undue emphasis on particular features of the design and. . . focus on each individual described feature in the verbal description rather than on the design as a whole"). Design patents are infringed when "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Com'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). Further, the Federal Circuit has explained that in construing design patent claims, a district court "[i]s not obligated to issue a detailed verbal description of the design," *Egyptian Goddess*, 543 F.3d at 680, but "can usefully guide the finder of fact by addressing a number of other issues that bear on the

scope of the claim. Those include such matters as describing the role of particular conventions in design patent drafting, such as the role of broken lines; assessing and describing the effect of any representations that may have been made in the course of the prosecution history; and distinguishing between those features of the claimed design that are ornamental and those that are purely functional." *Id.* (internal citations omitted). It is with these parameters in mind that the Court considers whether the design patents now at issue allow "those skilled in the art [to] understand what is claimed." *Young*, 492 F.3d at 1346.

To prevail on its indefiniteness defense, Samsung must show by clear and convincing evidence that a designer of ordinary skill in the art would not understand what is claimed. *See Datamize*, 417 F.3d at 1348. This is a high standard, necessary to give effect to the statutory presumption of validity afforded to issued patents. *See* 35 U.S.C. § 282.

**B. DISCUSSION**

Samsung has made a range of arguments about why the various design patents are indefinite. Specifically, Samsung argues that the D'889 Patent is indefinite for four reasons: (1) drawings showing the design oriented in different directions make it impossible to know which way the design is supposed to be oriented or where features actually appear; (2) the use of broken lines is inconsistent, making it difficult to tell which elements are claimed and which are not; (3) the use of surface shading is different in different pictures, making it unclear what type of surface is being represented; and (4) the 035 Mockup[4] and iPad 2 are both said to embody the design, while the original iPad is not. Samsung then presents a single argument for indefiniteness of the D'305 Patent: that the use of color in one drawing but not another makes it impossible to tell whether color is necessary for the claim. Finally, Samsung presents two arguments for indefiniteness of the related D'677 and D'087 Patents: (1) that the drawing does not make clear whether the "lozenge" shape and rectangular shape are beneath the surface, a break in the surface, or resting on top of the surface; and (2) that the lack of shading on the D'087 drawing makes it impossible to see that there is, in fact, a display area below a transparent surface.

[4] The 035 Mockup is a model Apple produced of one of its designs. It was admitted at trial as DX741.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Several of Samsung's arguments concern use of drafting techniques (broken lines and shading). In support of its argument that inconsistent use of broken lines is per se indefinite, Samsung cites *In re Blum*, 374 F.2d 904 (C.C.P.A. 1967). The court in *Blum* noted that "[d]otted and broken lines may mean different things in different circumstances" and that "in each case it must be made entirely clear what they do mean" to avoid indefiniteness. *Id.* at 907. This case, however, precedes *Young, Datamize, Exxon,* and other cases explaining that a claim need only be amenable to construction to be definite, and precedes *Egyptian Goddess*, which explains the responsibilities of district courts in construing design patent claims, including construing the use of drafting techniques. Further, it makes clear that it "is the examiner's responsibility to obtain such definiteness." *Blum*, 374 F.2d at 907. Here, when the patent has already issued, the patent comes with a strong presumption of validity. Thus, there is no per se rule that inconsistent use of dotted lines renders a patent invalid.

Indeed, the Court's claim construction of the design patents shows that these features *are* amenable to construction. ECF No. 1425 (construing the use of broken lines, oblique lines, and shading in all four of the design patents). Similarly, the Federal Circuit found no difficulty in interpreting the claimed designs in the D'677, D'087, and D'889 Patents. *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314 (Fed. Cir. 2012) (preliminary injunction opinion). Given that this Court and the Federal Circuit have construed the claims in these patents, they are not "insolubly ambiguous" or "not amenable to construction." *Young*, 492 F.3d at 1346.

Moreover, the Federal Circuit has explicitly recognized that it is appropriate for district courts to issue interpretations of drafting conventions, *see Egyptian Goddess*, 543 F.3d at 680. If the use of drafting conventions had to be facially obvious for the patent to be valid, no such interpretations would ever be necessary. Further, the law is clear that the fact that claim construction is necessary does not render the patent indefinite. *See, e.g.*, *Exxon*, 265 F. 3d at 1375 (patent is not indefinite even if claim construction is quite difficult). Accordingly, the patents are not per se indefinite due to their inconsistent use of drafting techniques including shading and broken lines.

United States District Court
For the Northern District of California

Regarding the differently oriented drawings in the D'889 Patent, the Court sees nothing inconsistent about these drawings. They show a device facing different directions, but there is no place in which an identifiable feature of the design appears in two different places in two different figures, taking into account the rotation of the object depicted. The fact that a feature may be invisible in one of the figures due to the resolution and orientation of the drawing does not make it impossible to determine whether or not the feature is part of the design. Samsung argues that the "environmental features" in Figures 1-4 are "switched to different sides" in Figures 5-8. Mot. at 6. Without any further specifics in Samsung's argument, the Court cannot be certain as to what features Samsung intends to refer, but having examined the drawings, the Court sees no inconsistency. There is a circular hole on one edge and a rectangular opening on another edge visible in Figure 2; the same features are visible in the same relative places in Figures 6 and 8, though the entire object is rotated. Further, contrary to Samsung's assertion, there is simply no requirement that a claimed design must have a particular preferred orientation; indeed, Samsung cites no law even suggesting that there is. The fact that the D'889 Patent shows a design in different orientations merely shows that the particular orientation – landscape or portrait, head-on or perspective – is not part of what is claimed.

Samsung also argues that the fact that the iPad 2 and the 035 Mockup both embody the D'889 Patent necessarily renders the patent indefinite. But the law is clear that the same design patent can have multiple embodiments. *See Antonious*, 217 F.3d at 7; *In re Rubinfield*, 270 F.2d 391, 391 (C.C.P.A. 1959). Thus, the fact that both of these objects are said to embody the design does not necessarily propose a definiteness problem. Samsung seems to suggest that if two objects as different as the iPad 2 and the 035 Mockup can both embody the patented design, where the original iPad does not, the patent simply must be indefinite. But Samsung presents no evidence to support its assertion that the 035 Mockup and iPad2 are less similar in relevant ways than the original iPad and iPad2, and a mere assertion in a brief that objects are similar or dissimilar cannot serve as a basis for invalidating a patent. Given the strong presumption of validity accompanying issued patents, this Court cannot find, based on Samsung's bald assertion, that the similarities and differences between these three articles and the patent itself warrant a finding of indefiniteness.

United States District Court
For the Northern District of California

Next, Samsung claims that because only one of the figures in the D'305 Patent is in color, there is no possible way to know whether color is part of the claimed design. As Samsung acknowledges, the Model of Patent Examining Procedure explains that color drawings are allowed where "color is an integral part of the claimed design." MPEP 1503.02(V). Thus, by including a color drawing, Apple has made clear that color *is* necessary to the design. The regulations governing color drawings make clear that they are to be used only rarely and only where necessary to convey what is claimed. *See* 37 C.F.R. § 1.84(a)(2). Nowhere do the regulations say that if one drawing is in color, all drawings must be in color, and Samsung cites no authority for that proposition. Given the presumption of validity afforded to issued patents, *see Datamize*, 417 F.3d at 1347, the Court declines to adopt a rule requiring all depictions of the design to be in color in order for color to be part of the claimed design.

Samsung next argues that the D'677 and D'087 Patents are indefinite because it is unclear whether the lozenge and rectangle shapes are below, in, or on top of the surface. But it does not matter "whether the lozenge and rectangle features on the front faces are *below* a surface, material breaks *on* the surface, or features drawn on *top* of a continuous surface," Mot. at 8, as long as any of those could produce interchangeable visual effects that would appear "substantially the same to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. As this Court explained in its Claim Construction Order, a design patent protects an overall visual impression, and "it will be for the jury to decide whether the accused device's 'lozenge-shaped element would appear as it does in the figures.'" ECF No. 1425 at 7. In other words, the design patent need not specify how the lozenge shape is created. It need only provide the visual standard for comparison. It may be possible to produce the same overall visual impression with the lozenge in any one of those three positions, relative to the smooth surface. This fact does not render the design patent indefinite; it simply means that there may be more than one way to manufacture an article that embodies the claimed design.

Finally, Samsung argues that Apple's "named inventors and other witnesses" testified "that they could not understand the designs reflected in Apple's patents." Reply at 3 n.1 (citing exhibits to Pierce Reply Decl.). Generally, the witnesses to whom Samsung points express a lack of

familiarity with the conventions used in the drawings, or a lack of understanding about what design patents are. However, the witnesses' reluctance to verbally interpret the drawings presented in depositions as parts of patents subject to intense litigation does not, in and of itself, establish indefiniteness. Rather, the testimony Samsung cites consistently indicates a lack of familiarity with design patent conventions. *See, e.g.*, Pierce Reply Decl. Exh. 10 ("Q: And why is it you can't ascertain that? Is there not enough information in the drawings here to tell you? A: I don't understand the language of the patent drawing."); *id.* Ex. 12 ("Q: And in some instances you said you couldn't make that judgment based on the drawings. Do you recall that? A: Yes. Q: Why is that, sir? A: I—I can't – I can't interpret patent drawing.") Witnesses' ignorance of drafting conventions, which are detailed in the Manual of Patent Examining Procedure (*see* Mot. at 7; Opp'n at 7), does not establish that the patents cannot be construed so as to clearly delineate what design is claimed. Further, definiteness does not require that persons of skill in the art be able to clearly describe the designs in words; they must simply be able to replicate the patented design and understand what is claimed. Here, the testimony to which Samsung points demonstrates a general unease among some witnesses with the concept of design patents – not an inability to understand or replicate the claimed designs.

Further, Apple presents some trial testimony of witnesses who *were* able to interpret the drawings. Most notably, Samsung's design expert, Itay Sherman, testified that the designs were obvious and functional (*see, e.g.*, Tr. 2578:10-21; 2579:8-20; 2581:22-25). As Apple points out, it would be difficult to have an opinion that a given design was obvious without understanding what the design actually was.

Taken together, Samsung's arguments, which all concern the quality and specificity of the drawings, are in contrast to the types of defects that courts have found constituted design patent indefiniteness. For example, in *Seed Lighting*, the lamp was depicted with a base that had one shape in one drawing and a completely different shape in another drawing. 2005 WL 1868152 at *9. The difference could not be attributed to the way in which the design was represented; there were unambiguously two different shapes in the two different pictures. The Federal Circuit in *Antonious* confirms that where the ambiguities concern representation, and not the actual article, a

court need not find indefiniteness. 217 F.3d at 7-8 (no indefiniteness where discrepancies between drawings may be due to differing use of perspective). The distinction between drafting inconsistencies and actual ambiguity is especially relevant here, where the Court has been able to construe the drafting techniques, as the Federal Circuit has stated that district courts may do. *See Egyptian Goddess*, 543 F.3d at 680. In sum, all of Samsung's alleged sources of indefiniteness concern how the design is represented, rather than the nature of the design itself. These ambiguities are not fatal to patents that this Court must view with a strong presumption of validity. Accordingly, Samsung has not established indefiniteness by clear and convincing evidence, and Apple's design patents remain valid.

## III. CONCLUSION

For the reasons stated above, the Court finds that neither the '163 Patent nor Apple's design patents are invalid for indefiniteness.

**IT IS SO ORDERED.**

Dated: January 29, 2013

Lucy H. Koh
LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

Case5:11-cv-01846-LHK Document2219 Filed01/29/13 Page1 of 32

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 11-CV-01846-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW |

On August 24, 2012, after a thirteen day trial and approximately three full days of deliberation, a jury in this patent case reached a verdict. *See* ECF No. 1931. Apple now seeks judgment as a matter of law to overturn certain of the jury's findings, and judgment as a matter of law as to other issues that the jury did not reach. *See* ECF No. 2002 ("Mot."). In the alternative, Apple moves for a new trial on most of the issues on which Apple seeks judgment as a matter of law. For the reasons discussed below, the Court GRANTS Apple's motion for judgment as a matter of law that claims 10 and 15 of Samsung's U.S. Patent No. 7,675,941 are invalid; DENIES

1

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

A17

Apple's motion for judgment as a matter of law in all other respects; and DENIES Apple's motion for a new trial.[1]

## I. LEGAL STANDARD.

Rule 50 permits a district court to grant judgment as a matter of law "when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Oregon Health Sciences Univ.*, 327 F.3d 876, 881 (9th Cir. 2003). A party seeking judgment as a matter of law after a jury verdict must show that the verdict is not supported by "substantial evidence," meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992)).

A new trial is appropriate under Rule 59 "only if the jury verdict is contrary to the clear weight of the evidence." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010). A court should grant a new trial where necessary "to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

## II. DISCUSSION

### A. The Unregistered iPad/iPad2 Trade Dress

Apple moves for judgment as a matter of law that the unregistered iPad/iPad 2 Trade Dress is (1) protectable; (2) infringed; and (3) famous and diluted. In the alternative, Apple moves for a new trial on the unregistered iPad/iPad 2 Trade Dress. The jury found that the unregistered iPad/iPad 2 Trade Dress was not protectable and not famous. Therefore, the jury did not reach the questions of whether Samsung infringed or diluted Apple's unregistered iPad/iPad2 Trade Dress.

#### 1. <u>Protectability</u>

At trial, Apple had the burden of proving protectability by a preponderance of the evidence. *See* 15 U.S.C.A. § 1125; Final Jury Instruction No. 63. "The physical details and design of a product may be protected under the trademark laws only if they are nonfunctional and have acquired a secondary meaning." *Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512, 515

[1] Apple has also moved for an amended judgment to award additional damages, and for prejudgment interest. These claims will be addressed in a separate order.

United States District Court
For the Northern District of California

(9th Cir. 1989). In finding the trade dress not protectable, the jury might have found that either requirement was not met, or that neither was met. Thus, to establish that its unregistered trade dresses are protectable as a matter of law despite the jury's contrary verdict, Apple would have to show that a reasonable jury would necessarily have found both non-functionality and secondary meaning.

There are two types of functionality: utilitarian functionality and aesthetic functionality. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001). Under the traditional, utilitarian functionality test, a trade dress is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *Id*. In applying this test, the Ninth Circuit assesses four factors: "(1) whether advertising touts the utilitarian advantages of the design, (2) whether the particular design results from a comparatively simple or inexpensive method of manufacture, (3) whether the design yields a utilitarian advantage and (4) whether alternative designs are available." *Talking Rain Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)); *see also Au-Tomotive Gold, Inc., v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1072 n.8 (9th Cir. 2006) (acknowledging the four factor test applied by the Ninth Circuit). Apple argues that the evidence of non-functionality and secondary meaning presented at trial established protectability as a matter of law.

Apple cites evidence attempting to establish utilitarian functionality under all four *Disc Golf* factors. As to the first factor, "whether advertising touts the utilitarian advantages of the design," Apple points to iPad advertising that presents the iPad design without touting any utilitarian design advantages. *See* Mot. at 3 (citing PX11; PX128). As to the second factor, "whether design results from a comparatively simple or inexpensive method of manufacture," Apple cites the testimony of Apple design executive Christopher Stringer that the iPad was not designed to make manufacture cheaper or easier. *See* Mot. at 3 (citing Tr. 505:18-21). As to the third factor, whether the design yields utilitarian advantage, Apple cites Mr. Stringer's testimony that the iPad design was chosen for beauty rather than function. *See* Mot. at 3 (citing Tr. 499:5-6; 504:1-3). As to the fourth factor, Apple cites expert testimony of Apple's experts Peter Bressler

and Susan Kare that competitor products with alternative designs can perform the same functions as the iPad. *See* Mot. at 3 (citing Tr. 1095:10-1096:22 (Bressler); Tr. 1399:24-1401:1 (Kare); Tr. 1403:16-1405:12 (Kare). *See also* PX10 (depicting alternative designs).

Although Apple has presented some favorable evidence on each factor, judgment as a matter of law overturning the jury's verdict of nonprotectability is not appropriate here. It was Apple's burden to prove protectibility of the unregistered iPad trade dress, and Apple has not established that protectability was the only reasonable conclusion. *See Ostad*, 327 F.3d at 881. Indeed, in its opposition, Samsung cites substantial evidence in the record supporting the jury's finding. *See* Samsung's Opposition to Apple's Motion for Judgment as a Matter of Law ("Opp'n"), ECF No. 2053, at 1-3. As to evidence suggesting functionality, Samsung first cites testimony of Samsung's design expert Dr. Itay Sherman that the iPad trade dress is functional. Specifically, Samsung cites Dr. Sherman's testimony that the rectangular shape, rounded corners, and flat front face had "significant benefits" for "usability and economics." Opp'n at 1 (citing Tr. 2603:11-2609:9). Samsung also cites the testimony of Apple witnesses Dr. Bressler and Dr. Kare that the iPad's clear surface covering the display and familiar icon images served utilitarian functions. *See id.* (citing Tr. 1199:25-1200:16 (Bressler); 1451:13-1455:25 (Kare)). Samsung also points to Apple advertisements that tout the iPad's functionality. *See id.* (citing PX11 ("Thinner. Lighter. . .")). Finally, Samsung argues that Apple's experts admitted that they failed to seriously consider functionality and offered only conclusory testimony that alternative designs could perform the same functions as the iPad. *See id.* at 2 (citing Tr. 1469:24-1470:16 (Kare admitting that she did not consider trade dress functionality); Tr. 1206:18-1208:6 (Bressler testifying that his analysis of trade dress functionality was based upon "looking at the packaging and turning the phones on to see their operating system")); Opp'n at 1 (citing Tr. 1079:2-18; Tr. 1094:19-1096:2 (Bressler testimony that alternatives "would provide the same functions")). A reasonable jury could have weighed this substantial evidence of functionality against the evidence of non-functionality cited by Apple, and concluded that Apple did not carry its burden of showing a lack of utilitarian functionality.

United States District Court
For the Northern District of California

Furthermore, there is substantial evidence to support the jury's finding of non-protectability on the theory that the iPad trade dress has "aesthetic" functionality." *See Au-Tomotive Gold*, 457 F.3d at 1072. The asserted iPad Trade Dress has aesthetic functionality if limiting Samsung's use of the iPad Trade Dress would impose "significant non-reputation-related competitive disadvantage" on Samsung. *See id.* (citing *TrafFix*, 532 U.S. at 33). The Supreme Court in *TrafFix* explained that such significant disadvantage arises where there is a "competitive necessity" to infringe or dilute. 532 U.S. at 32-33.

The testimony of Apple's own witnesses supports a finding of aesthetic functionality. Apple industrial designer Christopher Stringer testified that the iPad was designed to be beautiful (Tr. 499:3-8), and Apple executive Philip Schiller also testified that Apple intended the iPad to be "something beautiful." Tr. 617:22-618:1. Mr. Schiller further testified that a primary reason for the iPad's "success" is that the iPad is "absolutely beautiful" (Tr. 626:5-19) and that "customers value beautiful products." Tr. 629:2-9. If the jury accepted Apple's own evidence that Apple had designed an objectively beautiful product desired by consumers for its beauty, the jury could reasonably conclude that excluding Samsung from selling products with this claimed trade dress would impose a "significant non-reputation-related competitive disadvantage." *Au-Tomotive Gold*, 457 F.3d at 1072. Thus, again, substantial evidence in the record supports the jury's finding of non-protectability on a theory of functionality.

Trade dress protectability requires not only non-functionality, but also secondary meaning. A trade dress has secondary meaning if "the purchasing public associates the dress with a particular source." *Clamp*, 870 F. 2d at 517 (citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987)). "[F]actors to be assessed in determining secondary meaning include: [1] whether actual purchasers associate [the trade dress] with [the plaintiff]; [2] the degree and manner of [the plaintiff's] advertising; [3] the length and manner of [the plaintiff's] use of the [trade dress]; and [4] whether [the plaintiff's] use of the [trade dress] has been exclusive." *Id.*

As to the first *Clamp* factor, whether actual purchasers associate the trade dress with Apple, Apple cites Apple expert Dr. Hal Poret's survey evidence that 40-65% of respondents associated iPad Trade Dress with Apple. *See* Mot. at 4 (citing Tr. 1585:22-1589:16 (Poret testifying on his

survey results)). As to the second *Clamp* factor, the degree and manner of Apple's advertising, Apple points to its extensive advertising. *See* Mot. at 4 (citing Tr. 639:13-22 and 649:2-650:19 (Schiller testifying on Apple's advertising strategy, including the "product as hero" approach and the various media used by Apple); Tr. 656:4-15 and PX16 (Schiller testimony and supporting documentation that Apple spent $379.5 million on U.S. iPad advertising through June, 2011)). Apple also argues that trade dress recognition may be inferred from the high volume of iPad sales. *See* Mot. at 4. This argument may have some relevance to the third *Clamp* factor, the length and manner of use.

Samsung argues that the jury could reasonably have found non-protectability based upon lack of secondary meaning. As to the first *Clamp* factor, Samsung argues that Apple did not show that actual purchasers associate the unregistered iPad/iPad2 Trade Dress with Apple. Instead, Samsung argues that Dr. Poret's survey was deficient because the survey asked whether consumers associated Apple with product images that included features that are not part of the claimed iPad trade dress. *See* Opp'n at 2 (citing Tr. 1680:19-1682:11). Furthermore, Samsung argues that the survey was conducted after Samsung began selling the accused tablets, and therefore has no relevance to the question of whether the iPad/iPad 2 Trade Dress had acquired secondary meaning *before* the accused Samsung tablets were released. *See* Opp'n at 2 (citing Tr. 1601:5-1602:12). Samsung also argues that Dr. Poret's survey evidence lacks credibility and scientific objectivity because Dr. Poret changed his survey methodology at Apple's request. *See* Opp'n at 3 (citing Tr. 1679:15-1680:18). As to the second *Clamp* factor, the degree and manner of Apple's iPad advertising, Samsung argues that Apple's advertisements are not limited to showing the claimed trade dress. *See* Opp'n at 3 (citing PX11; PX128 (Apple advertisements)). Therefore, Samsung reasons, the degree and manner of Apple's advertising do not support a strong inference that Apple's advertising caused the unregistered iPad/iPad 2 Trade Dress to acquire secondary meaning. Finally, as to the fourth *Clamp* factor, whether Apple had exclusive use of the iPad/iPad 2 Trade Dress, Samsung argues that numerous third party products use iPad-like designs. Opp'n at 2 (citing DX687). Samsung also argues that the iPad's popularity is not necessarily either a cause

or a result of trade dress recognition by consumers, and thus is not evidence of secondary meaning. *See* Opp'n at 3 (citing 4 *McCarthy on Trademarks and Unfair Competition* 15:47 (4th ed. 1996)).

Samsung has demonstrated that substantial evidence in the record supports the jury's finding of no secondary meaning. Specifically, Samsung presented substantial rebuttal evidence to Dr. Poret's survey, along with some evidence on the other relevant factors. Though there is evidence pointing each way, there was substantial evidence to support a conclusion that on balance, Apple failed to establish protectability.

In sum, there is substantial evidence in the record to support the jury's finding that Apple's unregistered iPad/iPad 2 Trade Dress is not protectable on any of three independent grounds: (1) utilitarian functionality; (2) aesthetic functionality; and (3) lack of secondary meaning. In light of this finding, the Court also finds that the jury's conclusion was not against the clear weight of the evidence. Accordingly, the Court DENIES Apple's motion for judgment as a matter of law that the unregistered iPad/iPad 2 Trade Dress is protectable, and DENIES Apple's alternative motion for a new trial on the issue of iPad/iPad 2 Trade Dress protectability.

**2. Infringement and Dilution**

Apple also moves for judgment as a matter of law that the unregistered iPad/iPad 2 Trade Dress is infringed and diluted. In the alternative, Apple moves for a new trial on the questions of iPad/iPad 2 Trade Dress infringement and dilution. The jury did not reach the question of infringement because it found the iPad/iPad 2 Trade Dress non-protectable. For the reasons discussed above, the Court does not overturn the jury's finding of non-protectability. A non-protectable trade dress cannot be infringed or diluted. Accordingly, the Court does not reach Apple's motion for judgment as a matter of law or a new trial on infringement and dilution.

**B. D'889 Infringement**

Apple moves for judgment as a matter of law that the Samsung Galaxy Tab 10.1 infringes U.S. Patent No. D504,889 ("the D'889 Patent"), or, in the alternative, a new trial on the question of D'889 infringement. *See* Mot. at 7-13. A product infringes a design patent if the product's design appears "substantially the same" as the patented design to an "ordinary observer." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc). Comparison of the

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

claimed design to the prior art serves to focus this infringement analysis "on those aspects of [the claimed] design which render [the claimed] design different from prior art designs." *Id.* at 677 (internal punctuation omitted).

Apple argues that the Galaxy Tab 10.1 infringes the D'889 Patent because the designs would appear substantially the same to an ordinary observer. Apple first cites this Court's and the Federal Circuit's rulings on the preliminary injunction in this case in which the Federal Circuit implicitly affirmed this Court's finding of a substantial likelihood of success on the merits as to D'889 infringement. *See* Mot. at 8 (citing *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012)). However, the Federal Circuit's ruling was not a finding of actual infringement, and the preliminary injunction order was not binding on the jury. Indeed, the jury was presented with significant evidence not presented at the preliminary injunction stage, including Apple's admission that the original iPad did not embody the D'889 Patent. Thus, the prior ruling on the preliminary injunction does not justify judgment as a matter of law or a new trial on infringement.

Apple also argues that the evidence at trial established infringement as a matter of law. The Court does not agree. Though Apple did present testimony about the similarity of the accused Galaxy Tab 10.1 to the D'889 Patent, Samsung noted a variety of differences. *See* Opp'n at 6-7. One difference is that the Galaxy Tab 10.1 has a matte back surface rather than a shiny back surface. Other differences include the Galaxy Tab 10.1's thinner profile than the D'889, the Galaxy Tab 10.1's curved junction between the front surface and the sides in contrast to the D'889's right angle (*see* D'889 at Fig. 5), and the Galaxy Tab 10.1's back surface design with a seam in contrast to the seamless D'889. Although the Court presumes that the jury followed the Court's instruction to take a gestalt approach to analyzing design patent infringement, these specific differences and others cited by Samsung are sufficient such that their cumulative effect could reasonably render the overall design of the Galaxy Tab 10.1 non-infringing. The Court thus finds that there was substantial evidence in the record to support the jury's overall conclusion of noninfringement, and that the jury's finding of noninfringement was not against the clear weight of the evidence.

Apple also argues that the Court's claim construction of the D'889 Patent was erroneous, and that under a correct claim construction, judgment as a matter of law would be warranted. Apple further argues that the claim construction is grounds for a new trial. Specifically, Apple argues that, contrary to this Court's construction, the D'889 Patent does not require a shiny back surface, and thus, the Galaxy Tab 10.1, with its matte surface, infringes. However, this Court explicitly ruled, and subsequently instructed the jury, that the oblique lines used to shade the back surface in Figure 2 depict "a transparent, translucent, or highly polished or reflective surface." ECF No. 1425 at 10-11; *see also* Final Jury Instruction No. 43. These lines are highly similar to those in Figures 1 and 3, which Apple admits show transparent, translucent, or highly polished or reflective surfaces.[2] Apple argues that although oblique lines "must" be used to indicate any shiny surface, they may also be used for other purposes, such as indicating flatness or curvature, and thus, the presence of oblique lines does not necessarily imply a shiny surface. *See* MPEP 1503.02. Therefore, Apple argues, the Court should not have construed the oblique lines as representing a shiny surface. However, flatness or curvature may be indicated by any appropriate surface shading – oblique lines are not required. *See id.* As this Court has previously ruled, by using oblique lines in Figure 2 that are highly similar or even indistinguishable from those used in Figures 1 and 3, Apple claimed a transparent, translucent, or highly polished or reflective back surface. ECF No. 1425 at 10-11. Accordingly, Apple's arguments that judgment as a matter of law would be warranted under a different construction and that a new trial is warranted on the basis of an incorrect construction cannot succeed.

Finally, Apple argues that a new trial is warranted on infringement of the D'889 Patent because the jury was incorrectly instructed. Specifically, Apple argues that the Court erroneously instructed the jury that consumer purchasing confusion was required for design patent infringement. Although the Court did refer to the concept of confusion in illustrating the test for infringement, the Court also explicitly instructed the jury that "[y]ou do not need . . . to find that any purchasers were actually deceived or confused . . . ." Final Jury Instruction No. 46. Thus,

[2] Samsung argues that the admitted model for the D'889 Patent has a shiny back, but this fact did not obligate Apple to claim that shiny back as an element of the D'889 design patent.

United States District Court
For the Northern District of California

Case5:11-cv-01846-LHK Document2220 Filed01/29/13 Page10 of 32

Apple's characterization of the jury instruction as requiring the jury to find actual confusion is incorrect. The Court's instructions provided an accurate description of the test for design patent infringement, and no new trial is warranted on the basis of this instruction.

Accordingly, the Court DENIES Apple's motion for judgment as a matter law that Samsung Galaxy Tab 10.1 does not infringe the D'889 Patent, and DENIES Apple's alternative motion for a new trial on the issue of D'889 infringement.

**C. Apple's Remaining Claims**

**1. Non-Infringement of the D'677 Patent and the D'807 Patent**

The jury found that the Galaxy Ace phone did not infringe U.S. Patent No. D618,677 (the "D'677 Patent") and that the Galaxy S II and Infuse 4G phones did not infringe U.S. Patent No. D593,087 (the "D'087 Patent"). Apple argues that these findings should be reversed by a grant of judgment as a matter of law. *See* Mot. at 13-14. However, the Court finds that there is substantial evidence in the record to support the jury's findings of non-infringement. Specifically, the Court finds that the phones themselves provide substantial evidence to support the jury's finding of non-infringement.

Although specific individual differences or similarities do not themselves determine non-infringement of design patents, individual differences may contribute to the gestalt impression that the jury found non-infringing. *See Egyptian Goddess*, 543 F.3d at 678-79. For example, among other differences from the D'677 Patent, the Galaxy Ace phone has a rectangular center button, prominent ornamentation, and wide lateral boarders. *See* JX1030 (the Galaxy Ace). *See also* Tr. 1119:19-22 (Bressler testimony that the D'677 Patent was distinguished from the prior art based upon button size). The Galaxy S II phones and the Infuse phone have either bezels distinct from the D'087 Patent's bezel, or no bezel, as well as front-face icons, writing, and logos, and different corner shapes. *See* JX1027 (Infuse 4G); JX1031 (Galaxy S II – AT&T); JX1032 (Galaxy S II – i9100); JX1034 (Galaxy S II – Epic 4G Touch); JX1035 (Galaxy S II – Skyrocket). *See also* Tr. 1121:7-10 (Bressler testimony that "the absence of a bezel takes you out of substantial similarity"); Tr. 1126:22-1127:1 (Bressler testimony that the Infuse 4G lacks a bezel). The jury could reasonably have concluded that the designs of these phones were not substantially the same as the

10
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW
A26

United States District Court
For the Northern District of California

D'677 and D'087 Patents based on these phones and the testimony about them, and this conclusion was not against the clear weight of the evidence. Accordingly, the Court DENIES Apple's motion for judgment as a matter of law that the Galaxy Ace does not infringe the D'677, and that the Galaxy S II and the Infuse 4G phones do not infringe the D'807, and DENIES Apple's request for a new trial including these issues.

**2. Non-Dilution Findings as to the Registered iPhone Trade Dress and Unregistered iPhone 3G Trade Dresses**

Apple moves for judgment as a matter of law that all the accused products dilute Apple's registered iPhone and unregistered iPhone 3G Trade Dresses. The jury found these trade dresses protectable and famous, and found dilution as to some devices, but did not find dilution as to every accused device.

Apple cites the testimony of its expert Dr. Russell Winer that "the sale of Samsung's Galaxy S phones is likely to dilute the distinctiveness of Apple's iPhone trade dresses" (Tr. 1528:17-21), and the testimony of its expert Dr. Kent Van Liere that the results of his survey using the Samsung Galaxy Fascinate and the Samsung Galaxy S II Epic 4G show "that it is likely that consumers will associate the look and design of the Samsung Galaxy phones with Apple or with the iPhone, and that would be evidence suggestive of dilution." Tr. 1695:23-1696:2. Apple argues that likelihood of dilution was the only reasonable conclusion for the jury to draw upon hearing this evidence.

However, the jury was instructed that the degree of similarity between the accused Samsung phones and Apple's trade dresses was relevant in determining dilution. *See* Final Jury Instruction No. 67. The fact that Dr. Winer and Dr. Van Liere testified that all the accused Samsung phones were likely to dilute Apple's phone trade dresses would not preclude the jury from examining the accused phones, which were in evidence, and reaching its own conclusions as to the likelihood of dilution. Indeed, the accused phones vary in appearance, and Samsung argues that features of these iPhone 3G trade dresses, including a "metallic bezel" and "rounded silver edges," are missing from the accused devices. *See* Opp'n at 13 (citing JX1011-12, 1016, 1022, 1025, 1027, 1031-35). Evidence on which to determine that the accused phones were not

Case5:11-cv-01846-LHK Document2220 Filed01/29/13 Page12 of 32

United States District Court
For the Northern District of California

sufficiently similar to Apple's trade dresses to give rise to a likelihood of dilution was before the jury. Accordingly, the jury's findings of non-dilution are consistent with substantial evidence in the record, and the jury's finding of non-dilution was not against the clear weight of the evidence. Apple's motion for judgment as a matter of law or a new trial on dilution of the registered iPhone trade dress and unregistered iPhone 3G trade dresses is DENIED.

**3. Dilution of Apple's Unregistered Combination iPhone Trade Dress**

Apple moves for judgment as a matter of law that Apple phones dilute the unregistered Combination iPhone Trade Dress, or in the alternative, for a new trial on this basis. *See* Mot. at 15-16. Trade dress dilution requires predicate findings that the asserted trade dress is protectable and famous. The jury found that the unregistered Combination iPhone Trade Dress was not protectable and not famous. As discussed previously in the context of the iPad/iPad 2 Trade Dress, a trade dress is protectable if it is: (1) non-functional; and (2) has acquired secondary meaning.

The evidence cited by Apple in support of its motion for judgment as a matter of law is insufficient to overturn the jury verdict. As discussed above, Apple bore the burden of establishing protectability of its unregistered trade dress at trial. In support of non-functionality, Apple cites only Mr. Bressler's testimony that: "It's my opinion that [all] aspects of the iPhone trade dress are not functional." *See* Mot. at 15 (citing Tr 1094:14-18). In support of secondary meaning, Apple cites only Dr. Winer's testimony that "Apple trade dresses are among the most distinctive in the world, and particularly in the U.S., and have a very high degree of recognition." *See* Mot. at 15 (citing Tr. 1507:4-9). A reasonable jury considering this brief and conclusory testimony could find that Apple had not carried its burden of proof on the issue of the Combination iPhone Trade Dress's protectability. Indeed, the cited testimony regarding secondary meaning was not even specifically about the Combination iPhone Trade Dress, but rather concerned general attributes of "Apple trade dresses." Tr. 1507:7. The jury would have been reasonable to conclude that Apple had not established the required non-functionality on the basis of this testimony, and such a finding was not against the clear weight of the evidence. Accordingly, the Court DENIES Apple's motion for judgment as a matter of law that the unregistered Combination iPhone Trade Dress is protectable, and DENIES Apple's request for a new trial on this basis. Because a trade dress that is

12
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW
A28

not protectable cannot be famous or diluted, the Court need not reach Apple's motion on these issues.

**4. Infringement of the '163 and '915 Patents**

The jury found that 21 of 24 accused Samsung products infringed U.S. Patent No. 7,844,915 ("the '915 Patent"), and that 16 of 24 accused Samsung products infringed U.S. Patent No. 7,864,163 ("the '163 Patent"). Apple now argues that *all* of the accused Samsung devices actually infringe these patents, and that judgment as a matter of law should be granted for the products the jury found not to infringe.

Apple's one-paragraph motion cites only Apple expert Dr. Karan Singh's testimony at trial that all of the Samsung devices accused of infringement actually infringe. Apple's broad citations to large blocks of transcript with minimal analysis skirts the limits of the Court's order that parties make all relevant arguments in the body of their motion, and specifically cite and quote the supporting evidence. *See* ECF No. 1945. Even if Apple's argument were properly presented, the jury was not obligated to credit Dr. Singh's testimony that all of the accused devices infringed. Instead, the jury was entitled to examine the accused devices, all of which were in evidence, and reach its own conclusions. Additionally, Samsung points to testimony from Samsung's expert Stephen Gray, which also could have provided a basis for the jury's finding of noninfringement. Based on all the evidence presented at trial, the Court finds that there is substantial evidence in the record to support the jury's finding, and the jury's finding was not against the clear weight of the evidence. Accordingly, the Court DENIES Apple's motion for judgment as a matter of law that all the accused phones infringe the '163 and '915 Patents, and DENIES Apple's request for a new trial on this basis.

**D. Willfulness and Inducement**

Apple next moves for judgment as a matter of law that Samsung willfully infringed the D'087 Patent. *See* Mot. at 17. The Federal Circuit has laid out the relevant standard for the willfulness inquiry for patent infringement: "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this

objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk. . . was either known or so obvious that it should have been known to the accused infringer." *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (internal citation omitted). Thus, the willfulness inquiry is a two-prong analysis, requiring an objective inquiry and a subjective inquiry. The objective inquiry is a question for the Court, and the subjective inquiry is a question for the jury. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).

In this case, the jury found that, as a subjective matter, Samsung did not willfully infringe the D'087 Patent. In other words, the jury considered whether the "objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer," *Seagate*, 497 F.3d at 1371, and determined that it was not. This finding was supported by substantial evidence. In particular, Samsung cites evidence that the differences between the D'087 Patent and the D'087 prior art were similar in type and scope to the differences between the D'087 Patent and the accused devices. *See* Tr. 1121:7-1178:25 (discussing varying speaker location, bezel shape, key locations, and number of keys). This evidence could reasonably have supported the jury's finding that the D'087 Patent was limited in scope, rendering it reasonable for Samsung to believe that its products, while perhaps in some ways similar to the D'087 Patent, did not infringe. Indeed, the jury's understanding that the D'087 Patent has limited scope is consistent with the jury's finding that 5 of the 8 devices accused of infringing the D'087 Patent were in fact non-infringing. This evidence of the limited scope of the D'087 Patent is sufficient to support the jury's conclusion that the infringement was not so obvious that Samsung "should have known" that there was a high likelihood of infringement.

Moreover, Apple has failed to cite any evidence of actual knowledge of infringement on Samsung's part. Instead, Apple relies on evidence that Samsung purposely imitated Apple's designs. *See* Opp'n at 10. Evidence of copying, however, is not evidence of infringement or knowledge thereof. *See Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F. 3d 1336, 1351 (Fed. Cir. 2002) ("While copying may be relevant to obviousness, it is of no import on the question

United States District Court
For the Northern District of California

of whether the claims of an issued patent are infringed.”). Given that, as explained above, it would have been reasonable for Samsung to believe that the D’087 Patent was limited in scope, Apple’s evidence that Samsung engaged in some copying of Apple’s designs does not establish that Samsung knew or should have known it was infringing. Rather, Samsung may have believed that any elements of Apple’s designs that it was copying were not protected by the limited scope of the D’087 Patent. Apple’s evidence thus does little to establish that Samsung knew or should have known it was infringing. Accordingly, the Court finds that the jury’s determination that Samsung’s infringement was not willful as a subjective matter is supported by substantial evidence in the record.

As explained above, a finding of willfulness requires both that the jury find subjective willfulness and that the court find objective willfulness. Here, the jury found that there was no subjective willfulness, and the Court agrees that this finding was supported by substantial evidence in the record. Therefore, even if the Court were to find the objective prong satisfied, there can be no ultimate willfulness determination. Accordingly, the Court need not reach the objective analysis.

Apple also moves for judgment as a matter of law that Samsung willfully infringed the D’889 Patent, willfully diluted the unregistered Combination iPhone Trade Dress, and willfully infringed and diluted the unregistered iPad/iPad 2 Trade Dress. *See* Mot. at 17. The jury did not find infringement or dilution of any of this intellectual property, and the Court has denied Apple’s motion for judgment as a matter law as to infringement and dilution for the reasons explained above. Accordingly, the Court does not reach Apple’s motion for judgment as a matter of law that these alleged acts of infringement and dilution were willful.

Finally, Apple moves for judgment as a matter of law that Samsung Electronics Corp. (SEC) induced infringement of Apple’s patents with respect to the products and patents for which the jury found no infringement.[3] *See* Mot. at 17-18. However, the jury found no infringement, and

[3] For the products and patents on which the jury did find infringement, the jury also uniformly found inducement. Regarding the ’915 Patent, Apple’s present motion concerns the Intercept and Replenish phones. Regarding the ’163 patent, Apple’s present motion concerns the Captivate Continuum, Gem, Indulge, Intercept, Nexus S 4G, Transform, and Vibrant phones.

United States District Court
For the Northern District of California

the Court has denied Apple's motion for judgment as a matter of law on infringement for these products and patents for the reasons explained above. Without infringement, there can be no inducement. Accordingly, Apple's motion for judgment as a matter of law that SEC induced these nonexistent acts of infringement is DENIED.

**E. Validity of Samsung's Patents**

Apple seeks judgment as a matter of law that all five of Samsung's asserted patents are invalid on grounds of anticipation, obviousness, or both. A patent claim is invalid by reason of anticipation under 35 U.S.C. § 102 "if each and every limitation is found either expressly or inherently in a single prior art reference." *Bristol-Myers Squibb Co. v Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001). Whether a patent is anticipated is a question of fact. *Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1297 (Fed. Cir. 2010). Anticipation must be shown by clear and convincing evidence. *Id.* at 1292.

A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). "Obviousness is a question of law based on underlying findings of fact." *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009). The underlying factual inquiries are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)); *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1332 (Fed. Cir. 2012). Though obviousness is ultimately a question of law for the Court to decide de novo, in evaluating a jury verdict of obviousness, the Court treats with deference the implied findings of fact made by the jury. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356-57 (Fed. Cir. 2012). "A party seeking to invalidate a patent on the basis of obviousness must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of

United States District Court
For the Northern District of California

the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Id.* at 1360.

**1. Claim 10 of U.S. Patent No. 7,456,893 ("the '893 Patent")**

Apple moves for judgment as a matter of law that claim 10 of the '893 Patent is invalid. *See* Mot. at 19-20. Claim 10 claims switching between camera mode and a file displaying mode, such that after switching to the camera mode and back to the file displaying mode, the same image will appear in the file displaying mode that appeared before switching to camera mode. Specifically, claim 10 recites:

> a digital image processing apparatus comprising:
> an optical system for receiving a light reflected from a subject;
> a photoelectric conversion module in optical communication with the optical system for converting the light to image data;
> a recording medium for storing the image data in an image file;
> a display screen for displaying the image data; and
> a controller connected with the photoelectric conversion module, the recording medium and the display screen, the controller being operative in a photographing mode to process the image data for storage in the recording medium and, a stored-image display mode, being operative to control the display screen for displaying a single image relative to the image data,
> wherein upon a user performing a mode-switching operation defined by switching from the stored-image display mode to the photographing mode and back to the stored-image display mode the controller causes the display screen to first display a single image file that was most recently displayed before the mode-switching operation, the single image file being different from a most-recently stored image file, and the single image file being first displayed irrespective of a duration that the camera was used in the photographing mode during the mode-switching operation.

'893 Patent, 10:20-47.

The prior art Korean Patent No. 10-2004-0013792 (PX112) discloses switching between two display modes, according to the testimony of Apple expert Dr. Paul Dourish -- an image-display mode, and a file-display mode. Tr. 3206:5-3216:25. After showing an image in the image-display mode, the prior art can switch back to the file-display mode to show either the earliest file, the oldest file, or the most recently displayed file ("bookmarking"), but does not specifically identify which file should be displayed upon switching back to file-display mode.

Regarding anticipation, Apple argues that the Korean Patent discloses every limitation of Claim 10, thus rendering Claim 10 invalid for anticipation. Mot. at 17. However, Claim 10 has at

least two limitations that are not disclosed in the Korean Patent: a photographing mode, and the requirement of bookmarking specifically to the most recently displayed image. Accordingly, the Court finds that Apple has not shown anticipation by clear and convincing evidence.

Regarding obviousness, the parties dispute: (1) whether the prior art switching between image-display and file-display modes renders it obvious to switch between photographing and stored-image display modes; and (2) whether it would have been obvious to switch back to the last-displayed image, rather than to some other image, after being in photograph mode. Apple argues that the evidence presented renders the patent obvious as a matter of law.

At trial, Apple's expert, Dr. Dourish, testified that it would have been obvious to switch back specifically to the last-displayed image, because the combination of bookmarking and mode-switching was already developed in the prior art Korean patent. Tr. 3217:1-3219:1. However, Samsung's expert Dr. Woodward Yang testified that the Korean prior art patent did not disclose mode-switching and bookmarking in the context of photography (Tr. 3666:4-19). Dr. Dourish did not explain why it would be obvious to apply the mode switching and book-marking in the context of photography. Considering this conflicting testimony, the Court finds that Apple has not presented clear and convincing evidence that it would have been obvious to switch between a photographing mode and a stored-image display mode. Furthermore, given that camera users may generally be interested in their most recent photographs, it is not at all obvious that bookmarking specifically to the image file last viewed, rather than the most recently recorded photograph or some other file, would necessarily be a desirable user interface feature in the context of an actual photography mode as claimed by the '893 Patent. Thus, the Court finds that as a matter of law, Apple has not produced clear and convincing evidence that the claimed invention was obvious in light of the prior art. Accordingly, the Court DENIES Apple's motion for judgment as a matter of law that Apple proved invalidity of the '893 Patent by clear and convincing evidence, and DENIES Apple's motion for a new trial on this basis.

**2. Claim 9 of U.S. Patent No. 7,698,711 ("the '711 Patent")**

Next, Apple moves for judgment as a matter of law that claim 9 of the ’711 Patent is invalid. *See* Mot. at 20. Claim 9 of the ’711 Patent claims using applets to play music on a mobile device. Specifically, claim 9 recites:

> A multi-tasking apparatus in a pocket-sized mobile communication device including an MP3 playing capability, the multi-tasking apparatus comprising:
> a controller for generating a music background play object, wherein the music background play object includes an application module including at least one applet, for providing an interface for music play by the music background play object, for selecting an MP3 mode in the pocket-sized mobile communication device using the interface, for selecting and playing a music file in the pocket-sized mobile communication device in the MP3 mode, for switching from the MP3 mode to a standby mode while the playing of the music file continues and for selecting and performing at least one function of the pocket-sized mobile communication device from the standby mode while the playing of the music file continues; and
> a display unit for displaying an indication that the music file is being played in the standby mode and for continuing to display the indication that the music file is being played while performing the selected function.

’711 Patent, 7:43-8:10.

Apple argues that claim 9 is rendered obvious by: (1) the K700i device (PX125), introduced in 2004, which allegedly discloses all elements except the applet element; and (2) U.S. Patent No. 6,928,948, issued to Wong et al. in 2001 (PX91) (the “Wong Patent”), which discloses using applets with a mobile device. *See* Mot. at 20. At trial, Apple’s expert Dr. Tony Givargis testified that it would have been obvious to combine the Wong Patent’s use of applets with the K700i, because the advantages of applets in mobile devices as described in the Wong Patent were substantial and well known. Tr. 3244:20-3248:14. Thus, Apple argues, it would have been obvious to one of skill in the art to combine the well-known applet technology from the Wong Patent with the remaining elements disclosed in the K700i device.

The Court does not agree that Apple presented clear and convincing evidence of obviousness for three reasons. First, there was conflicting expert testimony on the question of whether the combination would in fact have been obvious. Samsung’s expert, Dr. Yang, testified that contrary to what Dr. Givargis said, the Wong Patent would not lead an inventor to include an applet in technology like the K700i. Tr. 3667:10-15. The jury could have credited Dr. Yang’s testimony over Dr. Givargis’s. Second, Dr. Givargis did not explain why the K700i did not also

use the applet technology. The applet technology disclosed by the Wong Patent had been available for three years at the time the K700i was released. If its advantages were as obvious as Dr. Givargis claimed, one might have expected the applet technology to be included in the K700i. The omission of the applet technology from the K700i device thus suggests that the combination was not as obvious as Dr. Givargis claimed. Third, Dr. Givargis's testimony that there were no secondary indicia of non-obviousness was brief and conclusory: "I did not find anything that would have been, that would have suggested that the claim 9 of the '711 Patent would have been a commercial success." *See* Mot. at 20 (citing Dr. Givargis's testimony on "secondary considerations" at Tr. 3248:5-14). Moreover, the jury found the '711 Patent valid, and so implicitly rejected Apple's claim that there were no secondary indicia of non-obviousness. The Court must defer to this implicit factual finding. *See Kinetic Concepts*, 688 F.3d at 1356-57.

In sum, when viewed in the context of the record as a whole, Apple's evidence that claim 9 was obvious is of limited weight. The evidence thus does not rise to the level of clear and convincing evidence. Accordingly, the Court DENIES Apple's motion for judgment as a matter of law that claim 9 of the '711 Patent is invalid as obvious, and DENIES Apple's motion for a new trial on this basis.

**3. Claim 1 of U.S. Patent No. 7,577,460 ("the '460 Patent")**

Next, Apple moves for judgment as a matter of law that claim 1 of the '460 Patent is invalid. *See* Mot. at 20. Claim 1, the only claim of the '460 Patent, claims:

> A data transmitting method for a portable composite communication terminal which functions as both a portable phone and a camera, comprising the steps of:
>
> entering a first E-mail transmission sub-mode upon user request for E-mail transmission while operating in a portable phone mode, the first E-mail transmission sub-mode performing a portable phone function;
>
> entering a second E-mail transmission sub-mode upon user request for E-mail transmission while operating in a display sub-mode, the second E-mail transmission sub-mode displaying an image most recently captured in a camera mode;
>
> sequentially displaying other images stored in a memory through the use of scroll keys;
>
> transmitting the address of the other party and a message received through a user interface in the first E-mail transmission sub-mode; and

United States District Court
For the Northern District of California

> transmitting the address of the other party and the message received through the user interface and the image displayed on the display as an E-mail in the second E-mail transmission sub-mode.

'460 Patent, 14:24-44. Apple argues that this claim is invalid as obvious in view of three patents in the prior art: U.S. Patent No. 6,069,648, issued to Suso et al. in 2000 (PX119) (the "Suso Patent"), U.S. Patent No. 6,009,336, issued to Harris et al. in 1999 (PX118) (the "Harris Patent"), and U.S. Patent No. 6,690,417, issued to Yoshida et al. in 2004 (PX120) ("the Yoshida Patent").

Samsung asserts that one key element was never identified in any of the prior art: the element of "displaying an image" in the body of an email. Apple argues that the Yoshida Patent does disclose this element. *See* Mot. at 20. However, the passages from the Yoshida Patent cited by Apple merely disclose displaying an image and easily attaching that image file to an email. The Yoshida Patent does *not* disclose displaying the image in the email. *See, e.g.*, PX120 at 20:35 ("attach an image file"); 17:63-64 ("transfer of image information by use of electronic mail"); 6:38-44 ("send [the image] to a desired party as the electronic mail"). Apple has not presented any evidence that the key element of displaying an image in the body of an email was disclosed anywhere in the prior art. Without prior disclosure of all of the elements in the prior art, the patent cannot be obvious. Thus, the evidence in the record supports the jury's finding that Apple has not proven invalidity by clear and convincing evidence. Accordingly, the Court DENIES Apple's motion for judgment as a matter of law that claim 1 of the '460 Patent is invalid, and DENIES Apple's motion for a new trial on this basis.

**4. U.S. Patent No. 7,447,516 ("the '516 Patent")**

Apple also moves for judgment as a matter of law that claims 15 and 16 of the '516 Patent are invalid. Claims 15 and 16 claim an apparatus for data transmission that can reduce power flow through a low-priority data transmission channel (the HARQ channel) without reducing power flow through other higher-priority channels. Claim 15 recites:

> An apparatus for transmitting data of a first channel not supporting Hybrid Automatic Repeat reQuest (HARQ) and a second channel supporting the HARQ in a mobile telecommunication system which supports an enhanced uplink service, the apparatus comprising:
>
> a controller for determining transmit power factors for the channels, determining if total transmit power required for transmission of the channels exceeds the

United States District Court
For the Northern District of California

maximum allowed power, and scaling down the transmit power factor for the second channel if the total transmit power exceeds the maximum allowed power;

first and second channel generators for generating first and second data frames by performing channel-coding and modulation of the first and second channel data; and

a gain scaling unit for adjusting the transmit powers of the first and second channels, with which the data frames of the first and second channels is transmitted, using the scaled transit power factor for the second channel and the transmit power factor for the first channel.

Claim 16 recites:

The apparatus as claimed in claim 15, wherein the controller scales the transmit power factor for the second channel from slot to slot when the total transmit power exceeds the maximum allowed power.

’516 Patent, 21:11-34.

Apple argues that these two claims are invalid as obvious in view of the prior art. Specifically, the prior art listed in the ’516 Patent itself discloses HARQ channels in which power is scaled equally with the power on non-HARQ channels. Tr. 3423:6-3424:19; ’516 Patent at Figs. 4-5. Separately, the Hatta Reference (PX100), a Japanese patent application, discloses unequal channel scaling, but not in the context of HARQ channels. Indeed, the Hatta Reference shows scaling of multiple channels, while the ’516 Patent limits scaling to the single HARQ channel. *See* PX100, Fig. 5; ’516 Pat., Fig. 6. The question, then, is whether it would have been obvious to combine these two. Apple has not presented clear and convincing evidence that such a combination would have been obvious.

Although Apple’s expert Dr. Hyong Kim testified that applying scaling of some but not all channels to solve the problem solved by the ’516 Patent – the desire to prioritize data transmitted over non-HARQ channels – would be obvious (Tr. 3427:8-20), Samsung’s expert Dr. Tim Williams testified to the contrary (Tr. 3657:3-3658:17). Furthermore, Dr. Kim failed to explain *why* it would have been obvious to treat the HARQ channel as a separate and lower priority category. Instead, Dr. Kim testified only that:

if you look at the prior art, Figure 5 [of the ’516 Patent], and then the Hatta Patent application, it’s quite obvious. If you think about channels that you have in the 3GPP standard [that allegedly infringes the ’516 Patent], multiple channels you have, you could easily classify the channel with a HARQ and a channel without the

> HARQ. So Hatta teaches us that if you classify differently, you would scale power of those channels differently.

Tr. 3427:11-20. Dr. Kim's testimony that a HARQ channel *could* be classified differently does not indicate that it would be obvious to do so, or that it would be obvious to prioritize data transmitted over non-HARQ channels. Dr. Kim also briefly testified that he had not identified any evidence of secondary indicia of non-obviousness, specifically, copying ("No."); commercial success ("No."); failed attempts by others to make the invention ("No."); and praise in the industry ("No."). Tr. 3430:19-3431:6. Dr. Kim did not describe his investigation methods as to these secondary indicia of non-obviousness. Moreover, the Court, pursuant to *Kinetic Concepts*, infers from the jury's ultimate finding of validity that the jury implicitly found this testimony of lack of secondary indicia of non-obviousness unpersuasive. Accordingly, in light of Apple's failure to present evidence as to why it would be obvious to treat the HARQ channel as low-priority, and the jury's rejection of Apple's claim that there were no secondary indicia of non-obviousness, the Court finds that Apple has not established obviousness by clear and convincing evidence. Accordingly, the Court DENIES Apple's motion for judgment as a matter of law that claims 15 and 16 of the '516 Patent are invalid, and DENIES Apple's motion for a new trial on this basis.

**5. Claims 10 and 15 of U.S. Patent No. 7,675,941 ("the '941 Patent")**

Claims 10 and 15 of the '941 Patent claim a system for data transmission over wireless systems by chopping up data in discrete packets, with headers containing information needed for data reassembly after transmission. Specifically, claim 10 recites:

> An apparatus for transmitting data in a mobile communication system, comprising:
> a transmission buffer for receiving a service data unit (SDU) from a higher layer, determining whether the SDU can be comprised in one protocol data unit (PDU) segmenting the SDU into a plurality of segments according to a transmittable PDU size if the SDU does not be comprised in one PDU, and constructing one or more PDUs;
> a header inserter for constructing a header of each PDU, wherein the header comprises a serial number (SN) field, a one-bit field, at least one Length Indicator (LI) field;
> a one-bit field setter for setting the one-bit field of the at least one PDU to indicate whether the PDU contains an entire SDU in the data field;
> an LI inserter for inserting an LI field after the one-bit field in the at least one PDU if the SDU is not comprised in one PDU, and setting an LI field to a predefined value indicating that the PDU contains neither a first segment nor

United States District Court
For the Northern District of California

a last segment of the SDU to contain the intermediate segment of the SDU; and

a transmitter for sending the PDUs to a receiver.

’941 Patent, 12:62-13:16. Claim 15 recites:

> An apparatus for receiving data in a mobile communication system, comprising:
> a reception buffer for receiving a protocol data unit (PDU) from a transmitter and storing the PDU;
> a reassembly controller for detecting a sequence number (SN) field and a one-bit field indicating whether the PDU contains an entire service data unit (SDU) in its data field from the header, detecting the following length indicator (LI) field from the header of the PDU and determining whether the LI field is set to a predefined value indicating that the PDU contains an intermediate segment that is neither a first segment nor a last segment of the SDU if the one-bit field indicates that the PDU does not contain an entire SDU in its data field;
> a header and LI remover for eliminating the SN field, the one-bit field, and the LI field if the one-bit field indicates that the PDU does not contain the entire SDU in its data field,; and
> a reassembler for receiving the intermediate segment from the header and LI remover and constructing the SDU by combining the intermediate segment with at least one previous segment extracted from a data field of at least one previous PDU and at least one following segment extracted from a data field of at least one following PDU.

’941 Patent, 13:37-14:22.

Apple argues that these claims are invalid because they are anticipated by a single prior art reference: U.S. Patent No. 6,819,658 (“the Agarwal Patent”). *See* PX97. Samsung attempts to distinguish the Agarwal Patent based solely upon Dr. Williams’ testimony that the Agarwal Patent occurs in a different context than the ’941 Patent (satellites rather than mobile networks), and that several elements of claims 10 and 15 are missing from the Agarwal Patent “if you look.” Opp’n at 21 (citing Tr. 3658:18-3659:17). The three allegedly missing elements that Dr. Williams identified are: (1) “no one bit field”; (2) “no serial number”; and (3) “no length indicator.” *Id.*

However, Apple has presented evidence addressing each of these alleged differences. First, as to the satellite versus mobile network context issue, the Agarwal Patent is explicitly addressed to “satellite *and wireless*” networks. PX97 at [57] (Agarwal abstract). Thus, the plain text of the Agarwal Patent is inconsistent with Samsung’s suggestion that the Agarwal Patent is limited to the satellite context. The Court thus finds that there is no significant difference in contexts.

United States District Court
For the Northern District of California

As to the three supposedly missing elements, Apple's expert Dr. Edward Knightly walked the jury through the Agarwal Patent's Figure 7(B), which accounts for all three missing elements asserted by Dr. Williams. First, Dr. Knightly explained that the Agarwal Patent discloses a "one bit field." *See* Tr. 3455:23-3456:3; 3456:22-3457:15; 3458:18-3459:2. The '941 invention includes the limitation that each packet-header contains a 1-bit field (0 or 1) that indicates whether the packet is a serviceable data unit (SDU) containing a segment of the transmitted data. In the Agarwal Patent, this feature takes the form of the "V" bit – V for "valid," which indicates whether there is a segment of transmitted data in the packet, and is similarly a one bit field. *See* PX97, 10:25-32 (explaining the V bit in Fig. 7B). Thus, the Court finds that the "one bit field" limitation of the '941 Patent allegedly missing from the Agarwal Patent is, in fact, disclosed in the Agarwal Patent.

Second, Dr. Knightly explained that the Agarwal Patent discloses a sequence number. *See* Tr. 3456:17-21; 3458:18-22. The '941 Patent includes the limitation that packet headers include a sequence number for each packet. In Figure 7(B) of the Agarwal Patent, this is disclosed as the "PKTSEQNO" – the PacKeT SEQuence NO. (packet sequence number) – i.e. the sequence number for each specific packet of data. *See* PX97, 10:12-14; 10:33-37 (explaining the packet sequence number in Fig. 7B). Thus, contrary to Dr. Williams's suggestion, the Agarwal Patent does disclose the sequence number limitation in the '941 Patent.

Third, Dr. Knightly explained that the Agarwal Patent includes a length indicator. *See* Tr. 3456:4-16; 3459:3-6. The '941 Patent includes the limitation of a length indicator that shows whether the segment is the first data segment, the last data segment, or an intermediate segment. The packet header in Figure 7(B) of the Agarwal Patent discloses this limitation as the adjacent F/L fields – first / last, in which 1 0 would indicate the first segment, 0 0 an intermediate segment, and 0 1 would indicate the last segment. *See* PX97, 10:15; 10:18-20 (explaining the F and L fields in Fig. 7B). The adjacent F/L fields are thus exactly the type of length indicator included in the '941 Patent. Therefore, Dr. Williams's statement to the contrary notwithstanding, the Agarwal Patent discloses the length indicator limitation of the '941 Patent. There is no dispute that the remaining elements of these claims are disclosed by the Agarwal Patent.

United States District Court
For the Northern District of California

"To anticipate, a single reference must teach every limitation of the claimed invention." *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999). Each of the three allegedly missing elements identified by Dr. Williams is in fact disclosed by Figure 7B of the Agarwal Patent. Moreover, at the hearing on December 6, 2012, Samsung conceded that it had no evidence other than Dr. Williams's testimony that the Agarwal Patent did not anticipate the '941 Patent, and did not argue that any additional limitations were missing from the Agarwal Patent. *See* Dec. 6 Tr. 66:18-67:6. Dr. Williams's trial testimony, on which Samsung relies, was brief and conclusory, covering just over one page of transcript, and did not offer any response to any of Apple's arguments. Tr. at 3658:18-3659:21. In short, Apple has clearly identified where each of the allegedly missing elements is disclosed in a single prior art reference, as is required for anticipation, and Samsung has failed to respond to these arguments. The Court finds that Apple has established anticipation by clear and convincing evidence. Accordingly, the Court GRANTS Apple's motion for judgment as a matter of law that claims 10 and 15 of the '941 Patent are invalid.[4]

**F. Breach of Contract and Antitrust**

Finally, Apple argues that Apple is entitled to judgment as a matter of law that Samsung breached the European Telecommunications Standards Institute's ("ETSI's") Intellectual Property Rights ("IPR") Policy, and that in so doing, Samsung violated section 2 of the Sherman Act.

Electronics companies often work together to create and adopt technical standards in order to make products that will be able to work together, despite being made by different manufacturers. The Universal Mobile Telecommunications System ("UMTS") is a technical standard pertaining to cellular phone technology. Several organizations participated in the development of the UMTS, including ETSI. Apple and Samsung are both members of ETSI. ETSI has a set of policies concerning the IPRs of its members, including when and how they must be disclosed during the standard-setting process, and what sorts of terms ETSI members must offer for licenses of their

---

[4] As the jury found that these claims were not infringed, this ruling does not affect the overall outcome of this case.

United States District Court
For the Northern District of California

IPRs that are necessarily infringed by practicing the standards (so-called "essential IPRs"). IPRs include patents and patent applications.

In 2005, during the process of designing and finalizing specifications for inclusion in the UMTS, Samsung submitted two technical proposals to ETSI, seeking specific changes to draft specifications that would become part of the standard. *See* PX72 (report of working group discussing a Samsung proposal); PX70 (same); PX84 (ETSI document showing formal adoption of specifications including Samsung's proposals). These two proposals involved the incorporation of new technologies: one corresponding to what became the '941 Patent, and the other corresponding to what became the '516 Patent. After components of the UMTS incorporating Samsung's two proposals were formally adopted, Samsung declared several patents, including the '941 and '516 Patents, "essential" to the UMTS, meaning that Samsung believed it would be impossible to comply with the standard without infringing the patents. *See* PX122 (ETSI database showing Samsung's declarations). Samsung also made both general and patent-specific declarations that it was prepared to license these and other standards-essential patents on fair, reasonable, and non-discriminatory ("FRAND") terms. *See* PX122.1 (December 14, 1998 general declaration); PX122.41 (August 9, 2007 '941 declaration); PX122.24 (May 19, 2006 '516 declaration).

The parties do not dispute that the '941 Patent claims priority to a Korean patent application which was filed shortly before Samsung's submission of the proposal incorporating that technology, and that the '516 Patent claims priority to several Korean patent applications, one of which was filed shortly before Samsung's submission of a proposal incorporating the '516 technology. In other words, Samsung had filed patent applications in Korea, which correspond to the two U.S. patents at issue here, covering the technology it sought to work into the standard *before* submitting its proposals to ETSI.

On June 30, 2011, Samsung filed its counterclaims against Apple in this case, alleging violation of a range of Samsung patents. ECF No. 80. Samsung's primary argument for infringement of the two patents at issue here was that Apple's products that comply with the UMTS necessarily infringe the '516 and '941 Patents. *See* Tr. 437:19-438:9 (Samsung's opening

United States District Court
For the Northern District of California

statement regarding the '516 Patent); *id.* at 440:14-19 (same regarding '941 Patent). In July of 2011, Samsung offered Apple a license to its portfolio of declared-essential patents, consisting of some 86 patents including the two at issue here, seeking a royalty of 2.4% of the selling price of each Apple product. *See* Tr. 3145:1-16; PX80 (license offer).

**1. Breach of Contract**

The jury found that Samsung was not liable to Apple for breach of the ETSI IPR policy. Apple now moves for judgment as a matter of law that Samsung is liable for breach of contract for two reasons: (1) Samsung's violations of the ETSI IPR Policy's disclosure requirement; and (2) Samsung's violations of the ETSI FRAND licensing requirement. Apple also moves in the alternative for a new trial on these bases.

Regarding the disclosure requirement, the ETSI IPR Policy requires ETSI members such as Samsung to timely disclose potentially essential IPRs on a good faith ("bona fide") basis. PX74, Annex 6, Article 4. There are serious questions about whether Samsung fulfilled its good faith disclosure obligations under the ETSI IPR Policy when Samsung failed to disclose Samsung's Korean patent applications before the inventions were incorporated into the UMTS standard. However, the Court need not decide whether Samsung actually breached a contractual obligation. As this Court instructed the jury, to recover for breach of contract, there must be not only a breach, but also a causal link between the breach and the alleged harm. *See* Final Jury Instruction No. 75. Apple has not provided sufficient evidence of this required causal link to disturb the jury's finding of no liability for breach of contract.

Apple alleges that the causal link between Samsung's conduct and harm to Apple is that ETSI "may not have" adopted the standard it chose if Samsung had disclosed the disputed IPR (Korean Patent applications), but instead may have adopted some other standard. *See* Tr. 3579:2-6 (testimony of Apple's expert Janusz Ordover). The hypothetical alternative standard would not have required standard-users to infringe Samsung's IPR, and thus there would have been no risk of infringement, and Apple would not have been forced to defend this infringement action.

However, Apple's evidence of causation consists of the testimony of three experts, Dr. Ordover, Dr. Kim, and Dr. Knightly, and is not strong. Dr. Ordover said only that Samsung's non-

United States District Court
For the Northern District of California

disclosure "led to a choice of technology that may not have been chosen but for [Samsung's] conduct." Tr. at 3579:4-6. Dr. Ordover's conclusory testimony relied on Dr. Kim's testimony that alternatives to the '516 technology were considered, and Dr. Knightly's testimony that alternatives to the '941 technology existed at the time the UMTS was adopted. Tr. 3432:2-15 (Kim); Tr. 3460:20-23 (Knightly). However, Dr. Kim failed to address the advantages or disadvantages of the alternative technologies. Thus, Dr. Kim's testimony does not show that these alternative technologies would likely have been chosen but for Samsung's non-disclosure – only that there was an abstract possibility that ETSI could have chosen something different.

Dr. Knightly similarly failed to establish causation. He first testified that the Agarwal Patent provides an alternative to the '941 technology. *See* Tr. 3460:20-23. However, Dr. Knightly did not testify as to what alternative technology the Agarwal Patent discloses. *See id*. Indeed, the Agarwal Patent is the reference that Dr. Knightly argued, and this Court has ruled, anticipates the '941 Patent, meaning that it discloses the *same* technology as the '941 Patent, rather than some alternative technology. Though some other part of the Agarwal Patent could theoretically disclose an alternative technology in addition to the technology that anticipates the '941 Patent, Dr. Knightly did not identify any such alternative in the Agarwal Patent. His reliance on the Agarwal Patent thus fails to establish that there was an available alternative. Dr. Knightly also testified that one alternative available at the time of standard-setting – "the original e-bit" – existed in the market at the time of standard-setting. Tr. 3460:24-3461:17. But this testimony, like Dr. Kim's testimony, fails to address whether there are any advantages to one alternative or the other, and thus whether there was a realistic possibility of the adoption of the alternative over the '941 technology.

In sum, Apple's evidence in support of its argument that ETSI would likely have adopted an alternative standard had ETSI known of Samsung's IPR is sufficiently equivocal that the jury could reasonably have found that the causation element was not satisfied. This conclusion was not against the clear weight of the evidence. Accordingly, the record is consistent with the jury's finding that there was no breach of contract due to the ETSI disclosure provisions.

Apple has also failed to establish that the jury was wrong as a matter of law to find that Samsung did not breach the ETSI policy by its conduct relating to FRAND obligations. Whether

United States District Court
For the Northern District of California

Samsung violated its FRAND licensing obligations is a question of fact. The jury heard conflicting expert testimony as to whether Samsung's offer to license Apple Samsung's entire declared-essential patent portfolio at a 2.4% royalty rate met Samsung's FRAND licensing obligations. *Compare* testimony of Samsung's expert David Teece, Tr. 3145:1-3146:23 (FRAND) *with* testimony of Apple's expert Richard Donaldson, Tr. 3537:12-3538:6; 3539:6-20 (not FRAND). Dr. Teece's testimony represents substantial evidence in the record in support of the jury's finding that Samsung did not violate its FRAND licensing obligation under the ETSI IPR Policy. Further, given the conflicting nature of the testimony, the jury's finding was not against the clear weight of the evidence. Thus, the Court DENIES Apple's motion for judgment as a matter law that Samsung is liable to Apple for breach of contract, and DENIES Apple's motion for a new trial on this basis.

**2. Antitrust**

The jury found that Samsung did not violate section 2 of the Sherman Act. The jury was instructed that the elements of the violation are: (1) that the alleged market is a relevant antitrust market; (2) that Samsung possessed monopoly power in that market; (3) that Samsung "willfully" acquired its monopoly power in that market by engaging in anticompetitive conduct; (4) that Samsung's conduct occurred in or affected interstate commerce; and (5) that Apple was injured in its business or property because of Samsung's anticompetitive conduct. *See* Final Jury Instruction No. 77. Apple has moved for judgment that Samsung violated the Sherman Act as a matter of law, meaning that the only reasonable conclusion the jury could have drawn from the evidence was that all five elements were met. Failure to establish any one of these five elements would justify the jury's finding of no liability.

Apple's allegations of anticompetitive conduct concern the same behavior that gave rise to the failed breach of contract claim: breach of the disclosure policy, and failure to comply with FRAND obligations. *See* Mot. at 25-26. Regarding the disclosure policy, Sherman Act liability, requires that Samsung's conduct have caused Apple harm. However, as explained above, Apple's evidence that any breach of the disclosure policy by Samsung caused any harm suffered by Apple is not sufficiently strong to require the jury to find for Apple. Thus, for the reasons explained above in the context of breach of contract, the Court will not upset the jury's determination that

there can be no Sherman Act liability for Samsung's alleged failure to abide by ETSI's IPR disclosure policy.

Regarding FRAND obligations, Samsung's licensing behavior could only give rise to Sherman Act liability if it constituted anticompetitive behavior. However, the jury, as discussed above, implicitly found that the conflicting testimony had not established that Samsung had failed to meet its FRAND obligations. In so finding, the jury could also reasonably have found that Samsung's licensing behavior was not anticompetitive, and thus did not meet the third requirement for Sherman Act liability. Accordingly, the Court DENIES Apple's motion for judgment as a matter of law that Samsung violated section 2 of the Sherman Act, and DENIES Apple's motion in the alternative for a new trial.

**3. CONCLUSION**

For the reasons discussed above, the Court:

(1) GRANTS Apple's motion for judgment as a matter of law that claims 10 and 15 of the '941 Patent are invalid;

(2) DENIES Apple's motion for judgment as a matter of law that Apple's unregistered iPad/iPad 2 trade dress is protectable, infringed, and diluted;

(3) DENIES Apple's motion for judgment as a matter of law that the Galaxy Tab 10.1 infringes the D'889 Patent;

(4) DENIES Apple's motion for judgment as a matter of law that all accused Samsung phones infringe or dilute all Apple's intellectual property as asserted, and that all acts of infringement or dilution by accused Samsung phones and tablets were willful and induced by SEC;

(5) DENIES Apple's motion for judgment as a matter of law that the '893, '711, '460, and '516 Patents are invalid; and

(6) DENIES Apple's motion for judgment as a matter of law that Samsung is liable to Apple for breach of contract and antitrust violations stemming from breach of the ETSI IPR Policy.

**IT IS SO ORDERED.**

Case5:11-cv-01846-LHK Document2219 Filed01/29/13 Page32 of 32

Dated: January 29, 2013

LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

32

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

A48

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 11-CV-01846-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW |

On August 24, 2012, after a thirteen day trial and approximately three full days of deliberation, a jury in this patent case reached a verdict. *See* ECF No. 1931. Samsung now seeks judgment as a matter of law to overturn certain of the jury's findings. In the alternative, Samsung moves for a new trial. *See* Samsung's Motion for Judgment as a Matter of Law, New Trial And/Or Remittitur Pursuant to Federal Rules of Civil Procedure 50 and 59 ("Mot."), ECF No. 2013. Apple filed an opposition ("Opp'n"), ECF No. 2050, and Samsung filed a Reply ("Reply"), ECF No. 2131. For the reasons discussed below, the Court GRANTS Samsung's motion for judgment as a matter of law that claims 15 and 16 of Samsung's U.S. Patent No. 7,447,516 ("the '516 Patent") are not exhausted. The Court also GRANTS judgment as a matter of law that Samsung's acts of patent infringement were not willful. However, for the reasons discussed below, the Court

DENIES Samsung's motion for judgment as a matter of law in all other respects, and DENIES Samsung's motion for a new trial.[1]

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 50 permits a district court to grant judgment as a matter of law "when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Oregon Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003). A party seeking judgment as a matter of law after a jury verdict must show that the verdict is not supported by "substantial evidence," meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992)).

A new trial is appropriate under Rule 59 "only if the jury verdict is contrary to the clear weight of the evidence." *DSPT Int'l, Inc. v. Nahum*, 624 F. 3d 1213, 1218 (9th Cir. 2010). A court should grant a new trial where necessary "to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

## II. ANALYSIS

### A. The Jury Reasonably Found Apple's Design Patents to be Valid and Infringed

#### 1. Infringement

Samsung moves for judgment as a matter of law that Samsung's accused devices do not infringe U.S. Patent No. D593,087 ("the D'087 Patent"), U.S. Patent No. D618,677 ("the D'677 Patent"), and U.S. Patent No. D604,305 ("the D'305 Patent"). *See* Mot. at 4-7. In the alternative, Samsung moves for a new trial on infringement of Apple's design patents. *Id.*

Samsung argues that there is no evidence to support the jury's findings of design patent infringement. Samsung cites evidence that would have supported a jury finding of non-infringement. Specifically, Samsung points to evidence of similarities between Apple's design patents and the prior art that might limit the scope of the design patents, thus rendering Samsung's

[1] Samsung has also moved for remittitur or a new trial on damages. These claims will be addressed in a separate order.

United States District Court
For the Northern District of California

designs outside of the scope of Apple's patents. *See* Mot. at 5-7. However, other evidence in the record supports the jury's finding of infringement. Specifically, the jury was presented with the design patents, accused devices, and prior art, and was appropriately instructed on the "substantially the same" standard for infringement and the role of prior art in analyzing design patent infringement. *See* Final Jury Instruction No. 46. Furthermore, the jury heard expert testimony supporting the conclusion that Samsung devices infringed Apple's design patents. *See* Tr. 1049:6-1064:11 (Apple design expert Peter Bressler's testimony on substantial similarity between Samsung's accused phones and the D'087 and D'677 Patents); Tr. 1371:18-1381:23 (Apple design expert Dr. Susan Kare's testimony on substantial similarity between Samsung's accused phones and the D'305 Patent). The phones themselves, along with the expert testimony, constitute substantial evidence in the record to support the jury's finding of infringement. Given this evidence, the jury's conclusion of infringement was not against the clear weight of the evidence.

Samsung also argues that the Court inappropriately failed to instruct the jury to factor out functional design elements. As a preliminary matter, Samsung raised this objection during the briefing on the final jury instructions, and therefore this argument is not waived. *See* Reply at 6, n. 7. However, a "filtering" instruction of the type Samsung requested is not required. The Federal Circuit has explained that a court may aid a jury in determining design patent infringement by construing the claims, *see Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir. 2008) (en banc), and that claim construction may, but need not, include listing functional elements that should be factored out of the claimed design. *See Richardson v. Stanley Works, Inc.*, 597 F. 3d 1288, 1293-94 (Fed. Cir. 2010) (construing a design patent by factoring out functional elements in the context of a bench trial). However, claim construction is a matter of law for the Court. The cases do not suggest that this type of claim construction is appropriate when instructing a jury. The cases engaging in such explicit filtering analysis generally do so in contexts in which a court then rules directly on infringement, such as summary judgment or a bench trial. *See, e.g., Richardson*, 597 F.3d 1288 (bench trial). Indeed, *Egyptian Goddess* warns of the risks of providing an element-by-element construction to a jury, as such instruction could divert the jury's attention from "the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

design as a whole." *Id.*; *see also* 543 F.3d at 680. Moreover, the Court determined in considering Samsung's request for a jury instruction that Samsung had not shown that the allegedly functional design elements were actually functional under the Federal Circuit's "dictated by function" standard, particularly in light of Apple's evidence that alternative designs existed. *See Richardson*, 597 F.3d at 1294 (applying the "dictated by function" standard during design patent claim construction). *See also* PX163-168 (alternative designs created by Apple); PX10, PX148, PX150, PX2277, PX2278 (alternative designs created by third parties).

In sum, the Court appropriately instructed the jury, and there is substantial evidence in the record to support the jury's ultimate finding of infringement of the D'087, D'677, and D'305 Patents. Moreover, the jury's verdict was not against the clear weight of the evidence. Accordingly, the Court DENIES Samsung's motion for judgment as a matter of law that none of Samsung's accused phones infringe Apple's design patents, and DENIES Samsung's motion in the alternative for a new trial.

**2. Invalidity**

Samsung also moves for judgment as a matter of law that Apple's D'087, D'677, and D'305, Patents, as well as U.S. Patent No. D504,889 ("the D'889 Patent") are invalid, or in the alternative for a new trial. *See* Mot. at 7-8. Samsung argues that no reasonable jury could have found Apple's design patents valid.

a. Functionality

First, Samsung argues that the patents are invalid because the patented designs are functional. It was Samsung's burden at trial to establish invalidity by clear and convincing evidence. Samsung points to expert testimony identifying some allegedly functional elements of the designs. However, invalidity requires not just some functional elements, but that the overall design is "primarily functional." *See PHG Techs. v. St. John Companies, Inc.*, 469 F. 3d 1361, 1366 (Fed. Cir. 2006). A design is primarily functional if "the appearance of the claimed design is 'dictated by' the use or purpose of the article." *Id.* (quoting *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F. 2d 1117, 1123 (Fed. Cir. 1993)). Expert testimony of the type Samsung identifies, stating that individual design elements confer specific functional benefits (e.g., that round corners

Case5:11-cv-01846-LHK Document2220 Filed01/29/13 Page5 of 40

"help you move things in and out of your pocket," Tr. 680:9-15), does not constitute clear and convincing evidence that the overall patented designs are dictated by function. Samsung has not identified any other evidence of functionality directed at the designs as a whole. Accordingly, the Court cannot say that the jury's finding that Samsung had not met its burden to establish functionality was unsupported by substantial evidence, or was against the clear weight of the evidence. Samsung's motion for judgment as a matter of law or a new trial on the question of design patent functionality is DENIED.

b. D'677 and D'087 Obviousness

Second, Samsung argues that the D'677 and D'087 Patents are invalid for obviousness. [2] "Because obviousness is a mixed question of law and fact, we first presume that the jury resolved the underlying factual disputes in favor of the verdict and leave those presumed findings undisturbed if they are supported by substantial evidence." *Kinetic Concepts*, 688 F.3d at 1357. The factual inquiries underlying the obviousness inquiry are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)); *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1332 (Fed. Cir. 2012). "Then we examine the ultimate legal conclusion of obviousness de novo to see whether it is correct in light of the presumed jury fact findings." *Kinetic Concepts*, 688 F.3d at 1357. The jury found the D'688 and D'087 Patents valid. Thus, the Court will first examine whether substantial evidence supported the jury's underlying factual conclusions that there was a significant gap between the prior art and the patents, and that there were persuasive secondary indicia of non-obviousness.

[2] Samsung appropriately addressed obviousness as a legal conclusion in the context of its motion on non-jury claims. However, the Court addresses obviousness in this Order, along with other invalidity arguments, because obviousness turns on the jury's implied findings of fact in support of non-obviousness, which the Court evaluates under the "substantial evidence in the record" standard. *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1357 (Fed. Cir. 2012).

United States District Court
For the Northern District of California

In addressing a claim of obviousness in a design patent, "the ultimate inquiry. . . is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed.Cir.1996)). "To determine whether 'one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design,' the finder of fact must employ a two-step process." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012) (quoting *Titan Tire*, 566 F.3d at 1381). "First, 'one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design.'" *Id.* at 1329 (quoting *Durling*, 101 F.3d at 103). "Second, 'other references may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design.'" *Id.* "However, the 'secondary references may only be used to modify the primary reference if they are so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other.'" *Id.* at 1329-30 (quoting *Durling*, 101 F.3d at 103).

To support Samsung's claim that the D'677 and D'087 Patents are obvious, Samsung cites expert Itay Sherman's testimony that these patents are obvious over two Japanese patents, a Korean patent (K'547), and the LG Prada, individually or in combination. Mr. Sherman's expert testimony consisted of identification of similarities between the prior art and the D'677 and D'087 Patents, followed by a bare assertion that a designer of ordinary skill would have found it obvious to combine the identified prior art to create the D'677 and D'087 Patents. *See, e.g.*, Tr. 2595:7-22 (Sherman testimony that it would have been obvious to combine the two Japanese patents to create the D'087 Patent). However, Mr. Sherman acknowledged that some differences between the prior art and the D'677 and D'087 exist. For example, Mr. Sherman admitted that one of the Japanese patents, JP'638, has a curved front face rather than a flat front face. *See* Tr. 2582:5-7. Other differences are apparent from the evidence, although Mr. Sherman did not specifically acknowledge them in his testimony. For example, the Korean patent K'547 discloses a screen that is much smaller in comparison to the overall front face than the screen in the D'677 and D'087

Patents, particularly in the shorter dimension. *See* DX727.002 (K'547 disclosure of the front face). Thus, there was substantial evidence in the record to support the jury's implicit factual finding that there existed a significant gap between any primary reference in the prior art and the D'677 and D'087 Patents. As Samsung bears the burden on this issue, the Court cannot say that the jury's implied finding that these gaps were significant was not supported by the record.

Furthermore, Apple cites substantial evidence in the record of objective indicia of non-obviousness, including design awards, other accolades, and alleged copying by Samsung. *See* Opp'n at 7 (citing Tr. 508:4-509:4 (testimony on design awards); PX135.1 ("iPhone is pretty" was top reason for invention of the year award); PX44.122, .PX44.127, and .PX44.131 (evidence of Samsung copying)). Pursuant to *Kinetic Concepts*, the Court understands that in reaching the ultimate legal conclusion of non-obviousness, the jury made implied findings of fact accepting this evidence of secondary indicia of non-obviousness. The Court finds that the jury's implied finding that secondary indicia support non-obviousness is supported by substantial evidence in the record.

In light of these factual findings, the Court must now consider whether, as a matter of law, it would have been obvious to a designer of ordinary skill in the art to bridge the significant gap the jury implicitly found. The Court notes that Mr. Sherman did not identify the required primary and secondary reference. *See* Tr. 2580:5-2586:7; 2588:4-2589:22 (Mr. Sherman's testimony about prior art). Nor did he attempt to explain why it would have been obvious for a designer of ordinary skill to take whichever of these prior art designs might have been a primary reference and combine it with the relevant element of a secondary reference or otherwise modify it to arrive at the patented designs. Instead, Samsung offers only the bare *ipse dixit* of Mr. Sherman, who is not himself an industrial designer, that it would have been obvious for an ordinary designer to bridge the gaps between various pieces of prior art and the patents. This testimony does not satisfy the Federal Circuit's articulated requirements for obviousness in design patents. *See Apple*, 678 F.3d at 1329-20. Samsung did not present any other testimony on obviousness for these two design patents. Thus, the Court finds no persuasive evidence of obviousness in the record.

In sum, the jury's implied factual findings of a significant gap and indicia of non-obviousness are supported by substantial evidence in the record. In light of the gaps between the

Case: 14-1335 Case5:11-cv-01846-LHK Document1: 34 Document2220 Page: 160 Filed01/29/13 Page 8 of 40 Filed: 05/23/2014

United States District Court
For the Northern District of California

prior art and the D'677 and D'087 Patents, the secondary indicia of non-obviousness, and the lack of evidence about a secondary reference or how the identified gap might be bridged, the Court finds that the D'677 and D'087 are not invalid for obviousness.

c. D'889 Obviousness

Third, Samsung moves for judgment as a matter of law that the D'889 Patent is obvious over two prior art references: the Fidler tablet and TC1000 tablet. The Federal Circuit previously ruled that "the Fidler reference, with or without the TC1000, cannot serve to render the D'889 patent invalid for obviousness" because its similarity to the claimed design is at "too high a level of abstraction." *Apple*, 678 F.3d at 1332. Thus, the Federal Circuit ruled that neither the Fidler tablet nor the TC1000 tablet was an appropriate primary reference. *See id.* Although the Federal Circuit's ruling at the preliminary injunction stage does not necessarily preclude a finding of obviousness in light of additional evidence presented at trial, the jury agreed with the Federal Circuit and concluded that the D'889 Patent was not obvious. This Court now considers whether the factual record could support the jury's conclusion.

In reaching its finding that the D'889 Patent was valid, the jury made implicit findings of fact about the scope of the prior art. In particular, there was significant evidence before the jury that these two prior art references and the D'889 patent differ in several respects, including the Fidler tablet's curved front face, and the Fidler tablet's inclusion of a screen frame that is asymmetric and not flush with the screen. The TC1000 is more different still. *Kinetic Concepts* requires this Court to credit the jury's implicit finding that these gaps are significant. In light of these implicit findings of fact, supported by the record and in accord with the Federal Circuit's reasoning in *Apple*, 678 F.3d 1314, neither the Fidler tablet, nor the still more divergent TC1000, can serve as a primary reference for obviousness. Accordingly, the Court finds that as a matter of law, the Fidler tablet and the TC1000 do not render the D'889 Patent obvious, and the Court DENIES Samsung's corresponding motion for judgment as a matter of law or a new trial.

d. D'677 Double Patenting

Fourth, Samsung argues that the D'677 Patent is invalid for double-patenting over the D'087 Patent. 35 U.S.C. § 101 states that an inventor may obtain "a patent" for an invention.

8

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

A56

Accordingly, the statute "permits only one patent to be obtained for a single invention." *Boehringer Ingelheim Intern. GmbH v. Barr Labs., Inc.*, 592 F.3d 1340, 1346 (Fed. Cir. 2010) (quoting *In re Lonardo*, 119 F.3d 960, 965 (Fed. Cir. 1997)). However, § 101 "only prohibits a second patent on subject matter identical to an earlier patent." *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 (Fed. Cir. 2003). Accordingly, courts developed the doctrine of obviousness-type double patenting to "prevent the extension of the term of a patent . . . by prohibiting the issuance of the claims in a second patent not patentably distinct from the claims of the first patent." *Boehringer Ingelheim*, 592 F.3d at 1346 (quoting *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985)).

The Federal Circuit has explained that "a patentee may [assure the validity of a patent by filing] a disclaimer after issuance of the challenged patent or during litigation, [and] even after a finding that the challenged patent is invalid for obviousness-type double patenting." *See Boehringer Ingelheim*, 592 F.3d at 1347 (citing *Perricone v. Medicis Pharmaceutical Corp.*, 432 F. 3d 1368, 1975 (2005)). Apple has now filed a terminal disclaimer with the P.T.O., limiting the term of the D'677 Patent to the duration of the earlier-expiring D'087 Patent. *See* ECF No. 2162. Accordingly, under *Boehringer*, Apple has assured the validity of the D'677 Patent as against Samsung's claim of double patenting over the D'087 Patent. For this reason, Samsung's motion for judgment as a matter of law that the D'677 Patent is invalid on the basis of double patenting is DENIED.

### B. Apple's Registered iPhone Trade Dress and Unregistered iPhone 3G Trade Dress are Protectable and Diluted

Samsung moves for judgment as a matter of law that Apple's registered iPhone Trade Dress and unregistered iPhone 3G Trade Dress are not protectable and not diluted. *See* Mot. at 8-12. In the alternative, Samsung moves for a new trial on trade dress. *Id.*

#### 1. Functionality

Samsung argues that Apple's registered iPhone Trade Dress and unregistered iPhone 3G Trade Dress are not protectable because they are functional. As a preliminary matter, Apple's registered iPhone Trade Dress is presumed valid, and therefore non-functional, while Apple's

United States District Court
For the Northern District of California

unregistered iPhone 3G Trade Dress is presumed functional. *See* 15 U.S.C.A. § 1125; Final Jury Instruction No. 62.

There are two types of functionality: utilitarian functionality and aesthetic functionality. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001). A finding of either type of functionality would defeat protectability. Under the traditional, utilitarian functionality test, a trade dress is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *Id*. In applying this test, the Ninth Circuit assesses four factors: "(1) whether advertising touts the utilitarian advantages of the design, (2) whether the particular design results from a comparatively simple or inexpensive method of manufacture, (3) whether the design yields a utilitarian advantage and (4) whether alternative designs are available." *Talking Rain Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (citing *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)); *see also Au-Tomotive Gold, Inc., v. Volkswagen of America*, 457 F.3d 1062, 1072 n.8 (9th Cir. 2006) (acknowledging the four factor test applied by the Ninth Circuit).

Samsung argues that the record lacks substantial evidence to support the jury's findings that: (1) Apple had established nonfunctionality for its unregistered iPhone 3G trade dress; and (2) that Samsung had not proven functionality for Apple's registered iPhone trade dress.[3] Apple cites evidence disputing utilitarian functionality under all four *Disc Golf* factors. As to the first factor, "whether advertising touts the utilitarian advantages of the design," Apple cites Apple executive Phil Schiller's testimony that Apple's advertising used a "product as hero" pitch that does not tout design utility. *See* Opp'n. at 8 (citing Tr. 654:24-655:1). As to the second factor, "whether design results from a comparatively simple or inexpensive method of manufacture," Apple cites the testimony of Apple design executive Christopher Stringer that Apple encountered difficulties in manufacturing iPhones, suggesting that the designs were *not* especially simple to manufacture. *See* Mot. at 8 (citing Tr. 494:15-495:21). As to the third factor, whether the design yields utilitarian

[3] As the designs in the iPhone and iPhone 3G trade dress are similar and apply to different versions of the same product, the iPhone, the parties rely on the same evidence in analyzing the functionality of both trade dresses. The Court will do the same.

advantage, Apple cites Mr. Stringer's testimony that the iPhone design was selected from among alternative designs because "[i]t was the most beautiful" rather than for some functional purpose. *See* Opp'n. at 8 (citing Tr. 493:14-15). As to the fourth factor, Apple cites actual alternative phone body designs (*see* Opp'n. at 8 (citing PX10)), and the testimony of Apple's expert Susan Kare on alternative phone screen designs. *See* Opp'n. at 8 (citing Tr. 1400:6-1401:1). This body of evidence is sufficient to support a jury's finding that Apple had proven utilitarian nonfunctionality for its unregistered iPhone 3G trade dress and that Samsung had not proven utilitarian functionality for Apple's registered iPhone trade dress.

Furthermore, there is substantial evidence to support the jury's finding of protectiblity because the asserted iPhone Trade Dresses lack "aesthetic functionality." *See Au-Tomotive Gold*, 457 F.3d at 1072. A trade dress has aesthetic functionality only if limiting competitors' use of the trade dress would impose a "significant non-reputation-related competitive disadvantage." *See id.* (citing *TrafFix*, 532 U.S. at 33). The Supreme Court in *TrafFix* explained that such significant disadvantage arises where there is a "competitive necessity" to infringe or dilute. 532 U.S. at 32-33.

Samsung argues that Apple admitted aesthetic functionality when Apple witnesses testified that the beauty of the iPhone is a factor in its success. *See* Mot. at 9 (citing testimony of Apple design executive Mr. Stringer, Tr. 484:1-11; Apple executive Mr. Schiller, Tr. 602:8-19; 625:4-626:4; 635:24-636:5; and 721:3-7). However, Samsung elsewhere identifies evidence that few consumers are primarily motivated by design considerations such as aesthetics. *See, e.g.*, Mot. at 19 (citing DX592.023; PX69.43 (surveys showing that only between 1% and 5% of purchasers are motivated by phone design and appearance). Samsung cannot credibly argue that consumers are not motivated by aesthetics in hoping to avoid an injunction or damages award, and simultaneously argue that aesthetics are a significant motivator in hopes of invalidating Apple's trade dress. Although, as Samsung points out, the evidence in the record shows that some fraction of consumers may be motivated in some part by smartphone design and aesthetics, on balance, the evidence introduced by both Apple and Samsung concerning the limited role of aesthetics in purchasing decisions is sufficient to support the jury's implicit finding that Samsung did not need

United States District Court
For the Northern District of California

to infringe Apple's trade dress in order to compete with the iPhone, as would be required for a finding of aesthetic functionality. *See TrafFix*, 532 U.S. at 32-33.

Accordingly, the Court finds that there is substantial evidence in the record to support the jury's findings that: (1) Apple rebutted the presumption that the unregistered iPhone 3G Trade Dress is functional, and (2) Samsung failed to rebut the presumption that the registered iPhone Trade Dress is non-functional. Samsung's motion for a new trial or judgment as a matter of law that Apple's trade dresses are invalid for functionality is DENIED.

**2. Secondary Meaning and Fame**

To be protectable, a trade dress must have secondary meaning such that the purchasing public associates the trade dress with a particular source. *See Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F. 2d 512, 517 (9th Cir. 1989) (citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987)). Further, a trade dress cannot be diluted unless it is famous such that it is "truly prominent and renowned" among the general public. *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999). Apple bears the burden of showing dilution for both registered and unregistered trade dress. *See* 15 U.S.C. § 1125; Final Jury Instruction No. 65.

Although secondary meaning and fame are different issues, here they rise and fall on largely the same evidence. Samsung argues that Apple has failed to show that its registered iPhone Trade Dress and unregistered iPhone 3G Trade Dress have acquired secondary meaning and are famous. Apple has introduced: (1) survey expert testimony (Tr. 1578:24-1585:5 (Dr. Hal Poret's testimony that his surveys showed consumers associated iPhones with Apple); Tr. 1695:17-1695:22 (Apple expert Dr. Kent Van Liere, same); (2) iPhone advertisements from 2007 through 2010, including iPhone 3G advertisements from 2008 (PX11, 12, 127); (3) television show clips from 2007 through 2010 (PX14); (4) media reviews of the original iPhone from 2007 (PX 133, 135); (5) advertising expenditures (PX16 ("Advertising Expenditures (U.S.)"); Tr. 653:24-654:1 (Mr. Schiller testimony estimating $120-130 in advertising expenses between October 2009 and June 2010)); and (6) fact witness testimony (Tr. 639:8-640:3 (Mr. Schiller's testimony on product as hero advertising)). This significant pool of evidence represents substantial evidence in the record from which the jury could infer both secondary meaning and fame. Accordingly,

United States District Court
For the Northern District of California

Samsung's motion for judgment as a matter of law or a new trial on grounds that Apple's trade dress was not protectable or famous is DENIED.

**3. Other Elements of Dilution**

Trademark dilution is caused by the use in commerce of a mark that "impairs the distinctiveness" or "harms the reputation" of a famous mark. 15 U.S.C. §1125(c). "Dilution refers to the whittling away of the value of a trademark when it's used to identify different products." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (citation and quotation marks omitted). While many dilution claims refer to trade names, the dilution statute explicitly applies dilution protection to trade dress. *See* 15 U.S.C. §1125(c)(4). To establish a claim of trade dress dilution, in addition to proving fame, a plaintiff must show that (1) the defendant is "making use of the [trade dress] in commerce," (2) the defendant's "use began after the [trade dress] became famous," and (3) the defendant's use of the trade dress is "*likely* to cause dilution by blurring" or by "tarnishment." *See Jade Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) (emphasis added).

Samsung does not dispute that substantial evidence supported a finding that Samsung used the asserted Apple trade dresses "in commerce." Instead, Samsung argues that Samsung is entitled to judgment as a matter of law or a new trial on dilution because the evidence did not show that the asserted trade dresses had become famous prior to Samsung's first sale of the accused diluting phones in July 2010. *See* Mot. at 10-11. However, Apple's substantial advertising and press coverage prior to release of Samsung's phones (PX11; PX12; PX 16; PX127; PX133; PX135; Tr. 639:8-640:3; Tr. 653:24-655:1), taken together with Apple's later-collected survey evidence (Tr. 1578:24-1585:5; Tr. 1695:17-22), provides substantial evidentiary support for the jury's finding that Apple's trade dresses were famous before Samsung's first sale of an accused diluting phone in July, 2010.

Samsung also argues that Apple has not provided evidence of likely dilution, and that Samsung's evidence of 25 third-party iPhone-like smartphones in the market "undermines any finding of likely dilution" by Samsung's accused devices. *See* Mot. at 11. However, Apple presented significant evidence that dilution by blurring was likely, including: (1) actual accused

United States District Court
For the Northern District of California

Samsung products that allegedly have iPhone-like appearances; (2) press reports discussing the similar appearances of the iPhone and the accused products (PX6); (3) testimony by Apple expert Dr. Winer that Samsung's phones dilute Apple's trade dresses by blurring (Tr. 1521:14-24); (4) evidence of copying by Samsung (Tr. 1506:16-1507:2 (Dr. Winer testimony on Samsung copying)); PX36.20 (Samsung believed the iPhone was "a revolution"); PX44 (Samsung's "Relative Evaluation Report on S1, iPhone"); and (5) testimony of Apple's expert Dr. Van Liere that 37-38% of consumers associated Apple and Samsung smartphones. Tr. 1691:13-1696:2. This collection of evidence constitutes substantial evidence in the record to support the jury's finding of dilution by blurring. Accordingly, Samsung's motion for judgment as a matter of law or a new trial on grounds that Apple did not establish a likelihood of dilution is DENIED.

Finally, an award of damages for trade dress dilution requires a finding that the dilution was willful, i.e. that Samsung "willfully intended to trade on the recognition" of Apple's trade dresses. 15 U.S.C. §1125(c). Here, it is undisputed that Samsung was aware of the iPhone design. Samsung argues that Apple has not submitted evidence that could support the jury's verdict of willful dilution. However, Apple has submitted evidence that Samsung viewed the iPhone as revolutionary (PX36.20), and that Samsung attempted to create similar products (PX44). This constitutes substantial evidence in the record to support the jury's finding that Samsung willfully intended to trade on the recognition of Apple's trade dresses. Accordingly, Samsung's motion for a new trial or judgment as a matter of law on grounds that Apple did not present evidence of willful dilution is DENIED.

In sum, Apple has identified substantial evidence in the record of trade dress non-functionality, trade dress secondary meaning, trade dress fame prior to the release of Samsung's accused devices, likelihood of dilution, and willful dilution. Moreover, the jury's findings were not against the clear weight of the evidence. Accordingly, the Court DENIES Samsung's motion for judgment as a matter of law that Apple's registered iPhone Trade Dress and unregistered iPhone3G Trade Dress are not protectable and not diluted, and DENIES Samsung's motion in the alternative for a new trial.

**C. Utility Patents**

United States District Court
For the Northern District of California

**1. Infringement**

Samsung moves for judgment as a matter of law that no accused Samsung device infringes any of Apple's utility patent claims. *See* Mot. at 13-15. In the alternative, Samsung also moves for judgment as a matter of law or a new trial on infringement of claim 8 of Apple's U.S. Patent No. 7,844,915 ("the '915 Patent") and claim 19 of U.S. Patent No. 7,469,381 ("the '381 Patent"). In order to find infringement, the jury had to find that each infringing Samsung product met every limitation of each of the infringed patent claims. *See Pennwalt Corp. v. Durand-Wayland Inc.*, 833 F.2d 931, 935 (Fed. Cir. 1987) (en banc). Samsung argues that Apple did not offer sufficient evidence of utility patent infringement to support the jury's findings.

Samsung's first argument applies to all of the jury's infringement findings for the '915 and '381 Patents. Samsung argues it was insufficient for Apple's experts to perform an element-by-element infringement analysis of one Samsung device and then simply show the jury videos of other Samsung devices performing the same patented user-interface ("UI") operation. The Court cannot agree. Apple's experts Dr. Karan Singh and Dr. Ravin Balakrishnan testified that certain UI operations necessarily infringed all of the required elements. Thus, showing that those same UI operations were performed by different devices is the logical equivalent of showing that all of the required elements were performed on each device performing those UI operations. Furthermore, having had the patented UI operations demonstrated by Dr. Singh and Dr. Balakrishnan, the jurors entered the jury room with both an understanding of how the accused UI features were alleged to work *and* actual working products, which the jurors could test to confirm whether the devices infringed the UI utility patents. Thus, the combination of the testimony and the devices themselves constituted substantial evidence in the record to support a finding of infringement, and the jury's finding of infringement was not against the clear weight of the evidence. Samsung's motion for judgment as a matter of law that Apple did not establish infringement for each accused product and Samsung's motion for a new trial on this basis are accordingly DENIED.

a. <u>Claim 8 of the '915 Patent</u>

Samsung also moves for judgment as a matter of law that Samsung did not infringe claim 8 of the '915 Patent. Claim 8 of the '915 Patent claims a device performing a method for scrolling and scaling objects on a touch screen using gestures. Specifically, claim 8 recites:

> A machine readable storage medium storing executable program instructions which when executed cause a data processing system to perform a method comprising:
> receiving a user input, the user input is one or more input points applied to a touch-sensitive display that is integrated with the data processing system;
> creating an event object in response to the user input;
> determining whether the event object invokes a scroll or gesture operation by distinguishing between a single input point applied to the touch-sensitive display that is interpreted as the scroll operation and two or more input points applied to the touch-sensitive display that are interpreted as the gesture operation;
> issuing at least one scroll or gesture call based on invoking the scroll or gesture operation;
> responding to at least one scroll call, if issued, by scrolling a window having a view associated with the event object; and
> responding to at least one gesture call, if issued, by scaling the view associated with the event object based on receiving the two or more input points in the form of the user input.

'915 Patent, 23:65-24:21.

Samsung makes three arguments to support its motion for judgment as a matter of law or a new trial on '915 Patent infringement. First, Samsung argues that Samsung's software does not satisfy the "invoking" limitation because the MotionEvent object in Samsung's code, which directly stores the user's touch data in the operating system, does not directly cause the scroll or gesture to occur as required by the claim limitation, but that instead the MotionEvent data is used by another program, WebView object, which actually causes the scroll or gesture operation to occur. *See* Mot. at 14 (citing Tr. 2911:6-2912:1 (noninfringement testimony of Samsung expert Mr. Gray)). This argument, however, is premised upon a claim construction that the Court has already rejected, that the claimed "event object" that detects the user touch must directly cause the scroll or gesture. Instead, the Court ruled that causation with intervening events still meets the claim limitation of "invoke[ing] a scroll or gesture operation." *See* ECF No. 1158. Accordingly, this intervening step does not defeat Apple's claim of infringement.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Second, Samsung argues that some Samsung devices do not perform the "gesture" operation required by the claim in response to a two finger touch. *See* Mot. at 14. Samsung explains that these devices instead perform a "scroll" operation. *Id.* As a preliminary matter, Samsung's expert Mr. Gray testified as to only one such specific device, the Samsung Galaxy Tab 10.1. *See* Tr. 2912:2-19. Thus, even if this argument were persuasive, it would apply only to the Galaxy Tab 10.1, and not to any of the other accused devices. Samsung's motion on this basis is DENIED as to all accused devices except the Galaxy Tab 10.1.

Regarding the Galaxy Tab 10.1, Apple's expert Dr. Singh testified that the operation performed by the Samsung Galaxy Tab 10.1 in response to the two finger touch was not, in fact, a "scroll" as Samsung contends, but a simultaneous scroll and scale ("translate" and "scale," in Dr. Singh's words). Tr. 1863:1-1864:16. The plain language of the claim requires a finger scroll that is "interpreted as the gesture operation" that leads to "scaling" of the view on the touch screen. This plain language does not exclude the possibility that a gesture operation causes both scaling and some other event, such as simultaneous scrolling. Thus, Dr. Singh's testimony could have supported a jury's finding that the Galaxy Tab 10.1 did, in fact, perform scaling in resonse to a gesture operation, as defined by the claim, and thus did infringe. Accordingly, the Court DENIES Samsung's motion for judgment as a matter of law that claim 8 of the '915 Patent is not infringed.

Finally, Samsung argues that a new trial is necessary to resolve inconsistencies in the jury verdict. *See* Mot. at 14. Specifically, Samsung argues that the jury found no '915 Patent infringement by the Galaxy Ace, running Android 2.2.1, and by the Intercept and Replenish, running Android 2.2.2., but that the jury found '915 Patent infringement by many other accused devices that run the exact same software. *Id.* In opposition, Apple argues: (1) that Samsung waived its objection by failing to raise this argument before the jury was dismissed; (2) that the verdicts are not inconsistent because the jury may have tested the three non-infringing phones in a manner that would give a false non-infringement conclusion; and (3) that any inconsistency does not merit a new trial in this case.

As to Apple's first argument, waiver by Samsung, the Court finds that Samsung did not waive its right to object to inconsistencies in the jury verdict. In fact, it was clear that Samsung

was reserving its right to raise any additional inconsistencies. Tr. 4316:18-21. ("Johnson: That's it *for right now* your honor." (emphasis added); "The Court: *At this point* . . . , no further inconsistencies; right?" (emphasis added)).

Apple also argues that the verdicts are not inconsistent. However, Apple implicitly admits that the verdicts are factually inconsistent. Specifically, Apple suggests that the jury simply made a mistake in analyzing the Ace, Intercept, and Replenish in the jury room, perhaps "test[ing] them on a 'mobile' website that did not allow two-finger scaling and therefore concluded that those particular devices did not infringe." Opp'n at 12. Thus, Apple implicitly agrees that all the devices running a particular Android version either infringe or do not infringe together, and that the jury's findings are factually inconsistent.

Apple argues that these factual inconsistencies do not merit a new trial. Courts are not obligated to set aside a verdict wherever there is any sort of inconsistency. Indeed, the Ninth Circuit allows courts to set aside verdicts on grounds of inconsistency only when absolutely necessary. "The question is whether the verdict can be reconciled on any reasonable theory consistent with the evidence." *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991). Thus, "[w]hen faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict and remand the case for a new trial." *Toner for Toner*, 828 F.2d at 512.

In *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1034 (9th Cir. 2003), the Ninth Circuit undertook a comprehensive analysis of the law on inconsistent verdicts. In upholding a jury's verdict that a corporate defendant was liable where the only individual acting on behalf of the corporation was not, the Ninth Circuit explained that seeming inconsistencies in a jury's understanding of facts does not warrant a new trial. *Id.* at 1030. Only verdicts that entail two legal conclusions that cannot logically coexist, such as an award of damages and a finding of no liability, rather than a mere inconsistent view of facts, warrant the Court's intervention. *See id.* at 1034 ("Unless one legal conclusion is the prerequisite for another, inconsistencies between them must stand."); *see also Duhn Oil Tool, Inc. v. Cooper Cameron Corp*, 818 F. Supp. 2d 1193 (E.D. Cal.,

**United States District Court**
For the Northern District of California

2011) (jury's verdicts that independent patent claim is obvious, but dependent claim is not, are inconsistent and require new trial).

Here, an infringement finding for one product is not the legal prerequisite for an infringement finding of another product, even if the products are identical in all relevant respects. Rather, this situation is analogous to *Zhang*, where a finding that the corporation was liable logically should also have meant that the individual through which the corporation acted was liable, but the two liability determinations, while depending on the same facts, were legally independent of one another. In *Zhang*, the Ninth Circuit held that the verdicts, though apparently factually inconsistent, must stand. *Id.* at 1030. The same is true here. Accordingly, a new trial to resolve inconsistencies is inappropriate as to '915 Patent infringement. Therefore, the Court DENIES Samsung's motion for a new trial as to infringement of claim 8 of the '915 Patent.

b. Claim 19 of the '381 Patent

Samsung also moves for judgment as a matter of law that Samsung did not infringe claim 19 of the '381 Patent. Claim 19 of the '381 Patent claims a device performing a method of bouncing back when a user scrolls an object such as a web page off the end of a display screen. Specifically, claim 19 recites:

> A device, comprising:
> a touch screen display;
> one or more processors;
> memory; and
> one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the programs including:
> instructions for displaying a first portion of an electronic document;
> instructions for detecting a movement of an object on or near the touch screen display;
> instructions for translating the electronic document displayed on the touch screen display in a first direction to display a second portion of the electronic document, wherein the second portion is different from the first portion, in response to detecting the movement;
> instructions for displaying an area beyond an edge of the electronic document and displaying a third portion of the electronic document, wherein the third portion is smaller than the first portion, in response to the edge of the electronic document being reached while translating the electronic document in the first direction while the object is still detected on or near the touch screen display; and

United States District Court
For the Northern District of California

instructions for translating the electronic document in a second direction until the area beyond the edge of the electronic document is no longer displayed to display a fourth portion of the electronic document, wherein the fourth portion is different from the first portion, in response to detecting that the object is no longer on or near the touch screen display.

’381 Patent, 36:59-37:22.

Samsung argues that the “hold still” function of its phones is not a bounce-back feature as claimed by the ’381 Patent, and that therefore its phones do not infringe. *See* Mot. at 14-15. Apple does not dispute that the “hold still” function is not claimed by the ’381 Patent, but cites Apple expert Dr. Balakrishnan’s testimony that in addition to the “hold still” function, the accused Samsung phones also perform the claimed bounce-back function, and that the accused phones contain the software instructions for performing the bounce-back function. *See* Opp’n. at 13 (citing Tr. 1751:21-1757:21).

Samsung argues that the Court has already ruled that the ’381 Patent requires that the bounce-back function occur every time the user scrolls past the edge of the electronic document, and that therefore even if the accused phones do sometimes display the bounce-back feature or contain software instructions for that feature, they do not infringe. *See* Mot. at 14-15. However, this Court’s prior ruling did not concern claim 19, but rather claim 1 of the ’381 Patent, a method claim. *See* ECF No. 452 at 58-60. Thus, that ruling does not control here. The jury found that some Samsung products infringe claim 19 of the ’381 Patent, which claims not a method, but an apparatus with instructions for performing the bounce-back function. The plain language of the claim does not require that the instructions operate to perform the function in every instance. Thus, the jury could reasonably have interpreted the claim language to require only that a device contain the instructions for the bounce-back feature, which Dr. Balakrishnan testified that Samsung’s devices did. Accordingly, there is substantial evidence in the record to support the jury’s findings of infringement as to claim 19 of the ’381 Patent, and this finding of infringement was not against the clear weight of the evidence. Therefore, the Court DENIES Samsung’s motion for judgment as a matter of law that Samsung’s accused devices do not infringe claim 19 of the ’381 Patent, and DENIES Samsung’s motion for a new trial on this basis.

Case: 14-1335 Case: 14-1335 CASE PARTICIPANTS ONLY Document: 24 Page: 173 Filed: 05/23/2014 Case5:11-cv-01846-LHK Document2220 Filed01/29/13 Page21 of 40

United States District Court
For the Northern District of California

**2. Validity**

Samsung seeks judgment as a matter of law that all three of Apple's asserted utility patents are invalid on grounds of anticipation, obviousness, or both.[4] A patent claim is invalid by reason of anticipation under 35 U.S.C. § 102 "if each and every limitation is found either expressly or inherently in a single prior art reference." *Bristol-Myers Squibb Co. v Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001). Whether a patent is anticipated is a question of fact. *Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1297 (Fed. Cir. 2010). Anticipation must be shown by clear and convincing evidence. *Id.* at 1292.

As with design patents, as discussed above, a utility patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). "Obviousness is a question of law based on underlying findings of fact." *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009). The underlying factual inquiries are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others. *KSR Int'l*, 550 U.S. at 406 (2007) (citing *Graham*, 383 U.S. at 17-18); *Aventis*, 675 F.3d at 1332. Though obviousness is ultimately a question of law for the Court to decide de novo, the Court treats with deference the implied findings of fact regarding obviousness made by the jury. *Kinetic Concepts*, 688 F.3d at 1356-57. "A party seeking to invalidate a patent on the basis of obviousness must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Id.* at 1360.

a. Claim 8 of the '915 Patent

[4] Samsung has also moved for a new trial on validity. However, Samsung's motion for a new trial is based upon Samsung's allegation that despite correct instruction, the jury applied an incorrect legal standard to evaluate patent validity. This argument has already been addressed in the Court's Order re: Juror Misconduct. *See* ECF No. 2198.

21

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

A69

Case5:11-cv-01846-LHK Document2220 Filed01/29/13 Page22 of 40

Samsung moves for judgment as a matter of law that claim 8 of the '915 Patent is invalid based on two pieces of prior art: (1) the DiamondTouch with FractalZoom; and (2) the Nomura patent application.[5] *See* Mot. at 12. First, Samsung argues that the DiamondTouch with FractalZoom included all the elements of claim 8 of the '915 Patent, rendering claim 8 invalid for anticipation. Although Samsung's expert Stephen Gray testified that this prior art contained all the elements of claim 8 of the '915 Patent (Tr. 2897:12-2902:5:25), Apple's expert Dr. Singh gave contrary testimony (Tr. 3623:7-3625:5). Specifically, Dr. Singh testified that: (1) the DiamondTouch does not contain an "integrated" "touch-sensitive display;" (2) the DiamondTouch treats a three-finger input the same as a one-finger input, thereby failing to distinguish between a "single input point" and "two or more input points"; and (3) Mr. Gray never identified a "view object" that was associated with an "event object." Though conflicting with Mr. Gray's testimony to some extent, this testimony is sufficient to support the jury's finding that Samsung has not proven anticipation by clear and convincing evidence.

Moreover, in finding the patent valid, the jury made implied findings that these gaps between the prior art and claim 8 of the '915 Patent were significant. Samsung has failed to identify evidence suggesting that it would have been obvious to a person of ordinary skill in the art to bridge these gaps, such as testimony or documentary evidence as to how or why the gap would have been bridged. Thus, the Court cannot find that Samsung has met its burden to establish obviousness by clear and convincing evidence. Therefore, the Court DENIES Samsung's motion for judgment as a matter of law that claim 8 of the '915 Patent is invalid over the DiamondTouch with FractalZoom prior art.

Samsung also argues that the Nomura patent application includes all elements of claim 8 of the '915 Patent, and thus renders claim 8 invalid for anticipation. *See* Mot. at 12. Claim 8 covers a user interface created by a specific programming technique. However, Dr. Singh testified that Nomura does not include "events, objects, [or] views," as required by claim 8. Thus, Nomura may disclose a similar user interface, but one that is implemented using different programming

[5] Samsung does not move for judgment as a matter of law that claim 8 of the '915 Patent is invalid based on the Han reference, but Apple's opposition discusses the Han reference.

United States District Court
For the Northern District of California

22

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

A70

techniques than claim 8 of the ’915 Patent. Tr. 3625:10-3626:24. As with the DiamondTouch, Dr. Singh’s testimony about the Nomura reference supports the jury’s finding of non-anticipation.

Furthermore, the jury’s finding of validity indicates that the jury made an implied finding of fact affirming Dr. Singh’s testimony that the gap between Nomura and the ’915 Patent was significant. The Court must give that finding deference. *See Kinetic Concepts*, 688 F.3d 1342, 1356. In light of the lack of clear Samsung evidence as to why such a gap would be obvious to bridge, the Court finds claim 8 of the ’915 Patent non-obvious as a matter of law. Accordingly, the Court DENIES Samsung’s motion for judgment as a matter of law that claim 8 of the ’915 Patent is invalid based on the Nomura prior art.

b. Claim 19 of the ’381 Patent

Samsung also moves for judgment as a matter of law that claim 19 of the ’381 Patent is invalid because of the TableCloth and LaunchTile prior art references, based upon testimony to that effect from Samsung’s expert Dr. van Dam. *See* Mot. at 12.

Apple argues that the jury’s finding of non-anticipation was supported by the testimony of Dr. Balakrishnan. Dr. Balakrishnan testified that TableCloth does not respond to the edge of an electronic document as required by claim 19. *See* 3631:14-3634:19. Instead, he testified that TableCloth simply snaps back to the original position when the user’s finger is lifted off the touch-screen, regardless of whether a document edge has been crossed. *Id.* This testimony alone is sufficient to support the jury’s finding that TableCloth does not anticipate claim 19. Similarly, Dr. Balakrishnan testified that TableCloth snaps back not only until space beyond the edge of an electronic document is no longer displayed, but rather all the way to the document’s original position, before it was moved at all. *Id.* Yet claim 19 explicitly excludes this type of snapping back to the original position (“wherein the fourth portion is different from the first portion”). Again, this testimony is sufficient to support the jury’s finding of validity.

Dr. Balakrishnan also provided testimony sufficient to support the jury’s finding that LaunchTile does not anticipate claim 19. He testified that LaunchTile fails to meet the limitations of claim 19 of the ’381 Patent because LaunchTile does not respond “to the edge of the electronic document being reached,” as required by the claim. Tr. 3634:20-3635:18. Instead, Dr.

23

United States District Court
For the Northern District of California

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW
A71

Balakrishnan testified that LaunchTile tracks the center of the document. *Id.* Dr. Balakrishnan also testified that LaunchTile will simply move to center a displayed document, but that such centering will not necessarily be "in a second direction" as required by claim 19. *See id.* ("If it's more than a sixth of the way, it goes to the next set of tiles."). Furthermore, Dr. Balakrishnan testified that LaunchTile sometimes also demonstrated situations in which LaunchTile will not move past an edge (the so-called "frozen screen problem"), and situations in which LaunchTile allows dragging far past an edge (the so-called "desert fog problem"). Tr. 3635:19-3636:8. The emergence of these two problems supports Dr. Balakrishnan's testimony that although LaunchTile may sometimes appear to be responding to an edge as required by claim 19, in fact it is not. In sum, Dr. Balakrishnan's testimony constituted substantial evidence in the record to support the jury's finding of non-anticipation. Accordingly, Samsung's motion for judgment as a matter of law that claim 19 of the '381 Patent is invalid for anticipation is DENIED.

The Court also finds that claim 19 is not obvious in light of Tablecloth and LaunchTile. In finding validity, the jury implicitly found that the gaps identified by Dr. Balakrishnan were significant. Samsung's expert Dr. van Dam testified only that Tablecloth rendered claim 19 obvious because a person of ordinary skill in the art would "understand the advantage of this snapping back behavior." Tr. 2872:23-25. Dr. van Dam also testified that LaunchTile rendered the '381 Patent "obvious because, again, you can see every element there." Tr. 2873:6-7. These bare assertions by Dr. van Dam are insufficient to prove by clear and convincing evidence that it would have been obvious to bridge the gaps between Tablecloth or LaunchTile and claim 19. Accordingly, in light of the jury's implied findings of fact and Samsung's minimal evidence as to obviousness, the Court finds claim 19 of the '381 Patent non-obvious as a matter of law. Therefore, the Court DENIES Samsung's motion for judgment as a matter of law that claim 19 of the '381 Patent is invalid.

c. Claim 50 of the '163 Patent

Claim 50 of U.S. Patent No. 7,864,163 ("the '163 Patent") claims a touch screen device with tap-to-zoom functionality. Specifically, claim 50 recites:

A portable electronic device, comprising:

United States District Court
For the Northern District of California

a touch screen display;
one or more processors;
memory; and
one or more programs, wherein the one or more programs are stored in the memory and configured to be executed by the one or more processors, the one or more programs including:
instructions for displaying at least a portion of a structured electronic document on the touch screen display, wherein the structured electronic document comprises a plurality of boxes of content;
instructions for detecting a first gesture at a location on the displayed portion of the structured electronic document;
instructions for determining a first box in the plurality of boxes at the location of the first gesture;
instructions for enlarging and translating the structured electronic document so that the first box is substantially centered on the touch screen display;
instruction for, while the first box is enlarged, a second gesture is detected on a second box other than the first box; and
instructions for, in response to detecting the second gesture, the structured electronic document is translated so that the second box is substantially centered on the touch screen display.

’163 Patent, 29:14-40.

Samsung argues that claim 50 of the ’163 Patent is invalid based on LaunchTile, and two additional references, Agnetta and Robbins. In support of this argument, Samsung cites the testimony of Mr. Gray. *See* Mot. at 12-13. Apple’s expert Dr. Singh gave rebuttal testimony as to LaunchTile and Agnetta, explaining that neither LaunchTile nor Agnetta “enlarge[s] a structured electronic document” as required by claim 50. Tr. 3615:19-3616:4. Instead, Dr. Singh testified that to the extent any structured electronic document exists, LaunchTile and Agnetta *replace* that structured electronic document with new content. *Id.* This testimony is sufficient to support the jury’s finding that Samsung did not prove anticipation by LaunchTile or Agnetta by clear and convincing evidence. As to the Robbins reference, Mr. Gray did not address all the limitations of claim 50 on direct examination. *See* Tr. 3619:4-3620:10 (Dr. Singh testimony that Mr. Gray had neglected to explain how all claim elements were present in Robbins). The incomplete nature of Mr. Gray’s testimony supports the jury’s finding that Samsung did not prove anticipation over Robbins by clear and convincing evidence. Tr. 2919:17-2922:6. Accordingly, Samsung’s motion for judgment as a matter of law that claim 50 is invalid for anticipation is DENIED.

**United States District Court**
For the Northern District of California

Case5:11-cv-01846-LHK Document2220 Filed01/29/13 Page26 of 40

Furthermore, Mr. Gray admitted that he gave no testimony as to obviousness of claim 50 of the ’163 Patent. Tr. 2924:12-17 (admitting that “anticipation is all [Mr. Gray] spoke to”). Indeed, because the jury implicitly found, as Dr. Singh testified, that there are differences between the prior art and Apple’s utility patents, Samsung had the burden of showing that these gaps would have been obvious to bridge. Samsung failed to offer such evidence. Accordingly, the Court DENIES Samsung’s motion for judgment as a matter of law that claim 50 of the ’163 Patent is invalid for obviousness over the LaunchTile, Agnetta, and Robbins references.

**D. Willfulness**

To establish willful patent infringement,[6] “a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk. . . was either known or so obvious that it should have been known to the accused infringer.” *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (internal citation omitted). Thus, the willfulness inquiry is a two-prong analysis, requiring an objective inquiry and a subjective inquiry. The objective inquiry is a question for the Court, and the subjective inquiry is a question for the jury. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012).

Because both prongs must be established for the Court to make an ultimate finding of willfulness, failure on either prong defeats a claim of willfulness. Thus, where the jury found willfulness, the Court must also find willfulness. If the Court finds no objective willfulness, the inquiry is at an end, and the Court need not consider whether the jury’s finding of subjective willfulness was supported by substantial evidence. Conversely, if the jury found no subjective

[6] This standard applies only to patents. To the extent that the parties suggest that the Court should consider willfulness regarding trade dress dilution, the Court declines to do so. Willfulness is part of dilution inquiry, and a finding of willfulness is required to award remedies for trade dress dilution. Accordingly, the jury’s findings on willfulness as to trade dress dilution are addressed in the section on trade dress, and are not independently considered here, in the discussion of willful patent infringement.

26
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW
A74

United States District Court
For the Northern District of California

Case5:11-cv-01846-LHK Document2220 Filed01/29/13 Page27 of 40

willfulness, the Court need not consider objective willfulness, as the willfulness claim must fail either way.[7]

Here, the Court sent the subjective prong of willfulness to the jury, and the jury found that Samsung's infringement was subjectively willful for five of the seven patents (three utility patents and two design patents). *See* Final Jury instruction No. 59; Amended Jury Verdict, ECF No. 1890, at 9. Thus, for these five patents, the Court must find the objective prong also satisfied in order to make an ultimate finding of willfulness.[8]

To establish objective willfulness, Apple must prove by clear and convincing evidence that there was an "objectively high likelihood that its actions constituted infringement of a valid patent." *Bard*, 682 F.3d at 1005 (citing *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 1319 (Fed. Cir. 2010)). If Samsung had an objectively reasonable defense to infringement, its infringement cannot be said to be objectively willful. *See Spine Solutions*, 620 F.3d at 1319 ("The 'objective' prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement."); *Bard*, 682 F.3d at 1006 (objective willfulness determination "entails an objective assessment of potential defenses based on the risk presented by the patent. Those defenses may include questions of infringement but also can be expected in almost every case to entail questions of validity that are not necessarily dependent on the factual circumstances of the particular party accused of infringement"). The Court will consider each patent in turn.

1. '381 Patent

First, the Court finds that Samsung had an objectively reasonable defense to infringement of claim 19 of the '381 Patent. Specifically, Samsung had a reasonable defense that this claim was invalid for anticipation by Tablecloth. At summary judgment, Samsung presented evidence that Tablecloth was invented and may have been in public use more than one year prior to the filing of

---

[7] Of course, a jury's finding of no subjective willfulness must also be supported by substantial evidence in the record. This question was briefed in Apple's motion for judgment as a matter of law, and is addressed in this Court's separate Order on that motion.

[8] Apple argues that Samsung inappropriately argued non-willfulness in Samsung's motion on non-jury claims. Although the Court addresses willfulness in this Order, in light of *Bard*, it was appropriate for Samsung to raise the objective prong of willfulness in Samsung's motion on non-jury claims.

27

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW
A75

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

the ’381 Patent’s parent provisional application, thus qualifying as prior art under § 102(b). *See* Decl. of Adam Bogue in support of Samsung’s motion for summary judgment, ECF No. 933, at ¶¶ 8-12. Samsung also presented a date stamp on the files for the Tablecloth software showing its invention before the ’381 Patent application was filed. *See* Decl. of Bill Trac in support of Samsung’s summary judgment reply, ECF No. 1068, at ¶ 28 & Exh. 25; Order Denying Samsung’s Motion for Summary Judgment, ECF No. 1158, at 13-16 (citing Samsung’s evidence).

Further, Samsung presented an expert’s declaration opining that Tablecloth disclosed all of the limitations of claim 19. *See* Decl. of Andries Van Dam in support of Samsung’s motion for summary judgment, ECF No. 937, at §§51-82. Similar evidence was presented at trial. *See* Tr. 2276:17-2299:16 (Adam Bogue testifying about DiamondTouch and Tablecloth); *id.* at 2846:10-2847:2; 2855:1-2858:22 (Dr. van Dam testifying about Tablecloth’s disclosure of claim elements). Though the evidence was not sufficient to establish anticipation as a matter of law, nor to persuade the jury of anticipation by clear and convincing evidence, there was certainly an objectively reasonable argument for anticipation.[9] Accordingly, the Court finds that, objectively, Samsung’s infringement of the ’381 Patent was not willful, due to its reasonable reliance on an invalidity defense. Because the objective willfulness prong is not satisfied, the Court need not examine the jury’s finding on subjective willfulness. Samsung’s motion for judgment as a matter of law that its infringement of claim 19 of the ’381 Patent was not willful is GRANTED.

2. ’163 Patent

Regarding the ’163 Patent, Samsung again had an objectively reasonable defense. Specifically, Samsung had a reasonable defense that claim 50 of the ’163 Patent was invalid for indefiniteness. Indeed, although the Court has ultimately found the term “substantially centered”

---

[9] Samsung has also directed the Court to the PTO’s recent non-final action rejecting claims 1-20 for anticipation in an ex parte reexamination. *See* ECF No. 2079. However, the Federal Circuit “has stressed that initial rejections by the PTO of original claims that were later confirmed on reexamination is so commonplace that they hardly justify a good faith belief in the invalidity of the claims.” *Hoescht Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996); *id*. at 1584 (stating that a grant of a request for reexamination does not establish a likelihood of patent invalidity); *see also Q.G. Prods. v. Shorty, Inc.*, 992 F.2d 1211, 1213 (Fed. Cir. 1993) (noting that initial patent “rejections often occur as a part of the normal application process”). Accordingly, the Court does not rely on the PTO’s non-final action in ruling on Samsung’s motion.

28

Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW

A76

definite, see Order re:Indefiniteness, ECF No. 2218, Samsung's position, as argued in Samsung's motion on non-jury claims, was objectively reasonable, and raised close questions of law concerning the definiteness requirement in the context of terms of degree. Because the objective willfulness prong is not satisfied, the Court need not examine the jury's finding on subjective willfulness. Samsung's motion for judgment as a matter of law that its infringement of claim 50 of the '163 Patent was not willful is GRANTED.

3. '915 Patent

As to the '915 Patent, Samsung had an objectively reasonable defense that claim 8 was invalid for obviousness. As explained above in resolving Samsung's motion for judgment as a matter of law on obviousness, the '915 Patent distinguishes between one-finger scrolling and two-finger gestures. There is no dispute that DiamondTouch does both one-finger scrolling and two-finger gestures. The DiamondTouch, however, treats a two-finger touch as unique, and a single finger or a three-or-four-finger touch as the same. The '915 Patent, in contrast, treats one-finger touches as unique, and two, three, or four-finger touches as the same. Though this jury did not, a jury could reasonably have found that the gap between DiamondTouch's function and the '915 Patent (i.e., whether the one-finger or the two-finger touch is unique) was not significant. Thus, it was objectively reasonable for Samsung to contend that treating all multiple-finger touches the same, instead of treating a two-finger touch as unique, would have been obvious to a person having ordinary skill in the art.

Samsung had an additional objectively reasonable (though ultimately unsuccessful) obviousness defense to infringement of the '915 Patent. Apple distinguished another prior art reference, the Nomura patent application, on the grounds that the Nomura reference and the '915 Patent used different programming methods. Apple explains that the Nomura reference did not disclose the use of object-oriented programming, and that the '915 Patent added this feature. Tr. 3625:10-3626:24 (Apple expert Dr. Singh testifying that the Nomura reference does not disclose "events, objects, [or] views," and explaining "you can easily replace events with, with polling in a device. . . procedural programming and languages can replace objects, . . . and you can have a single block of display logic instead of views.") Samsung argues that any such gap in

programming technique would have been obvious to a person of ordinary skill in the art. Samsung had an objectively reasonable argument that the unique aspect of the ’915 patent was not the programming techniques used to implement it, but rather the user interface aspect, and accordingly, it would be obvious to implement the same user interface with different underlying programming.[10] Because the objective willfulness prong is not satisfied, the Court need not examine the jury’s finding on subjective willfulness. Samsung’s motion for judgment as a matter of law that its infringement of claim 8 of the ’915 Patent was not willful is GRANTED.

4. D’677 and D’305 Patents

Turning to the two design patents that the jury found that Samsung had willfully infringed, the D’677 and D’305 Patents, the Court finds that Apple has not met its burden to show by clear and convincing evidence that there was an objectively high likelihood that Samsung’s actions would infringe valid design patents. Leaving aside the question of whether Samsung actually knew about the patents (as this question was part of the jury’s subjective analysis), the Court finds that Samsung would have been reasonable to rely on its noninfringement defenses.

Apple argues that Samsung had no reasonable noninfringement defense for either the D’677 or the D’305 Patent. *See* Apple’s Brief on Nonjury Claims, ECF No. 1981, at 13. For the D’677 Patent, Apple relies on this Court’s finding, at the preliminary injunction stage, that the Samsung Galaxy S 4G and Samsung Infuse likely infringed the D’677 Patent. However, for both products, the Court noted that it was “a close question,” ECF No. 452 at 26, 27. The Court pointed out differences such as the “four small functional buttons at the bottom, and a camera lens at the top of the front face” of the Galaxy S 4G, which could “take on greater significance” in light of the prior art. *Id.* at 25. And with regard to the Infuse, the Court noted “the addition of buttons and writing,” and the fact that the “Infuse 4 appears broader and longer, with a larger screen face relative to the rest of the front face, and sharper corners” than the D’677 Patent. *Id. at 27.* Thus, the Court’s ultimate conclusion, after careful consideration, that infringement was likely does not render

---

[10] Here, Samsung has directed the Court to another non-final PTO action rejecting claim 8 of the ’915 Patent. *See* ECF No. 2202. For the reasons explained above, the Court does not consider this PTO non-final action in ruling on Samsung’s present motion.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Samsung's reliance on an infringement defense unreasonable. Indeed, the closeness of the question suggests that noninfringement was indeed a reasonable defense. Accordingly, the Court finds that Apple has not met its burden to establish that there was an objectively high likelihood that Samsung's actions would constitute infringement of the D'677 Patent, and Samsung's motion for judgment as a matter of law that its infringement was not willful is GRANTED.

Regarding the D'305 Patent, Apple does not present any specific evidence as to the unreasonableness of Samsung's infringement defense. Instead, Apple relies on general evidence that "some of the accused products" were very similar to the D'305 Patent. Apple's Mot. for Damages Enhancements at 13. Apple points to one internal Samsung document (PX44.131) noting a "[s]trong impression that iPhone's icon concept was copied." The document includes a side-by-side comparison of an iPhone and a phone labeled "GTi9000." The document does not mention the D'305 patent. Further, the document actually points out some differences between the Samsung phone and the iPhone in the form of suggestions for how the Samsung product could be made to look more iPhone-like: "Insert effects of light for a softer, more luxurious icon implementation. Make the edge curve more smooth to erase the hard feel. Remove a feeling that iPhone's menu icons are copied by differentiating design." PX44.131. Thus, even where aware of the similarities, Samsung had also identified several differences. As noted above, individual differences such as those Samsung has identified can take on a greater significance in the infringement analysis when compared with the prior art, thus providing further reason to believe that a design with such differences does not infringe. *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). PX44 therefore does not provide convincing evidence that Samsung's infringement defense for the D'305 Patent was unreasonable.

Apple's other piece of evidence regarding Samsung's noninfringement defense is a single quotation from *Wired* magazine noting that "[t]he Vibrant's industrial design is shockingly similar to the iPhone 3G." PX6.1. The discussion in the passage cited by Apple is largely focused on the exterior of the phone, not the user interface or icons covered by the D'305 Patent, though it does mention that "the square icons are, again, very similar in their looks to the iPhone 3G's." *Id.* The Vibrant is one of the phones accused of infringing the D'305 patent. However, all Apple has

presented here is one industry reporter's assessment that the icons are "very similar" in their looks. This article provides some limited evidence that one phone, the Vibrant, had the potential to infringe the D'305 Patent. It does not, however, make clear whether the similarity is in individual icons themselves, the layout of the icons, or, as would be more relevant to the question of design patent infringement, the overall visual impression of the home screen. The fact that the Vibrant's square icons are similar to the iPhone's would not necessarily mean that the Vibrant would infringe the D'305 Patent.

As this is the sum total of Apple's arguments and evidence that Samsung's infringement was willful, the Court cannot conclude that Apple has met its burden to show willfulness by clear and convincing evidence. In light of Samsung's reasonable, if ultimately unsuccessful, noninfringement defense, Apple simply has not established that there was an objectively high likelihood that Samsung's actions would constitute infringement of the D'305 Patent. This finding makes it unnecessary for the Court to review Samsung's invalidity defenses, as Samsung needed only one reasonable defense on which to rely, in order to defeat the objective willfulness inquiry. Accordingly, Samsung's motion for judgment as matter of law that Samsung did not willfully infringe the D'305 Patent is GRANTED.

**E. SEC's Liability**

The Defendants in this case are three Samsung entities: the Samsung Korean parent company, Samsung Electronics Corporation ("SEC"); and two United States subsidiaries, Samsung Telecommunications America ("STA") and Samsung Electronics America ("SEA"). The jury found SEC liable for both direct infringement and inducing infringement by STA and SEA. Samsung moves for judgment as a matter of law that SEC did not directly infringe or induce infringement, and in the alternative for a new trial. Samsung also moves for a new trial on damages on the grounds that damages were improperly calculated as a global figure for SEC and its United States subsidiaries based upon the finding that SEC was liable for patent infringement.

As to direct infringement, Samsung argues that the Korean parent company, SEC, does not commit patent infringement in the United States because when SEC sells the accused devices to the subsidiaries, title to the accused devices is transferred to STA and SEA before the SEC ships the

United States District Court
For the Northern District of California

devices. "Mere knowledge that a product will ultimately be imported into the United States is insufficient to establish liability [for direct patent infringement] under section 271(a)." *MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377. However, Samsung's 30(b)(6) witness Justin Denison testified that STA and SEA collect orders in the United States, that SEC manufactures the accused devices, and that SEC then ships the accused devices to Chicago and Dallas. Tr. 793:25-795:12. Furthermore, Apple's financial expert Terry Musika testified that STA and SEA buy phones from SEC, which STA and SEA resell in the United States. Tr. 2068:14-2069:16. The jury could reasonably infer that this exchange involves more than "mere knowledge." Indeed, STA and SEA are based in the United States, and SEC ships the phones directly into the United States, albeit having first transferred title to STA and SEA. *See* Tr. 790:17-795:12 (Denison testimony). This is the same arrangement found sufficient to constitute direct infringement in *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008) ("Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under *North American Philips* [*Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir. 1994)] and *MEMC* there is substantial evidence to support the jury's conclusion that GlowProducts sold the accused cubes within the United States.")

Furthermore, substantial evidence suggests that SEC exerted a high degree of control over SEA and STA activities in the United States, including setting wholesale prices and analyzing product returns. *See, e.g.*, Tr. 796:14-18 (Denison testimony that "there's a lot of conversations back and forth [that] could be construed as directions [from SEC to STA]"); PX204 at 188:9-17 ("SEC [and not STA] sets the wholes price"); PX59.2 ("Headquarters" personnel lead STA employees investigating Tab returns at Best Buy); Tr. 793:17-24 (Denison testimony that SEC is referred to as "HQ or headquarters"). This control is further evidence that the sale of infringing phones in the United States by SEA or STA can be considered infringement in the United States by SEC. Accordingly, substantial evidence in the record supports the jury's finding that SEC directly infringed Apple's patents. Therefore, the Court DENIES Samsung's motion for judgment as a matter of law that SEC did not commit direct infringement, and DENIES Samsung's motion for a

United States District Court
For the Northern District of California

new trial on damages on the grounds that the damages figure was based upon the incorrect finding of SEC liability.

Having found that SEC is directly liable for infringement, the Court need not reach the question of whether the jury's findings of inducement for these same products and patents was also supported by substantial evidence. Inducement can only occur where there is direct infringement by another. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004). Here, for every patent and product for which the jury found direct infringement by STA or SEA (and thus for which inducement is possible), the jury also found, and the Court affirmed, direct infringement by SEC. Thus, SEC's liability has been conclusively established; an additional finding on an alternative theory of liability will not change the outcome. Accordingly, the Court need not reach the question of whether substantial evidence supported the jury's finding that SEC induced infringement by STA or SEA.

**F. Samsung's Affirmative Case**

**1. Claims 10 and 15 of the '941 Patent**

Samsung moves for judgment as a matter of law that Apple's accused devices infringe claims 10 and 15 of the U.S. Patent No. 7,675,941 ("the '941 Patent"). Samsung also moves for judgment as a matter of law that the asserted claims are not exhausted as to Apple's accused devices. The Court has granted Apple's motion for judgment as a matter of law that claims 10 and 15 of the '941 Patent are invalid for anticipation. *See* Order granting in part and denying in part Apple's motion for judgment as a matter of law, ECF No. 2219. Accordingly, the Court does not reach Samsung's motions as to the '941 Patent.

**2. Claims 15 and 16 of the '516 Patent**

Samsung moves for judgment as a matter of law that Apple's accused devices infringe claims 15 and 16 of the '516 Patent, and that these claims are not exhausted as to Apple's accused devices. Samsung alleges that claims 15 and 16 of the '516 Patent are embodied by Intel chipsets which were sold to Apple, and used in Apple's accused devices. The jury found that Samsung's chip patents were exhausted, but not infringed. Pursuant to the jury instructions, the jury, in finding exhaustion, made implicit findings of fact: (1) that Intel's sales to Apple were authorized

by Samsung; (2) that those sales occurred in the United States; and (3) that if the accused products infringe, it is because the baseband chips substantially embody the '516 and/or '941 Patents. *See* Final Jury Instruction No. 34. The Court will consider exhaustion first, and will then turn to the question of infringement.

Regarding the first requirement for exhaustion, authorization, there is substantial evidence in the record to support the jury's conclusion that Intel was licensed to sell its chips directly or indirectly to Apple (*see* PX81.11, PX81.23 (Samsung licenses to Intel allowing indirect sales by Intel); Tr. 3543:12-24 (Apple expert Richard Donaldson testifying that license language allowing Intel to sell "indirectly" allowed sales through Intel subsidiaries). Apple's expert Tony Blevins testified that Intel indeed sold the chips indirectly to Apple, through an Intel subsidiary based in the United States, Intel Americas. *See* PX78 (Intel Americas invoices); Tr. 3170:1-4 (Blevins testimony on Intel Americas). This is exactly the type of sale that Mr. Donaldson testified was authorized by the Samsung/Intel license agreement. Thus, Mr. Donaldson's testimony, combined with Mr. Blevins's testimony, constitutes substantial evidence in the record that Intel's sales to Apple were authorized.

Samsung argues that Apple failed to present evidence that Intel took any affirmative action to sublicense Intel Americas, and thus that Samsung's authorizations to Intel did not extend to Intel America. Samsung cites *Intel Corp. v. Broadcom Corp.*, 173 F. Supp. 2d 201, 222 (D. Del., 2001), in support of the argument that an affirmative act of sublicensing to Intel Americas would be necessary. However, the terms of the Samsung/Intel license agreement do not require any particular action on the part of Intel in order to license a subsidiary. In *Broadcom*, a sublicensed subsidiary was required to undertake obligations to the licensor, including cross-licensing any patents held by the subsidiary. In contrast, here there is no term in the sublicensing provision of the Samsung/Intel agreement that requires an Intel subsidiary to undertake any obligations to Samsung. *See* PX81.11-12, PX81.23. Instead, extension of sublicenses to subsidiaries is a right granted to Intel, with the only limitations being the duration of Intel's own license and the requirement to inform Samsung of any licenses upon Samsung's request. *See id.* Indeed, Apple argues that Intel was not required to take any affirmative action when sublicensing under the terms

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

of Intel's contract with Samsung, citing language allowing "indirect" sales by Intel, and testimony that Intel Americas "send[s] invoices and collect[s] payments for Intel products." *See* Opp'n at 27. Thus, the lack of affirmative sublicensing activity does not undermine the jury's finding that Intel's sales to Apple through Intel Americas were authorized by Samsung.

Regarding the second exhaustion requirement, there is substantial evidence in the record that the authorized sales to Apple occurred in the United States. Location of sale is determined based upon where the essential activities of the sale occurred. *MEMC*, 420 F.3d at 1375-77. Apple offered evidence that both parties to the sales were based in the United States, and that payment occurred in the United States. *See* PX78 (Intel Americas invoices). Furthermore, the jury could reasonably infer that the negotiations between the two United States corporations occurred in the United States. This is sufficient evidence to conclude that the sale occurred in the United States.

Regarding the third requirement, Samsung argues that Apple did not present sufficient evidence to satisfy the embodiment requirement for exhaustion, given that the jury found that Apple's products did not infringe Samsung's chip patents. Infringement is not necessarily required for patent exhaustion. However, for a patent to be exhausted by sale of a non-infringing product, the "only and intended use" of that non-infringing product must be infringing. *See Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 628 (2008). Here, the jury found that Apple's accused devices do not infringe claims 15 and 16 of the '516 Patent. Without infringement or evidence of infringing use, there can be no exhaustion. Accordingly, the Court GRANTS Samsung's motion for judgment as a matter of law that claims 15 and 16 of the '516 Patent are not exhausted. This ruling does not change the outcome in this case because of the jury's non-infringement finding.

The Court need not reach the question of whether Apple's accused devices infringe the '516 Patent as a matter of law, because a finding of infringement would satisfy the final requirement for exhaustion – embodiment -- and thus render the patent exhausted. Thus, there would be no liability. Because a ruling on Samsung's motion as to infringement of the '516 Patent cannot change the outcome of this case, the Court does not reach the issues raised in that motion.

**3. Samsung's User Interface Patents: Claim 1 of the '460 Patent; Claim 10**

**of the '893 Patent; and Claim 9 the '711 Patent**

Samsung moves for judgment as a matter of law that Apple's accused devices infringe claim 1 of U.S. Patent No. 7,577,460 ("the '460 Patent"); claim 10 of U.S. Patent No. 7,456,893 ("the '893 Patent"); and claim 9 of U.S. Patent No. 7,698,711 ("the '711 Patent"). All three of these asserted claims include a limitation involving the use of "modes." *See* '460 Patent, claim 1 ("E-mail transmission sub-mode"); '893 Patent claim 10 ("photographing mode;" "stored-image display mode"); '711 Patent claim 9 ("MP3 mode"). Apple witnesses testified that Apple's products generally use "apps" rather than "modes." *See* Tr. 3196:15-3197:5 (Dr. Dourish); Tr. 3181:2-8 (Dr. Kim); Tr. 3297:4-7; 3304:12-3306:4 (Dr. Srivastava); Tr. 3232:9-3233:8 (Dr. Givargis). *Cf.* Tr. 2482:15-2483:2 (Samsung expert Dr. Yang testifying that "application programs and modes are different"). Samsung argues that, in spite of this testimony, the record lacked substantial evidence to support the jury's findings that the accused Apple devices use "apps" instead of "modes." Samsung cites contrary testimony, including a statement by an Apple expert that could be interpreted as using "app" and "mode" interchangeably. *See* Mot. at 29 (citing Tr. 3244:8-15). The existence of competing testimony on the distinction between "apps" and "modes" does not entitle Samsung to judgment as a matter of law; it is for the jury to weigh this competing testimony and decide whether the evidence showed that the two were different.

Moreover, there is substantial expert testimony in the record to support the jury's conclusion that even if Apple's products do use modes for some purposes, Apple's products do not include any of the *claimed* modes. *See* Tr. 3305:5-9 (Dr. Srivastava explaining that "Apple products do not have the portable phone mode; they do not have a camera mode; they do not have the first E-mail transmission sub-mode; they do not have the second E-mail transmission sub-mode; they do not have the display sub-mode."); Tr. 3180:19-3181:8 (Dr. Kim explaining that the iPhone's "modes," such as airplane mode, are different from the iPhone's "apps"); Tr. 3232:25-3233:1 (Dr. Givargis explaining the difference between "MP3 mode" on a Samsung device and a music-playing app on an Apple device). Thus, the record contains substantial evidence to support the jury's finding that Apple's devices do not use the "modes" defined in Samsung's patents. As infringement requires the accused device to satisfy every limitation of the asserted claim, this

United States District Court
For the Northern District of California

substantial evidence that the "mode" limitation was not satisfied for any of the patents is sufficient to sustain the jury's finding of non-infringement. Accordingly, the Court DENIES Samsung's motion for judgment as a matter of law that the asserted claims of the '460, '893, and '711 Patents are infringed because there is sufficient evidence in the record that Apple's accused devices do not implement their relevant user interfaces using the claimed "modes."

**G. The Trial was not manifestly unfair.**

Samsung argues that: (1) the trial time limitation prejudiced Samsung; (2) allowing Apple to point out to the jury which Samsung witness were not called prejudiced Samsung; (3) Samsung's witnesses were barred from making some arguments, where Apple's witnesses were allowed to make other arguments; (4) Samsung was required to lay foundation for documents while Apple was not; (5) Samsung was forbidden to play advertisements while Apple was not; and (6) Samsung could not use depositions to cross-examine Apple's witnesses while Apple was allowed to used deposition testimony during cross examination. *See* Mot. at 30.

None of these arguments merits a new trial. First, Samsung was offered the option of bifurcating its affirmative case, but chose not to do so. *See* ECF No. 1329 at 2 (minute order and case management order following July 24, 2012 hearing). Furthermore, Samsung and Apple had equal trial time and chose how to best allocate their allotted time. *Id.* Samsung cannot now argue that its own litigation strategy created a manifest injustice that requires a new trial. As the Court observed, "Samsung made a strategic decision to spend more time to cross-examine Apple witnesses during Apple's affirmative case than Apple used to present its affirmative case." 3250:22-3251:1.

Second, Ninth Circuit and other precedent allows parties to point out each other's absent witnesses, as discussed in this Court's Order denying Samsung's Motion to Exclude Examination and Comment on Absent Witnesses , ECF No. 1721. The Court did not simply grant the parties carte blanche to discuss absent witnesses, but warned the parties that it would not tolerate "abuse" of missing witness arguments and continued to rule on missing witness argument objections on a case-by-case basis. *See id.* Moreover, Samsung pointed out in cross-examining one of Apple's experts that the expert could have, but did not, consult with Apple's inventors. Tr. 1878:9-15 ("By

the way, are you aware that many of the inventors are working for Apple and they're readily accessible to you if you wanted to speak to them and ask them about their invention and what led to it and their insights and that sort of thing? Were you aware of that that, that's available to you as an expert for Apple?"). Accordingly, Samsung has not established that it was unfairly prejudiced by Apple's absent witness arguments.

Regarding Samsung's third argument, that Samsung witnesses were unfairly prevented from making their arguments where Apple witnesses were not, the Court excluded untimely disclosed arguments regardless of which side had failed in its duty to disclose. The Court applied uniform standards in excluding testimony. *See, e.g*, exclusion of the entire testimony of Apple's proposed witness Edward Sittler for untimely disclosure by Apple, ECF No. 1662 at 1; exclusion of testimony about the '915 Patent, the '381 Patent, and the D'308 Patent by Apple's witness Scott Forstall because of Apple's untimely disclosure, ECF No 1563 at 6.

Similarly, regarding Samsung's fourth argument, both parties were required to lay foundation for admitted documents. *See, e.g.*, Tr. 2484:21-2485:3 (sustaining Samsung's objection for lack of foundation); Tr. 1958:2-5 (requiring Apple to lay foundation before proceeding).

Regarding Samsung's fifth argument, that Samsung's advertisements were unfairly excluded where Apple's were admitted, Apple's advertisements were relevant evidence for secondary meaning and fame, elements of Apple's trade dress claims. *See* Final Jury Instructions Nos. 63 (Secondary Meaning); 66 (Fame). Samsung has not established that its advertisements were similarly relevant.

Finally, both parties were allowed to use deposition testimony, and the exclusions and admissions cited by Samsung were admitted or excluded based upon whether the theories being introduced by the parties had been disclosed timely or untimely during discovery. Samsung was allowed to play deposition testimony on cross-examination of witnesses where appropriate. *See, e.g.*, Tr 1103:2-6 (deposition testimony played in open court during Samsung's cross-examination of Apple witness Peter Bressler).

Accordingly, the trial was fairly conducted, with uniform time limits and rules of evidence applied to both sides. A new trial would be contrary to the interests of justice.

Case5:11-cv-01846-LHK Document2220 Filed01/29/13 Page40 of 40

**IV. CONCLUSION**

For aforementioned reasons, the Court GRANTS Samsung's motion for judgment as a matter of law that claims 15 and 16 of the '516 Patent are not exhausted. The Court also grants judgment as a matter of law that Samsung's acts of patent infringement were not willful. However, for the reasons discussed below, the Court DENIES Samsung's motion for judgment as a matter of law in all other respects, and DENIES Samsung's motion for a new trial.

**IT IS SO ORDERED.**

Dated: January 29, 2013

LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

40
Case No.: 11-CV-01846-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW
A88

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 11-CV-01846-LHK<br><br>ORDER RE: DAMAGES |

In this patent case, a jury found that a range of Samsung products infringe several of Apple's design and utility patents, and that several Samsung products dilute Apple's trade dress. The jury awarded $1,049,343,540.00 in damages, and provided a breakdown of this award by Samsung product. In their post-trial motions, the parties have raised a number of issues concerning the damages in this case. Specifically, Apple has requested additur, supplemental damages, and prejudgment interest, *see* Apple's Motion for Judgment as a Matter of Law ("Apple JMOL"), ECF No. 2002, and Samsung has moved for a new trial on damages or for remittitur, *see* Samsung's Motion for Judgment as a Matter of Law ("Samsung JMOL"), ECF No. 2013. The Court will address each of these requests in turn.

**I. ADDITUR**

United States District Court
For the Northern District of California

Apple has requested that the Court increase the damages award for five products because the jury awarded less than the amount calculated by Samsung's damages expert.[1] *See* Apple JMOL at 18. However, there is a longstanding rule that the Seventh Amendment prohibits a judicial increase in a damages award made by a jury. *See Dimick v. Scheidt*, 293 U.S. 474, 486-87 (1935). Apple argues that that prohibition does not apply here because there is no dispute about the proper amount of damages. That is simply not the case. The amount of damages is heavily disputed here, as evidenced by extensive testimony provided by both parties concerning the proper amount of compensation. The jury was "not bound to accept the bottom line provided by any particular damages expert," *In re First Alliance Mortg. Co.*, 471 F.3d 977, 1002 (9th Cir. 2006), but rather was free to evaluate the testimony of both sides' experts in arriving at its award. It is not the proper role of the Court to second-guess the jury's factual determination as to the proper amount of compensation. Accordingly, Apple's motion for an increase in the jury's damages award is DENIED.

**II. SUPPLEMENTAL DAMAGES**

Apple seeks an award of supplemental damages for infringing sales not considered by the jury. The Court agrees that an award of supplemental damages is necessary here. Section 284 requires that the Court award compensation for every infringing sale, and the Federal Circuit has held that where the jury does not make an award, the Court must do so. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010). The parties do not dispute that there are sales for which the jury did not make an award, because they occurred after the trial had concluded. Because the Court must make an award for any sale for which the jury did not, an award of supplemental damages is required.

There are three primary issues the Court must address in resolving Apple's request for supplemental damages: (1) the date from which the award should begin; (2) whether the law permits supplemental damages for post-verdict sales where an award of infringer's profits is made

[1] Apple also suggests that the Court should ignore the product-by-product amounts provided by the jury, and should consider only the aggregate total amount. However, Apple provides no authority for the argument that the Court should not consider the jury's specific findings. The Court will thus consider the jury's award for each product.

United States District Court
For the Northern District of California

pursuant to 35 U.S.C. § 289; and (3) the proper method for calculating post-verdict damages in a case where the jury made no determination as to royalty rate.

First, regarding the date from which the award should be made, Apple argues that the supplemental damages award should include sales beginning on July 1, 2012, because the evidence presented to the jury ran only through June 30, 2012. Samsung argues that the jury considered all the sales made through the date of the verdict, whether or not explicit evidence of those sales was presented at trial, and thus, the supplemental damages award should begin on August 25, 2012 (the day after the verdict). There is no clear statement in the case law as to which approach is correct. While it is true that the jury did not hear evidence of sales between June 30 and August 24, it is also possible that the jury considered this fact in arriving at its ultimate award. Thus, there are reasons to support either date. However, the Federal Circuit recently affirmed a portion of a district court order refusing to grant supplemental damages for sales made before the verdict. The Court explained that the Plaintiff "could have-but did not-argue to the jury that its suggested amount . . .should be proportionally increased for the two months not accounted for in the sales data," and that "[u]nder these circumstances, awarding additional amounts of damages incurred before trial would be an improper invasion of the jury's province to determine actual damages and an inappropriate use of 35 U.S.C. § 284 to enhance inadequate compensatory damages." *Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 08-CV-335-IEG, 2010 WL 3070370 (S.D. Cal. Aug. 5, 2010) *aff'd in part, vacated in part*, 2012 WL 6602786 (Fed. Cir. Dec. 19, 2012) (internal citation omitted). The same is true here; nothing precluded Apple from arguing that the jury should consider sales from June 30 through August 24, or from presenting evidence on how to estimate such sales. Thus, consistent with the *Presidio Components* decision, the Court intends to calculate the supplemental damages award beginning on August 25, 2012, the day after the verdict.

Second, regarding the question of whether a supplemental damages award is appropriate where the jury's award was made, at least in part, pursuant to § 289, the law is not clear. Both parties have made arguments, but neither party has cited, and the Court is not aware of, any cases squarely addressing the issue of whether supplemental damages are appropriate for an award of infringer's profits made under § 289.

**United States District Court**
For the Northern District of California

Samsung argues that no supplemental damages may be awarded where the jury's award included infringer's profits under § 289, because the purpose of supplemental damages is purely to compensate the plaintiff, where an award of infringer's profits goes beyond compensation.  This argument is belied by the approach courts have taken to enhancements in the context of supplemental damages.  Specifically, courts have allowed a supplemental damages award pursuant to § 284 to be doubled for continuing willful infringement.  *See Aero Products Int'l, Inc. v. Intex Recreation Corp.*, 02 C 2590, 2005 WL 1498667 (N.D. Ill. June 9, 2005).  This outcome is clearly inconsistent with Samsung's contention that supplemental damages serve solely to compensate.  Moreover, courts have recognized that supplemental damages serve to prevent the "inefficient and unhelpful" outcome of a second suit being filed to collect damages for post-verdict, pre-judgment sales.  *Hynix Semiconductor Inc. v. Rambus Inc.* 609 F.Supp.2d 951, 961 (N.D. Cal. 2009).  Damages under § 289 would be available in a follow-on suit, and so should be available in this procedure designed to avoid such a suit.

Moreover, although § 289 does not contain § 284's explicit instruction that "[w]hen the damages are not found by a jury, the court shall assess them," § 289 does specify that "[n]othing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title."  However, in cases where both design and utility patents are infringed in a single product, an award made pursuant to § 289 compensates plaintiffs for both types of infringement.  *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002).  A prohibition on supplemental damages where an award is made pursuant to § 289 would thus run afoul of this requirement that other patent remedies, which include supplemental damages, remain available.

In sum, the purposes of supplemental damages and the text of §§ 284 and 289 indicate that supplemental damages are, indeed, available for awards made pursuant to § 289, in addition to awards made pursuant to § 284.

Finally, regarding the proper method for calculating supplemental damages,  as other courts in this district have noted, the cases discussing supplemental damages in the patent context are few.  *See Hynix*, 609 F. Supp. 2d at 960.  In most of those cases, a jury determined what the appropriate

royalty rate would be, allowing the court to simply apply the jury's stated methodology to the proven or estimated post-verdict sales. *See, e.g.*, *Finjan*, 626 F.3d at 1212 ("The district court granted Finjan additional damages by multiplying the jury's royalty rates against previously uncalculated sales."); *Hynix*, 609 F. Supp. 2d at 964 ("Although the existing case law on supplemental damages does not explain why, it recommends applying the royalty rates determined by the jury."); *see also Presidio Components*, 2012 WL 6602786. Here, the jury did not make a finding as to the appropriate royalty rate, and the Court cannot now do so without trenching on Samsung's Seventh Amendment right to a jury trial on that issue. *See Boston Scientific Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1122 (N.D. Cal. 2008) ("Even if there were evidence sufficient for the Court, as opposed to the jury, to determine a reasonable royalty, doing so at this point would violate BSC's Seventh Amendment rights."). However, in applying the same royalty rate used by the jury, courts have explained that the rationale for continuing the jury's award, rather than using some other method, is that there is an "absence of any meaningful distinction between pre-verdict and post-verdict infringement." *Hynix*, 609 F. Supp. 2d at 965. Under this rationale, it would be appropriate for the Court to attempt to award supplemental damages consistent with the jury's award.

In this case, Apple has proposed dividing the jury's total damages award for all products by the total number of sales for all products to determine a per-sale amount, which the Court could then multiply by the number of post-verdict sales. The Court does not find this type of averaging appropriate, as the jury's awards for different products differed significantly, and only a few of the products for which the jury made an award have remained on the market post-verdict. Rather, it would be more appropriate to determine the per-sale amount on a product-by-product basis, and use that per-sale amount to determine the supplemental damages amount for each product that has remained on the market for any post-verdict period. Because the jury returned an award for each product separately, the Court can simply divide the jury award for each product by that product's number of sales to calculate this per-product amount.

This leaves the question of the actual number of post-verdict sales. Apple has proposed an elaborate method of estimating the appropriate number of sales. The Court finds that there is no

need to estimate because the parties can present evidence of the actual number of sales. Moreover, courts have found it appropriate to delay orders for the submission of such evidence and hearings thereon pending the resolution of appeals, to "avoid potentially unnecessary expenditures of time and money in preparing such an accounting." *Intron, Inc. v. Benghiat*, 2003 WL 22037710, at *16 (D. Minn. 2003); *see also Eolas Technologies, Inc. v. Microsoft Corp.*, 2004 WL 170334 at *8 (N.D. Ill. 2004), *vacated in part on other grounds*, 399 F.3d 1325 (Fed. Cir. 2005) ("I grant the motion and will require an accounting after any appeal in this case is terminated."). In the instant case, one of this Court's post-trial orders has already been appealed to the Federal Circuit, and the parties have indicated that more appeals are anticipated. Moreover, as discussed above, there are complex issues with regard to supplemental damages for which there is no clear precedent. Thus, proceeding without the Federal Circuit's guidance may cause unnecessary expenditures of time and resources. Given the number and complexity of the issues in this case that remain unresolved, the Court finds that it would be appropriate to delay the consideration of evidence of actual post-verdict sales until after the completion of the appeals in this case.

**III. PREJUDGMENT INTEREST**

The purpose of prejudgment interest is to "compensate[] the patent owner for the use of its money between the date of injury and the date of judgment." *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996). The Court has considerable discretion in awarding prejudgment interest in patent cases. *See Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986). However, "prejudgment interest should ordinarily be awarded absent some justification for withholding such an award." *General Motors Corp. v. v. Devex Corp.*, 461 U.S. 648, 657 (1983). Although *Devex* addressed a royalty award under § 284, the Federal Circuit has also upheld awards of prejudgment interest on awards of infringer's profits under § 289. *See Catalina Lighting*, 295 F.3d at 1292.

Several of the products for which the jury made a damages award here involved not just patent infringement, but also Lanham Act claims, and thus resulted in damages awards that, pursuant to *Aero Products Intern., Inc. v. Intex Recreation Corp.*, 466 F.3d 1000 (Fed. Cir. 2006), compensate Apple for both trade dress dilution and patent infringement. The law is not clear on

**United States District Court**
For the Northern District of California

whether prejudgment interest may be awarded for Lanham Act claims. The Ninth Circuit has suggested that prejudgment interest is not available for Lanham Act claims not involving counterfeiting. *See Moscow Distillery Cristall v. Pepsico, Inc.*, 141 F.3d 1177 (9th Cir. 1998) ("Prejudgment interest is available under the Lanham Act only for counterfeiting."). On the other hand, the Ninth Circuit has also upheld an award of prejudgment interest in a Lanham Act case that did not involve counterfeiting. *See Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512, 514 (9th Cir. 1989).

However, the Court sees no need to resolve this conflict here. An award that is made to compensate both for trade dress dilution and for patent infringement is, in part, an award for patent infringement. *See Aero Products*, 466 F.3d at 1019. Because prejudgment interest is clearly appropriate for this award based on patent infringement, the Court finds that there would be no reason to forbid prejudgment interest simply because the award also compensates for a Lanham Act violation, even if the Lanham Act did not separately authorize prejudgment interest. Thus, the Court finds that Apple is entitled to prejudgment interest.

The parties have proposed two different rates for calculating interest. Apple has proposed the prime rate. Apple JMOL at 29. Samsung suggests that the lower 52-week Treasury bill rate would be more appropriate here. Samsung Opp'n at 30. In determining the appropriate rate, courts have considered whether, during the period of infringement, the plaintiff "borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [the defendant's] infringement." *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997). Such factors would make an award at a higher rate more appropriate. Here, Apple maintains substantial cash reserves and there is no evidence that Apple borrowed any money because it was deprived of the damages award. Thus here, as in *Laitram*, the Court finds that the 52-week Treasury Bill Rate is sufficient.

The parties also disagree about the appropriateness of compounding: Apple is in favor of annual compounding, and Samsung objects to any compounding. The Federal Circuit has explained that "the determination whether to award simple or compound interest similarly is a matter largely within the discretion of the district court," and that both simple and compound

Case5:11-cv-01846-LHK Document2271 Filed03/01/13 Page8 of 27

**United States District Court**
For the Northern District of California

interest awards have been upheld. *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 557 (Fed. Cir. 1984). Apple has submitted expert evidence that compounding is appropriate here, *see* Robinson Decl. at ¶ 18 & Exh. 4, and Samsung has presented no evidence to the contrary. The Court finds that compounding more closely approximates the actual borrowing costs Samsung would have faced. Accordingly, when the appeals are resolved, and the final damages amount settled, the Court will award prejudgment interest at the 52-week Treasury Bill Rate, compounded annually.

## IV. JURY'S DAMAGES AWARD

### A. Permissibility of examining nature of award

Samsung argues that it is apparent, from the damages amount the jury returned, that some of the awards rested on impermissible legal theories. Apple argues that the Court should not consider how the jury arrived at its award, but should rather only look at the final number, and consider whether that number could have been supported by the evidence in the record as a whole.

Apple is correct that courts are generally required to give great deference to jury awards, and to uphold them where they are supportable by the evidence in the record. *See Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356 (9th Cir. 1985); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358 (Fed. Cir. 2009). These cases address the general question of whether a damages award is supported by sufficient evidence in the record. However, the Ninth Circuit case most analogous to the present case recognized an exception to this general principle of deference in cases where it is readily apparent from the numbers that the jury applied an impermissible legal theory in arriving at its award. *See In Re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006). In *First Alliance Mortgage*, the Ninth Circuit observed that the jury's damages number was the precise numerical average "to the dollar" of the amounts proposed by the two competing damages experts. *Id.* at 1002. One of the experts, however, presented a theory that the Court had ruled legally impermissible. Though the Court gave a curative instruction, explicitly telling the jury that it was not allowed to apply that theory, the amount of the award made plain that the jury had applied the impermissible theory anyway. Because the award was clearly based in part on an

impermissible legal theory, the Ninth Circuit held that it had been error for the district court to "bend over backwards" to identify some conceivable theory on which the jury might properly have made the same award. The Federal Circuit has applied similar reasoning (though never in a case dispositive manner). *See Lucent Technologies v. Gateway*, 580 F.3d 1303 (Fed. Cir. 2009).

In this case, it is apparent that the jury awarded 40% of Apple's expert Terry Musika's calculation of Samsung's profits for a wide range of products, and in some cases, added the same expert's calculation for Apple's lost profits. Moreover, it is clear that for several products, the jury awarded exactly half of the reasonable royalty award proposed by Mr. Musika. As in *First Alliance Mortgage*, these numbers are "to the dollar;" it is thus quite apparent how the jury arrived at them. Indeed, Apple does not dispute this inference in its opposition, relying instead on the purported impermissibility of acknowledging what is apparent. The chart below details the formulas the jury apparently used. All percentages correspond to an exact and consistent percentage of the amount Mr. Musika testified was warranted for each category.

| **Samsung Product** | **Jury Award** | **Formula** |
|---|---|---|
| Captivate | $80,840,162 | 40% of Samsung's Profits |
| Continuum | $16,399,117 | 40% of Samsung's Profits |
| Droid Charge | $50,672,869 | 40% of Samsung's Profits |
| Epic 4G | $130,180,896 | 40% of Samsung's Profits |
| Exhibit 4G | $1,081,820 | 50% of Apple's Royalties |
| Fascinate | $143,539,179 | 100% of Apple's Lost Profits + 40% of Samsung's Profits |
| Galaxy Ace | $0 | n/a (no award) |
| Galaxy Prevail | $57,867,383 | 40% of Samsung's Profits |
| Galaxy S (i9000) | $0 | n/a (no award) |
| Galaxy S 4G | $73,344,668 | 100% of Apple's Lost Profits + 40% of Samsung's Profits |

| Galaxy S II AT&T | $40,494,356 | 40% of Samsung's Profits |
|---|---|---|
| Galaxy S II i9100 | $0 | n/a (no award) |
| Galaxy S II T-Mobile | $83,791,708 | 40% of Samsung's Profits |
| Galaxy S II Epic 4G Touch | $100,326,988 | 40% of Samsung's Profits |
| Galaxy S II Skyrocket | $32,273,558 | 40% of Samsung's Profits |
| Galaxy S II Showcase | $22,002,146 | 100% of Apple's Lost Profits + 40% of Samsung's Profits |
| Galaxy Tab | $1,966,691 | 50% of Apple's Royalties |
| Galaxy Tab 10.1 WiFi | $833,076 | n/a (no calculation apparent) |
| Galaxy Tab 10.1 4G LTE | $0 | n/a (no award) |
| Gem | $4,075,585 | 40% of Samsung's Profits |
| Indulge | $16,011,184 | 40% of Samsung's Profits |
| Infuse 4G | $44,792,974 | 40% of Samsung's Profits |
| Intercept | $0 | n/a (no award) |
| Mesmerize | $53,123,612 | 100% of Apple's Lost Profits + 40% of Samsung's Profits |
| Nexus S 4G | $1,828,297 | 50% of Apple's Royalties |
| Replenish | $3,350.256 | 50% of Apple's Royalties |
| Transform | $953,060 | 50% of Apple's Royalties |
| Vibrant | $89,673,957 | 100% of Apple's Lost Profits + 40% of Samsung's Profits |

Under *First Alliance Mortgage*, this Court cannot ignore the import of these numbers, even if the evidence as a whole could have supported an award of a similar, or even higher, amount. Accordingly, the Court will consider which of these awards entailed the use of an impermissible legal theory, and what the appropriate response is.

**B. Appropriate Response to Excessive Award**

United States District Court
For the Northern District of California

When a Court detects an error in the jury's damages verdict, the Court has two choices: the Court may order a new trial on damages, or the Court may reduce the award to a supportable amount. If the Court chooses the latter option, known as remittitur, the prevailing party then has the option of demanding a new trial on damages or accepting the reduced award. *See, e.g., Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905-RMW (July 14, 2006), 2006 WL 1991760.

The Court generally may not award any amount lower than the maximum amount that would have been supportable by the evidence. *See D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982) ("Although this circuit has not stated its position, others consistently approve remitting the judgment to the maximum amount sustainable by the proof. This rule prevents the court's substitution of its judgment for that of the jury. We adopt this standard.") (internal citations omitted). The Federal Circuit also uses this so-called "maximum recovery rule." *See Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 519 (Fed. Cir. 1995) ("When calculating an amount to remit, in order to encourage use of the efficient remittitur option, we will follow the 'maximum recovery rule,' which requires that the determination be based on the highest amount of damages that the jury could properly have awarded based on the relevant evidence."). The theory underlying this practice is that it carries out the jury's intention to the extent permissible by law, and thus remains consistent with both parties' Seventh Amendment right to a jury trial. *See Dimick*, 293 U.S. at 486 ("Where the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict along with the unlawful excess-in that sense that it has been found by the jury-and that the remittitur has the effect of merely lopping off an excrescence.").

However, there is an exception to this rule, wherein the Court may remit an excess amount where the excess is readily identifiable as such, even if the resulting award does not necessarily correspond to the maximum amount supportable by the evidence. *See, e.g.*, *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 292 (N.D.N.Y. 2009) *amended*, 01-CV-1974, 2009 WL 1405208 (N.D.N.Y. May 15, 2009) (Rader, J., by designation) (multiplying jury's explicitly stated royalty rate by lower royalty base Court found as a matter of law); *Joiner Sys., Inc. v. AVM Corp.*,

United States District Court
For the Northern District of California

*Inc.*, 517 F.2d 45, 49 (3d Cir. 1975) (jury calculated damages per square feet and number of square feet; Court found a lower number of square feet supportable by evidence, and multiplied jury's amount per square foot by the new, smaller number of square feet). Though the jury in the present case did not make an explicit finding as to what percentage of Apple's requested amount it deemed appropriate for each product, it is apparent from the amount of the award, which is "to the dollar" an exact and consistent percentage of Mr. Musika's amount. *See First Alliance Mortgage*, 471 F.3d 977. Thus, this multiplier is analogous to a jury's finding of an appropriate royalty rate. Accordingly, where the Court can detect a specific amount that ought to be subtracted from the award because of an identifiable error while otherwise preserving the jury's findings as to damages, the Court may offer Apple the option of remittitur in that amount, or a new trial.

The Court will now consider each of Samsung's allegations of error in the jury's award, and will determine which of these responses is appropriate for each situation.

**C. Specific allegations of error**

**1. Design Patent / Trade dress apportionment**

First, Samsung argues that for Apple to be entitled to Samsung's profits for design patent infringement, Apple was required to prove which portions of Samsung's profits were earned by the patented design features. Samsung reasons that Apple's expert presented a damages calculation for all of Samsung's profits on the design-patent-infringing products, but that Apple never proved that Samsung's alleged acts of design patent infringement were responsible for all of Samsung's profits. Thus, Samsung argues, each award that includes an award of Samsung's profits for design patent infringement must be set aside.

This argument is clearly foreclosed by Federal Circuit precedent. As explained in *Nike Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1442–43 (Fed. Cir.1998), Congress specifically drafted the design patent remedy provisions to remove an apportionment requirement that the Supreme Court had imposed. Thus, there is simply no apportionment requirement for infringer's profits in design patent infringement under § 289.

Next, Samsung argues that Apple presented no evidence that could have supported the jury's award of Samsung's profits for trade dress dilution. However, there are no products for

United States District Court
For the Northern District of California

which the jury found trade dress dilution without design patent infringement. Thus, the jury's award for these products could be supported by design patent infringement alone, which, as explained above, does not require apportionment. Therefore, even if there were no evidence to support a trade dress dilution award, the award as a whole would be supportable on the basis of design patent infringement. Because the award as a whole is supportable irrespective of Samsung's trade dress apportionment theory, the Court need not consider whether there was sufficient evidence in the record to independently justify the jury's award for these products on the basis of trade dress dilution. In sum, the Court finds that the jury's award is not excessive on the basis of apportionment for design patent or trade dress damages.

**2. Entitlement to lost profits**

Samsung next argues that Apple has not established entitlement to lost profits, and that accordingly, all of the awards that include a lost profits component must be set aside. "To recover lost profits, 'a patent owner must prove a causal relation between the infringement and its loss of profits.' In other words, the burden rests on the patentee to show a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001) (quoting *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218, 27 USPQ2d 1671, 1674 (Fed.Cir.1993)). The Court's task here is to review whether there is sufficient evidence to support a jury's lost profit award. *See Crystal Semiconductor*, 246 F.3d at 1355-57 ("Between Crystal's unadjusted market share, the testimony of TriTech's and OPTi's experts, and the testimonies of Crystal's other fact witnesses, the record supplied sufficient evidence to support the jury's 35% lost profit award"); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003) ("We agree with Ericsson that substantial evidence supports the jury's damages award for lost profits due to lost sales.").

Here, Apple presented the testimony of Apple's damages expert, Terry Musika. Mr. Musika provided detailed evidence regarding how the market would likely have behaved absent Samsung's infringement, including: (1) the market share of various smartphone manufacturers, based on data collected and analyzed by independent research firm IDC (including Apple,

United States District Court
For the Northern District of California

Samsung, and other manufacturers, to whom he assigned the largest market share) (PX25A1.8; Tr. 2084:23-2085:9); (2) Apple's capacity to manufacture additional phones and tablets (PX25A1.14-15; Tr. 2085:13-2086:3); and (3) consumer demand, based on both expert survey evidence and fact witness testimony (Tr. 2076:3-2077:8). The Federal Circuit has noted that it "has affirmed lost profit awards based on a wide variety of reconstruction theories where the patentee has presented reliable economic evidence of 'but for' causation." *Crystal Semiconductor*, 246 F.3d at 1355. Mr. Musika's opinion reconstructs the market based on market share, capacity, and demand, thus demonstrating how many additional sales Apple would likely have made, but for Samsung's infringement. This constitutes exactly the type of economic evidence of causation that the Federal Circuit requires in sustaining an award of lost profits. Accordingly, the Court finds that the record supported a jury award of lost profits. The Court thus declines to set aside the jury's damages awards that include Apple's lost profits on the grounds that Apple has not proven entitlement to lost profits.

**3. The Galaxy Prevail: Award of Samsung's Profits**

For the Galaxy Prevail, the jury awarded $57,867,383, which is 40% of Apple's calculation of Samsung's profits. The Galaxy Prevail, however, was found to infringe only utility patents. As the Court instructed the jury, infringer's profits are not a legally permissible remedy for utility patent infringement. *See* Final Jury Instruction Nos. 36 (utility patent lost profits); 40 (utility patent reasonable royalty); 54 (design patent defendant's profits); 55 (design patent lost profits); 56 (design patent reasonable royalty). Accordingly, as in *First Alliance Mortgage*, it is apparent that the jury failed to follow the Court's instructions on the law, and awarded damages based on a legally impermissible theory. This award cannot stand.

The jury's award was apparently based on Samsung's profits, which is an impermissible type of compensation for utility patent infringement. Thus, rather than including some identifiable portion of excess, such as particular sales for which there should have been no damages, the entire award was tainted. Further, the jury did not award the full amount Apple requested for Samsung's lost profits, but rather awarded only 40% of Apple's requested amount of $142,893,684. Thus, it does not appear that awarding the full amount that Apple requested for either of the two

permissible forms of compensation for utility patents (Apple's lost profits, for which Apple requested $8,573,370, or a reasonable royalty, for which Apple provided no calculation), which is the usual method for calculating a remittitur, could reasonably be thought to represent the jury's award, stripped only of the impermissible excess. *Cf. Dimick*, 293 U.S. at 486. Accordingly, the Court cannot reasonably and fairly calculate an appropriate remittitur.

Nor can the Court, having identified the impermissible legal theory on which the jury made its award, turn a blind eye or "bend over backwards" to find a possible permissible justification for the amount awarded. *See First Alliance Mortgage*, 471 F.3d at 977. Accordingly, the Court hereby ORDERS a new trial on damages for the Galaxy Prevail.

**4. Notice dates**

Samsung next contends that a new trial is warranted, or, in the alternative, that the Court should remit the jury's award, because the jury based its awards on Mr. Musika's calculations that used a notice date that was not supported by any evidence at trial. This argument is essentially two separate motions: (1) a motion for judgment as a matter of law that the evidence does not support any notice dates earlier than the filing of the relevant complaints for any patent except the '381 Patent; and (2) a motion for new trial on damages or remittitur because the jury made its award based on incorrect early notice dates. The Court will address the question of appropriate notice dates first, and will then consider what effect this may have on the damages award.

Under 35 U.S.C. § 287(a), there can be no damages award where a defendant did not have actual or constructive notice of the patent or registered trade dress at issue. Thus, it is improper to award damages for sales made before the defendant had notice of the patent, and an award that includes damages for sales made before notice of any of the intellectual property ("IP") infringed is excessive as a matter of law. Moreover, different types of IP allow for different types of damages awards. Specifically, damages for utility patent infringement may take the form of lost profits or a reasonable royalty, *see* 35 U.S.C. § 284; damages for trade dress dilution may take the form of lost profits and/or infringer's profits, *see* 15 U.S.C. § 1125; and damages for design patent infringement may include lost profits, a reasonable royalty, or infringer's profits, *see* 35 U.S.C. § 289. Accordingly, it is also erroneous to award infringer's profits for a time period where the defendant

United States District Court
For the Northern District of California

had notice only of utility patents, because infringer's profits are not an authorized form of damages for utility patent infringement.

The parties dispute whether Apple had given Samsung notice of each of the patents prior to the filing of the complaint and the amended complaint, which the parties agree gave Samsung notice of all of the asserted IP. Regarding the '381 Patent, Apple has presented evidence that Apple specifically put Samsung on notice of that patent in a meeting between Apple and Samsung on August 4, 2010. *See* PX52.12-PX52.16 (Apple's presentation listing specific patents, including the '381 Patent). Samsung argues that there is no evidence that Apple gave Samsung actual notice of alleged infringement of any specific patents other than the '381 Patent prior to the filing of the complaint on April 15, 2011, which gave notice of three Apple patents and Apple's registered trade dress, or the amended complaint on June 16, 2011, which gave notice of all the remaining Apple patents. Apple argues that the August 4, 2010 meeting put Samsung on sufficient notice of all of the asserted IP, even though the specific list of patents included only the '381 Patent.

Section 287 requires not only notice that a product allegedly infringes some unspecified patents, but notice of what specific patent the product is accused of infringing. This notice can be accomplished by marking the patented product with the patent number ("constructive notice"). *See* 35 U.S.C. § 287(a); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376-77 (Fed. Cir. 2008); *Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010). Alternatively, a notice can be delivered directly to the accused infringer ("actual notice"). *Funai*, 616 F.3d at 1373. Like constructive notice, actual notice appears to require that the accused infringer be informed of the specific patents it is accused of infringing. *See, e.g.*, *Minks*, 436 F.3d at 1366-67 (conducting notice analysis for a specific patent); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346-47 (Fed. Cir. 2001) (same).

Apple contends that notice need not identify the specific patent at issue. However, Apple cites only one case finding actual notice without actual disclosure of a specific patent number, a 1992 case from the District of Massachusetts that does not itself cite any case holding that actual notice is possible without an actual patent number. *See Ceeco Machinery Manufacturing, Ltd. v Intercole, Inc.*, 817 F.Supp. 979 (D. Mass. 1992).

Case5:11-cv-01846-LHK Document2271 Filed03/01/13 Page17 of 27

As an initial matter, *Ceeco* was an unusual case. The *Ceeco* Court explained that:

> To the extent that [the plaintiff's] warning was less explicit than would typically be required, [the defendant] appears to be largely responsible . . . By [defendant's] own admission, [defendant] continued to reassure [plaintiff] that it had not purchased [an accused machine] well after it in fact had. The provision for giving actual notice would be rendered meaningless if defendants could evade such notice by deliberately concealing their infringement.

817 F. Supp. at 987. In other words, the plaintiff did not give specific notice because the defendant continued to lie to the plaintiff to deliberately conceal defendant's infringement. There are no allegations of such deception here.

Furthermore, the *Ceeco* Court reasoned that if a defendant knows that its product is accused of infringing some unspecified patent that also covers a known competitor product, that defendant has sufficient notice of the patent, even without specific knowledge of the actual patent at issue. This reasoning is unpersuasive, and has never been adopted by the Federal Circuit. This kind of non-specific notice is insufficient because a patent may have a broad or narrow scope, and a product may be covered by a multitude of patents, and also include many unpatented features. Mere notice that some unknown patent allegedly covers some aspect of both the accused product and the competitor product does not provide meaningful notice as to what patented territory the accused device is alleged to infringe upon. The wide variety of patents covering the complex products in this very case illustrates this problem well. In sum, the Court finds that where a plaintiff relies on actual, rather than constructive notice, the notice must include the specific patents at issue.

Apple argues that Samsung received actual notice for all of its asserted acts of infringement at the August 4, 2010 meeting between the parties. However, Apple cites no evidence whatsoever that any patent-in-suit other than the '381 Patent was specifically identified during the meeting. Instead, Apple points to general comparisons drawn at that meeting between the industrial design and user interfaces of the iPhone 3GS and the Galaxy S, as well as references to general "user interface" patents. *See* PX52 (Apple's presentation). A side-by-side comparison of the iPhone 3GS and the Galaxy S that implies that the iPhone 3GS embodies some unspecified design and utility patents that may be infringed by the Galaxy S, however, does not provide notice of the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

specific patents alleged to be infringed, as required to satisfy § 287(a)'s notice requirement. Accordingly, the Court finds that the August 4, 2010 date is not supported by evidence in the record for any patent other than the '381 Patent.

Apple does not suggest that any notice occurred between the August 4, 2010 meeting and the filing of the original complaint on April 15, 2011. The original complaint gave Samsung notice of the '915 and D'677 Patents. Thus, the correct notice date for the '915 and D'677 Patents is April 15, 2011.

Apple also does not suggest any notice occurred on any date between the April 15, 2011 filing of the original complaint, and the filing of the amended complaint on June 16, 2011. The amended complaint gave Samsung notice of the '163, D'305, D'889, and D'087 Patents. Thus, the correct notice date for the '163, D'305, D'889, and D'087 Patents is June 16, 2011.

In sum, Samsung is entitled to judgment as a matter of law that the earliest notice dates supported by the evidence are: August 4, 2010 for the '381 patent; April 15, 2011 for the '915 and D'677 Patents; and June 16, 2011 for the'163, D'305, D'889, and D'087 Patents.

The damages numbers Mr. Musika presented to the jury were based on the August 4, 2010 notice date for all patents. See PX25A at 4, 5. Thus, the jury's awards for patent infringement, which are based on Mr. Musika's numbers using the early notice dates, may have contained some amount of excess compensation covering the period before Samsung had notice of the relevant IP, depending on the combination of IP infringed. The following chart indicates the correct notice dates, available remedies, and infringing products for each form of IP:

| IP | Notice Date | Available Remedies[2] | Products Infringing |
|---|---|---|---|
| '381 Patent | August 4, 2010 | Reasonable Royalty or Lost Profits | Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Ace, Galaxy Prevail, Galaxy S i9000, Galaxy S 4G, Galaxy S II AT&T, Galaxy S II i9100, Galaxy Tab, Galaxy Tab 10.1 WiFi, Gem, Indulge, Infuse 4G, Mesmerize, Nexus S 4G, Replenish, Transform, Vibrant |
| '915 Patent | April 15, 2011 (original complaint) | Reasonable Royalty or Lost Profits | Captivate, Continuum Droid Charge, Epic 4G, Exhibit 4G, Fascinate, Galaxy Prevail, Galaxy S i9000, Galaxy S 4G, Galaxy S II AT&T, Galaxy S |

[2] A reasonable royalty represents the minimum amount of permissible damages for utility and design patent infringement. *See* 35 U.S.C. § 284. Plaintiffs are entitled to lost profits instead of a reasonable royalty only if they can prove that but for the infringement, they would have earned those profits. *See Crystal Semiconductor*, 246 F.3d at 1354 ("[A] patentee may obtain lost profit damages for that portion of the infringer's sales for which the patentee can demonstrate 'but for' causation and reasonable royalties for any remaining infringing."). In addition, for design patent infringement, 35 U.S.C. § 289 also provides "an alternate remedy" of infringer's profits, s*ee Nike*, 138 F.3d at 1439, which a plaintiff may seek in lieu of lost profits or a reasonable royalty.

Trade dress damages may include infringer's profits *and* actual damages, which often take the form of lost profits. 15 U.S.C. § 1117.

In addition, the Federal Circuit has explained that a plaintiff may be compensated only once for each sale, even if more than one form of infringement has occurred. *See Catalina Lighting*, , 295 F.3d at 1277 (utility patents and design patents infringed); *Aero Products*, 466 F.3d 1000 (utility patent and trademark infringed). However, as Mr. Musika explained to the jury, Tr. 2092:14-25, there are many sales of each product, and it is permissible to award different forms of compensation for different sales. Thus, an award may be comprised of, for instance, part infringer's profits and part lost profits, as long as there is only one award for each infringing product sold.

United States District Court
For the Northern District of California

| | | | |
|---|---|---|---|
| | | | II i9100, Galaxy S II T-Mobile, Galaxy Tab, Galaxy Tab 10.1 WiFi, Gem, Indulge, Infuse 4G, Mesmerize, Nexus S 4G, Transform, Vibrant |
| D'677 Patent | April 15, 2011 (original complaint) | Infringer's Profits or Reasonable Royalty or Lost Profits | Fascinate, Galaxy S i9000, Galaxy S 4G, Galaxy S II AT&T, Galaxy S II i9100, Galaxy S II T-Mobile, Galaxy S II Epic 4G Touch, Galaxy S II Skyrocket, Galaxy S Showcase i500, Infuse 4G, Mesmerize, Vibrant |
| Registered Trade Dress | April 15, 2011 (original complaint) | Infringer's Profits and Lost Profits (actual damages) | Fascinate, Galaxy S 4G, Galaxy S II AT&T, Galaxy S Showcase i500, Mesmerize, Vibrant |
| D'889 Patent | June 16, 2011 (amended complaint) | Infringer's Profits or Reasonable Royalty or Lost Profits | None |
| D'087 Patent | June 16, 2011 (amended complaint) | Infringer's Profits or Reasonable Royalty or Lost Profits | Galaxy S i9000, Galaxy S 4G, Vibrant |
| D'305 Patent | June 16, 2011 (amended complaint) | Infringer's Profits or Reasonable Royalty or Lost Profits | Captivate, Continuum, Droid Charge, Epic 4G, Fascinate, Galaxy S i9000, Galaxy S 4G, Galaxy S Showcase i500, Gem, Indulge, Infuse 4G, Mesmerize, Vibrant |
| Unregistered trade dress | N/A | Infringer's Profits and Lost Profits (actual damages) | Fascinate, Galaxy S i9000, Galaxy S Showcase i500, Mesmerize, Vibrant |

Apple has provided to the Court and to the jury the numbers necessary to calculate the

infringer's profits and reasonable royalty awards based on Mr. Musika's damages numbers, but with later notice dates. Thus, the Court can, for some products, calculate how much of the jury's award compensated for the sales before Samsung had notice of the relevant IP. Indeed, where the award simply compensated for too many sales, the situation is analogous to cases in which the jury used a royalty base that was not supported by the evidence, and the Court found it permissible to multiply the royalty rate by the correct royalty base. *See Cornell Univ.*, 609 F. Supp. 2d at 292. For the products where this type of error occurred, the Court can calculate the appropriate remittitur by multiplying the corrected maximum damages amount, adjusted per Mr. Musika's instructions (*see* Tr. at 2073:21-2074:19; 2163:24-2164:7) to remove the sales before Samsung had notice, by the multiplier used by the jury.

However, for other products, the jury awarded an impermissible *form* of damages for some period of time, because Samsung had notice only of utility patents for some period, but an award of infringer's profits was made covering the entire period from August 4, 2010 to June 15, 2012. For these products, the Court cannot remedy the problem by simply subtracting the extra sales.

The products fall into four distinct categories, depending on the combination of IP infringed and award made. The Court will discuss each in turn.

**a. Unregistered Trade Dress Dilution Does Not Require Notice, Thus There Is No Excess Damages Award**

Damages for dilution of unregistered trade dress do not require notice for an award of damages. *See PAF S.r.l. v. Lisa Lighting Co., Ltd.*, 712 F. Supp. 394, 401 (S.D.N.Y. 1989) ("Moreover, the holder of a legal trademark, in this case unregistered trade dress, 'is under no obligation to give advance notice of its rights to an infringer before seeking damages or injunctive relief for infringement.'"); *see also* 4 Callmann on Unfair Comp., Tr. & Mono. § 23:79 (4th Ed.) ("[S]tatutory notice is irrelevant to claims for infringement of an unregistered mark under § 43(a) of the Lanham Act or under state law."). Moreover, infringer's profits are a permissible remedy for dilution of registered and unregistered trade dresses. *See* 15 U.S.C. § 1117(a). Thus, for any product for which the jury found dilution of unregistered trade dress, there can be no excess on the basis of notice dates, because an award of Samsung's profits, the highest amount sought by Apple,

United States District Court
For the Northern District of California

would be permissible for the entire period requested by Apple, from August 4, 2010 through the beginning of trial, based on trade dress dilution alone. Because the award is per sale, rather than per type of IP, *see Aero Products,* 466 F.3d at 1000, as long as the award of infringer's profits is authorized for any given sale, there is no need for the award to be separately authorized for each type of IP. There is thus no excess due to notice dates for the following products, all of which were found to dilute Apple's unregistered trade dress: Fascinate, Galaxy S 4G, Galaxy S II Showcase, Mesmerize, and Vibrant. Accordingly, the jury's award of $381,683,562 for these 5 products stands.

**b. Impermissible Infringer's Profits Award**

Next, there are 8 phones for which the jury awarded 40% of Samsung's profits for the entire period, but for which, during some of the damages period, infringer's profits was not an authorized remedy. These phones are: Gem, Indulge, Infuse 4G, Galaxy SII AT&T, Captivate, Continuum, Droid Charge, and Epic 4G. All eight of these phones were found to infringe the '381 Patent, for which the correct notice date is August 4, 2010, and one or more design patents, for which the correct notice dates are later. However, an award based on infringer's profits was made for the entire time, without accounting for the fact that from August 4, 2010 until the filing of the relevant complaint, only a utility patent was infringed, and thus only an award of a reasonable royalty or Apple's lost profits was legally permissible.

The law requires the jury to award some amount of damages for each infringing sale. *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court *shall* award the claimant damages adequate to compensate for the infringement, but *in no event* less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.") (emphasis added). Thus, some of the jury's award of Samsung's profits had to compensate for sales between August 4, 2010 and April 15, 2011. However, as explained above, infringer's profits are not a permissible remedy for utility patent infringement. Thus, for these 8 phones, there is clearly a component of the award that is based on an impermissible legal theory, exactly as there was in *First Alliance Mortgage.* The awards for these 8 phones, accordingly, cannot stand.

For all of these products, Apple alleged infringement of a design patent in the April 15,

2011 original complaint or the June 16, 2011 amended complaint. An award of infringer's profits is thus authorized as of the time Samsung had notice of the relevant design patent. It is only the award from August 4, 2010 to the time of the filing of the relevant complaint that is excessive. However, the Court cannot simply trim off the period of the award before notice of the design patents, because the jury found that these 8 products infringed the '381 Patent, for which there *was* notice as of August 4, 2010. If the Court were to simply subtract all of the award made for the period before notice of the design patents, Apple would not be compensated for the sales made when Samsung had notice of the'381 Patent – a scenario that would run afoul of § 284's requirement that there be compensation for each infringing sale. Thus, to determine an appropriate remittitur, the Court would first have to subtract the award of Samsung's profits for the period made before notice of any design patent, and would then have to add an award to compensate for infringement of the '381 Patent for the period between August 4, 2010 and the appropriate notice date for each product.

However, as with the Galaxy Prevail, the Court cannot determine an appropriate award to replace the jury's impermissible award of Samsung's profits for this time period. Using the maximum amount supported by the evidence for one of the permissible forms of compensation (i.e. a reasonable royalty or Apple's lost profits) would be inconsistent with the jury's awards of 40% of Mr. Musika's calculation of Samsung's profits for these products, or for products for which a reasonable royalty was awarded, 50% of Mr. Musika's calculation of a reasonable royalty. Indeed, using the *maximum* amount the evidence could have supported for Apple's lost profits or a reasonable royalty might even result in an award *greater* than that made by the jury using the impermissible method – an outcome clearly inconsistent with the Seventh Amendment.

Moreover, Mr. Musika did not testify as to how the jury (or the Court) could calculate Apple's lost profits for a shorter time period. Although he did offer testimony as to how to calculate a reasonable royalty for a shorter time period, *see* Tr. 2074:4-19, the sales data the parties provided is broken down only by quarter, and is not sufficiently specific to allow the Court to calculate the correct amount for sales in quarters where notice occurred in the middle of the quarter. Thus, the Court cannot calculate the appropriate amount of Apple's lost profits or a

United States District Court
For the Northern District of California

reasonable royalty for the '381 Patent for the relevant time period before notice of the other patents. Accordingly, there is no readily identifiable amount that the Court could remit to remedy this problem.

Nor would it be appropriate for the Court to leave the award intact despite the apparent error, simply because there exists some theory on which the jury might have made such an award. Such a ruling would entail precisely the type of "bending over backward" forbidden by *First Alliance Mortgage*. As the Court can neither calculate an appropriate remittitur nor leave the award intact, the only remaining possibility is to conduct a new trial on damages for these 8 products.

Furthermore, it was Apple's strategic decision to submit an expert report using an aggressive notice date for all of the patents. The need for a new trial could have been avoided had Apple chosen a more circumspect strategy or provided more evidence to allow the jury or the Court to determine the appropriate award for a shorter notice period. Accordingly, the Court ORDERS that a new trial be conducted on the amount of damages for the Gem, Indulge, Infuse 4G, Galaxy SII AT&T, Captivate, Continuum, Droid Charge, and Epic 4G, and strikes $383,467,143 from the jury's award.

**c. Infringer's Profits Permissible But Damages Period Too Long**

For an additional 3 phones, the jury used Mr. Musika's calculations that assumed the August 4, 2010 notice dates for all patents, but none of these phones infringed the '381 Patent, the only Patent for which the August 4, 2010 date was supported. All three of these phones did, however, infringe the D'677 Patent, meaning that Samsung's profits *are* a permissible remedy beginning with the filing of the original complaint. In other words, these phones are similar to the 8 phones discussed above, but they were not found to infringe the '381 Patent, so there is no need to determine an appropriate award for the gap between August 4, 2010 and the filing of the relevant complaint, and the Court can simply subtract the damages awarded for the extra days without the need to substitute an alternative award. These 3 phones are: Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, and Galaxy S II T-Mobile.

Samsung had notice of the D'677 Patent by April 15, 2011 (the date of filing of Apple's original complaint, which included the D'677 Patent). Thus, to remedy any overcompensation, the Court would need to subtract any amount awarded for the period between August 4, 2010 and April 15, 2011. However, the numbers underlying Mr. Musika's calculations show that these products were not sold before April 15, 2011. Specifically, JX1500, the table which the parties agreed showed sales and revenue per quarter for each accused phone, shows that the Galaxy S II Epic 4G Touch was first sold in the third quarter of 2011, and the Galaxy S II Skyrocket and Galaxy S II T-Mobile were both first sold in the fourth quarter of 2011 – both *after* the original complaint was filed, giving Samsung notice of the D'677 Patent. Thus, for products for which there were no sales prior to June 15, 2011, there were no damages awarded for the period prior to that date. Consequently, none of the sales that went into Mr. Musika's calculation of Samsung's profits for these three phones was made before Samsung had notice. Accordingly, there is no excess for these three phones, and the jury's award stands. Samsung's motion for a new trial on damages or remittitur for Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, and Galaxy S II T-Mobile is DENIED. The jury's award of $216,392,254 for these products stands.

**d. Reasonable Royalty Awarded But Damages Period Too Long**

Finally, for five phones, (Exhibit 4G, Galaxy Tab, Nexus S 4G, Replenish, and Transform), the jury awarded amounts that represent exactly half of Mr. Musika's reasonable royalty calculations. However, these numbers were, as described above, based on incorrect notice dates for several of the patents.

For these phones, the Court could, in theory, adjust Mr. Musika's reasonable royalty amounts to account for the proper notice dates for each patent, and then calculate half of that number for each of the five phones to arrive at an amount consistent with the jury's award, but adjusted for correct notice dates. Mr. Musika provided the per-unit royalty rate for each patent, *see* PX25A1 at 16, and the parties jointly provided the number of units of each product sold per quarter. *See* JX1500.

However, the two later notice dates that apply for the design patents (April 15, 2011 and June 16, 2011) both fall somewhere in the middle of the second quarter of 2011, and thus do not

**United States District Court**
For the Northern District of California

correspond with the dates on which quarters begin or end. The parties have presented no evidence of sales in more specific time frames, so as to permit an accurate apportionment of Samsung's sales throughout the second quarter of 2011. As the sales of these products may not have been evenly distributed throughout the quarter, the evidence is not sufficient to support even a pro-rated award for the sales in the second quarter of 2011, because such an award might include sales for which Samsung had no notice. Moreover, calculating a reasonable royalty beginning with the third quarter of 2011 would leave Apple uncompensated for some number of sales occurring during the second quarter of that year. Thus, the Court can neither calculate a pro-rated award for the second quarter of 2011 nor begin the award with the third quarter of 2011.

Because the award is excessive but the Court cannot accurately calculate the correct number of sales on which to base a remittitur, the Court ORDERS a new trial for the Exhibit 4G, Galaxy Tab, Nexus S 4G, Replenish, and Transform, and strikes $9,180,124 from the award.

**CONCLUSION**

Apple's motion for an increase in the jury's damages award is DENIED. The Court declines to determine the amount of prejudgment interest or supplemental damages until after the appeals in this case are resolved.

Because the Court has identified an impermissible legal theory on which the jury based its award, and cannot reasonably calculate the amount of excess while effectuating the intent of the jury, the Court hereby ORDERS a new trial on damages for the following products: Galaxy Prevail, Gem, Indulge, Infuse 4G, Galaxy SII AT&T, Captivate, Continuum, Droid Charge, Epic 4G, Exhibit 4G, Galaxy Tab, Nexus S 4G, Replenish, and Transform. This amounts to $450,514,650 being stricken from the jury's award. The parties are encouraged to seek appellate review of this Order before any new trial.

The jury's award stands for the Galaxy Ace, Galaxy S (i9000), Galaxy S II i9100, Galaxy Tab 10.1 WiFi, Galaxy Tab 10.1 4G LTE, Intercept, Fascinate, Galaxy S 4G, Galaxy S II Showcase, Mesmerize, Vibrant, Galaxy S II Skyrocket, Galaxy S II Epic 4G Touch, and Galaxy S II T-Mobile. The total award for these 14 products is $598,908,892.

**IT IS SO ORDERED.**

United States District Court
For the Northern District of California

Case5:11-cv-01846-LHK Document2271 Filed03/01/13 Page27 of 27

Dated: March 1, 2013, 2013

LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

27

Case No.: 11-CV-01846-LHK
ORDER RE: DAMAGES

A115

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| APPLE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendants. | ) | Case No.: 11-CV-01846-LHK<br><br>ORDER DENYING SAMSUNG'S MOTION FOR JUDGMENT AS A MATTER OF LAW, REMITTUR, OR A NEW TRIAL; DENYING APPLE'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND OTHER POST-TRIAL RELIEF |

On November 21, 2013, after six days of trial and two days of deliberation, a jury awarded Apple roughly $290 million in damages for Samsung's infringement of three U.S. utility patents and two U.S. design patents. *See* Dkt. 2822 ("November 2013 Jury Verdict"). That verdict was not the first damages verdict in this case. Fifteen months earlier, a different jury had sided with Apple and awarded roughly $1.049 billion on its infringement and trade dress claims against Samsung. *See* Dkt. 1931 ("August 2012 Amended Jury Verdict"). Samsung successfully moved for judgment as a matter of law as to that first award, based on a theory that Apple's damages numbers relied on improper notice dates. *See* 35 U.S.C. § 287(a) (predicating infringement damages in certain circumstances on proof that "the infringer was notified of the infringement and continued to infringe thereafter"). Because Apple had not presented sufficient evidence to recalculate the

appropriate damages award for some of the infringing sales at issue in light of the proper notice dates, the Court struck approximately $410 million from the first award and ordered a limited new trial on damages relating only to those sales. *See* Dkt. 2271 at 26 ("Retrial Order"); 2316 at 2 (Case Management Order reinstating portion of original jury award). The November 2013 verdict is the result of that retrial.

The parties have now filed post-trial motions addressing the jury's latest verdict. Specifically, Apple seeks additur, supplemental damages, and prejudgment interest, *see* Apple's Motion for Judgment as a Matter of Law ("Apple JMOL"), Dkt. 2876, and Samsung has moved for judgment as a matter of law, remittitur, and a new trial, *see* Samsung's Motion for Judgment as a Matter of Law ("Samsung JMOL"), Dkt. 2877.[1] The Court held a hearing on the post-trial motions on January 30, 2014. For the following reasons, the Court DENIES each of the parties' requests.

## I. LEGAL STANDARD

Rule 50 permits a district court to grant judgment as a matter of law "when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Oregon Health Sciences Univ.*, 327 F.3d 876, 881 (9th Cir. 2003). A party seeking judgment as a matter of law after a jury verdict must show that the verdict is not supported by "substantial evidence," meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)).

A new trial is appropriate under Rule 59 "only if the jury verdict is contrary to the clear weight of the evidence." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010). A court should grant a new trial where necessary "to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

---

[1] Apple has also renewed its request for a permanent injunction. *See* Dkt. 2897. The Court will address that renewed request in a separate order.

United States District Court
For the Northern District of California

## II. APPLE'S REQUEST FOR SUPPLEMENTAL DAMAGES AND PREJUDGMENT INTEREST

Apple renews its request for the Court to award supplemental damages for infringing products sold after August 25, 2012, and for prejudgment interest based on the two verdicts and supplemental damages. Apple JMOL at 6-8. The Court previously decided to wait until the appeals of this case are resolved to begin the process of calculating supplemental damages and prejudgment interest. *See* Retrial Order at 6, 8 (citing *Intron, Inc. v. Benghiat*, 2003 WL 22037710, at *16 (D. Minn. 2003); *Eolas Techs., Inc. v. Microsoft Corp.*, 2004 WL 170334 at *8 (N.D. Ill. 2004), *vacated in part on other grounds*, 399 F.3d 1325 (Fed. Cir. 2005)). Apple asks the Court to reconsider this decision because Samsung is no longer selling any of the infringing products "and the Court can now readily compute a final total." Apple JMOL at 6.

The Court declines Apple's invitation to revisit its decision. Even Apple acknowledges that proceeding with an accounting now will require additional discovery. *See id.* at 7-8. The Court maintains its conclusion that obtaining the Federal Circuit's guidance, both as to the merits as well as to how to calculate supplemental damages, before proceeding with an accounting is the most efficient and acceptable way to proceed. *See* Retrial Order at 3-6. Accordingly, Apple's request to proceed with discovery and an accounting of supplemental damages and prejudgment interest is DENIED.

## III. THE PARTIES' MOTIONS FOR JUDGMENT AS A MATTER OF LAW

The jury's November 2013 verdict awarded a lump sum to Apple in the amount of $290,456,793, broken down only by product.[2] Before evaluating the propriety of this award, the

[2] The jury awarded the following damages amounts for each infringing product:

| Samsung Product | Jury Award |
|---|---|
| Captivate | $21,121,812 |
| Continuum | $6,478,873 |
| Droid Charge | $60,706,020 |
| Epic 4G | $37,928,694 |
| Exhibit 4G | $2,044,683 |
| Galaxy Prevail | $22,143,335 |
| Galaxy Tab | $9,544,026 |
| Gem | $4,831,453 |
| Indulge | $9,917,840 |

(footnote cont'd)

United States District Court
For the Northern District of California

Court must determine whether it may deconstruct the overall award into the three categories of damages that Apple sought at trial: (A) Apple's lost profits for certain of Samsung's sales that infringed Apple's U.S. Utility Patent No. 7,844,915 (the "'915 Patent"); (B) a reasonable royalty for Samsung's remaining sales that infringed the '915 Patent and sales that infringed one or both of Apple's U.S. Utility Patent Nos. 7,864,163 (the "'163 Patent") and 7,469,381 (the "'381 Patent"); and (C) Samsung's profits for Samsung's sales that infringed two Apple design patents (U.S. Design Patent Nos. D604,305 (the "D'305 Patent") and D618,677 (the "D'677 Patent")).

Samsung contends that the jury awarded all the lost profits and reasonable royalties Apple requested and the average of the infringer's profits the parties requested. Samsung JMOL at 3-4. Although Apple argues that Samsung improperly "deconstruct[s] the verdict," it does not seriously contend that the jury awarded anything less than the full amount Apple requested in lost profits and reasonable royalties. *See* Apple Opp. at 2-4 (contesting "Samsung's proffered deconstruction" of the jury verdict only as to the award of Samsung's profits). Indeed, in its own motion for judgment as a matter of law, Apple acknowledges that "the jury awarded Apple all its requested lost profits and reasonable royalty damages." Apple JMOL at 2; *see* Dkt. 2885-1 at 2 n.2 (Apple's notice of errata to its motion acknowledging that "[t]he damages awarded for the six products for which Apple sought only Apple's lost profits and a reasonable royalty were identical to the damages calculated by [Apple's damages expert]."). In light of these concessions by Apple, the Court assumes the jury adopted Apple's proposed lost profits and reasonable royalty calculations. The Court will separately address the award of Samsung's profits below.

---

(footnote cont'd from previous page)

| Samsung Product | Jury Award |
|---|---|
| Infuse 4G | $99,943,987 |
| Nexus S 4G | $10,559,907 |
| Replenish | $3,046,062 |
| Transform | $2,190,099 |

Dkt. 2822 at 1-2.

**A. The Jury's Award of Lost Profits Damages**

The jury awarded $113,777,344 in lost profits to Apple for Samsung's infringement of the '915 Patent.[3] At trial, Apple based its entitlement to lost profits on the four factors enumerated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978): (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) capacity to exploit the demand, and (4) the amount of profit Apple would have made but for Samsung's infringement. Samsung challenges the bulk of Apple's lost profits award for failure to establish factors two and four. *See* Samsung JMOL at 6-22. Samsung also challenges the award of lost profits as to the Galaxy Tab based on Apple's alleged lack of capacity to make additional tablet sales (*Panduit* factor 3). *See id.* at 23-24. The Court has little trouble concluding that Apple presented sufficient evidence to support the jury's lost profits award.

The Court already rejected Samsung's sufficiency arguments as to Apple's lost profits theory after the first trial, concluding that Apple's evidence "constitute[d] exactly the type of economic evidence of causation that the Federal Circuit requires in sustaining an award of lost profits." Retrial Order at 14 (citing *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001)). For the retrial, the Court restricted Apple's damages expert to the same lost profits theory. *See* Dkt. 2316 at 3.[4] Apple complied with that restriction, presenting the same evidence of entitlement to lost profits through its retrial damages expert, Julie Davis, as it did through its first damages expert, Terry Musika. *Compare* 2013 Tr. 665:14-671:22; PX 25F.8 (Davis expert testimony and exhibits relating to the market share of various smartphone manufacturers, based on data collected and analyzed by independent research firm IDC) *with* 2012 Tr. 2084:23-2085:9; PX 25A1.8 (same from Musika); *compare* 2013 Tr. 671:24-676:17; PX25F.14-15 (Davis testimony and exhibits relating to Apple's capacity to manufacture additional phones and tablets) *with* 2012 Tr. 2085:13-2086:3; PX25A1.14-15 (same from Musika); *compare*

[3] Roughly speaking, the '915 patent covers touch-to-scroll and pinch-to-zoom technology. *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1358 (Fed. Cir. 2013).

[4] Because Apple's damages expert from the first trial passed away in December 2012, the Court permitted Apple to substitute a new damages expert, but prohibited her from relying on "(1) new sales data . . . ; (2) new products; and (3) new methodologies or theories." Dkt. 2316 at 3.

United States District Court
For the Northern District of California

2013 Tr. 650:5-660:12 (Davis testimony about survey and other evidence indicating demand) *with* 2012 Tr. 2076:3-2083:3 (same from Musika).

What is more, in pre-trial motions for the damages retrial, Samsung successfully restricted Apple's lost profits case in the retrial to damages on the '915 Patent alone—even though Apple obtained a verdict of lost profits damages as to all three utility patents in the first trial. *See* Dkt. 2719 (Nov. 12, 2013 Order granting Samsung's emergency motion to exclude).[5] If anything, Apple spent more time eliciting testimony during the retrial in support of its identical lost profits theory, bolstering its arguments to the jury for lost profits damages under the '915 patent alone. *See* 2013 Tr. 688:23-690:16 (Davis relying on Apple's profits and loss statements in PX181); *id.* 508-509 (Apple's vice president of procurement testifying about Apple's iPad capacity and PX182). Samsung fails to explain how Apple's previously adjudged "adequate" evidence has become insufficient to support Apple's trimmed lost profits claim in this trial.

Samsung did not introduce any additional evidence at the retrial that required the jury to now reject Apple's request for lost profits damages. Samsung presented largely the same types of evidence in the retrial that it elicited in the first trial. *Compare* Samsung JMOL at 6-12, 18-22 (compiling cross-examination evidence of Davis and Hauser regarding alleged failure to focus on demand for the patented features) *with* 2012 Trial Tr. 2124:19-2135:22 (cross examination of Musika regarding alleged lack of demand for the patented features); *id.* 2142:20-2143:24 (same); *id.* 2151:4-2159:24 (same); *id.* 1923:5-1945:14 (cross examination of Hauser as to whether his surveys accurately reflect market demand for the patented features); *compare* Samsung JMOL at 23-24 (compiling evidence of Apple's alleged lack of capacity for the iPad 2) *with* 2012 Trial Tr. 3046:25-3047:8 (Samsung's damages expert testifying as to alleged lack of capacity for the iPad 2).

[5] In a ruling prior to the damages retrial, the Court held that, for purposes of claiming lost profits on a particular patent, potential design arounds for that patent must be considered as of the date of first infringement rather than the date the defendant received notice of the infringement. *See* Dkt. 2660. Because Davis conceded that shifting the design around dates for the '381 and '163 Patents meant that Samsung would have designed around those two patents by the date Samsung received notice of them, Apple was unable to claim lost profits for those patents and was forced to rely solely on a claim for reasonable royalties. *See* Dkt. 2719.

United States District Court
For the Northern District of California

During the damages retrial, Samsung presented two proposed noninfringing alternatives that Samsung was unable to present at the first trial. In particular, the first jury found that Samsung's Galaxy Ace and Intercept smartphones did not infringe the '915 Patent. *See* August 2012 Amended Jury Verdict at 3. During the retrial, Samsung relied on the first jury's noninfringement finding as to those two phones to argue to the retrial jury that Apple failed to show the absence of acceptable noninfringing alternatives. *See*, *e.g.*, 2013 Trial Tr. 468:23-470:11; PDX 29.21-.22. The retrial jury, however, reasonably rejected Samsung's noninfringing alternatives defense.

As to the Galaxy Ace, Apple told the jury that the first jury found that this phone infringed Apple's '163 and '381 Patents. *See* 2013 Trial Tr. 1188:4-5. For that reason, the jury could have concluded that the Galaxy Ace was not an available noninfringing alternative. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (en banc) (affirming factual lost profits finding where "the only substitute for the patented device was . . . another of the patentee's devices" and therefore "*being patented by [the patentee]*, it was not available to customers except from [the patentee]") (emphasis added).[6] Samsung highlights Davis's concessions that design arounds for the '381 and '163 patents would have been complete before the Galaxy Ace came on the market, *see* 2013 Trial Tr. 1200:23-1201:7, 1201:9-17, and contends that those concessions preclude Apple from arguing that the '381 and '163 Patents rendered the Galaxy Ace unavailable. Although compelling, the jury was not required to credit that design around argument in light of the fact that Samsung had not in fact developed a version of the Galaxy Ace that did not infringe the '381 and '163 Patents.

As to the Intercept, the evidence showed that that phone was a 10-month-old device at the time of the lost profits period with a small, low-resolution screen and a slide-out physical

---

[6] In a pre-trial ruling, the Court held, over Apple's objection, that the Federal Circuit's decision in *Rite-Hite* did not prevent, as a matter of law, Samsung from arguing at trial that the Galaxy Ace was an available noninfringing alternative even though it infringed other Apple patents. *See* Dkt. 2657 at 8-13. Nonetheless, Rite-Hite makes clear that, as a "question of proof," 56 F.3d at 1548, the jury could permissibly conclude that the Galaxy Ace was not in fact available because it infringed other patents.

keyboard. *See* DX952.014; JX1009; 2013 Trial Tr. 1186:19-21. Moreover, the phone ranked below the industry average—and well below the iPhone 4 and iPhone 3GS—in a 2011 J.D. Power customer satisfaction survey that included Samsung customers. *See* PX69.84-.85. From this evidence, the jury could have concluded that the Intercept was not an acceptable alternative.

Finally, Samsung argues that it could have easily and quickly implemented the noninfringing touch-to-scroll, pinch-to-zoom technology imbedded in the Intercept and Galaxy Ace in another phone. *See* Samsung JMOL at 16-17. However, Samsung presented no evidence to that effect. The jury permissibly disagreed with Samsung's attorney argument. Samsung's request for judgment as a matter of law as to the jury's lost profits award is therefore DENIED.

**B. The Jury's Award of Reasonable Royalty Damages**

The jury awarded Apple the $34,625,194 in reasonable royalty damages that it requested. The Court holds that substantial evidence supports this award. Through Davis, Apple provided expert testimony as to a reasonable royalty rate on which the parties would have agreed in a hypothetical negotiation based on an evaluation of a number of factors. In particular, Davis testified that she evaluated "the cost[s] to Samsung of being out [of] the market long enough to design around the patents in this case," 2013 Trial Tr. 705:19-21 ("Cost Approach"), the "profits . . . attributable to [Samsung's] use of [the] technology[,]" *id.* 705:23-24 ("Income Approach"), the demand for the patented features, *see id.* 649:25-650:4, 650:20-660:10, and the "relationship between the parties," *id.* 706:23-707:6.

Using her Cost Approach, Davis calculated Samsung's expected costs of not obtaining a license for each patent (i.e., its costs of being off the market for a period of time and its costs of designing around each of the patented features). For the '381 Patent (which covers bounce-back technology), Davis calculated Samsung's estimated costs at $0.85 for smartphones and $0.98 for tablets. For the '915 Patent, Davis calculated Samsung's estimated costs at $1.30 for smartphones and $1.50 for tablets. For the '163 Patent (which covers tap-to-zoom, tap-to-center technology), Davis calculated Samsung's estimated costs at $0.85 for smartphones and $0.98 for tablets. *See* PX25F.16.

Using her Income Approach, Davis evaluated Samsung's estimated profits from obtaining a license to the technology at $0.52 to $4.03 for the '381 Patent, $0.80 to $6.20 for the '915 Patent, and $0.52 to $4.03 for the '163 Patent. *Id.* After considering the fifteen *Georgia-Pacific* factors and their relative weight, Davis settled on a reasonable royalty rate for each patent that fell a little below halfway between her estimated profit ranges. *See id.* (listing Davis's proposed final per unit royalty rate at $2.02 for the '381 patent, $3.10 for the '915 Patent, and $2.02 for the '163 Patent). The jury reasonably relied on Davis's calculations in setting its reasonable royalty award.

Other evidence supported the jury's adoption of Apple's reasonable royalty number. Apple's technical experts established evidence of demand for the patented features by testifying that Samsung's own documents indicated that Samsung had studied and decided to adopt the features of the utility patents-in-suit based on their embodiment in Apple's products. *See* 2013 Trial Tr. 422:9-19, 450:6-11 (describing PX57 at 73 and PX38 at 24). Moreover, numerous witnesses and documents supported Apple's claim that the parties' relationship was (and is) highly competitive. *See id.* 848:10-849:16 (testimony from Apple's senior vice president of worldwide marketing), *id.* 1106:11-1110:16 (Samsung's damages expert acknowledging competition), PX62 (Samsung document entitled "iPhone 5 Counter Strategy") (capitalization removed).

Samsung challenges the evidence presented at the retrial on two grounds. As set forth below, although the Court finds Samsung's challenges warrant careful evaluation in light of a number of recent Federal Circuit opinions closely scrutinizing the propriety of large reasonable royalty awards, the Court ultimately concludes that neither challenge warrants upsetting this jury's damages award.

**1. Davis's *Georgia-Pacific* Analysis**

Samsung first contends that the *Georgia-Pacific* analysis Davis used in reaching her proposed reasonable royalty rate was insufficient under *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012). In *Whitserve*, the Federal Circuit held that a defendant's motion for judgment as a matter of law against a reasonable royalty award should have been granted, in part because the patentee's expert proffered only a "superficial recitation of the *Georgia-Pacific* factors." *Id.* at 31; *see id.* ("[R]eciting each factor and making a conclusory remark about its impact

United States District Court
For the Northern District of California

on the damages calculation before moving on does no more than tell the jury what factors a damages analysis could take into consideration.").

Taken as a whole, Davis's reasonable royalty opinion overcomes the concerns raised in *Whitserve*. In her testimony related to a reasonable royalty, Davis emphasized factor 5 (the competitive relationship between the parties). *See* 2013 Trial Tr. 706:21-707:6 (Davis confirming that this factor is "particularly relevant"). She also relied on the demand for the patented features, *see id.* 650:20-659:17; *id.* 649:25-650:4 (testifying that demand is "relevant to the determination of the amount of reasonable royalties")—which is relevant to at least factor 8 (commercial success of the product made under the patent), factor 9 (utility and advantages of the patented technology), and factor 11 (infringer's use of the invention and the value of that use). Although Davis might have spent more time testifying about the quantifiable impact of the *Georgia-Pacific* factors on her final royalty rate, even *Whitserve* acknowledges that, when conducting such an analysis, "mathematical precision is not required." 694 F.3d at 31.

Although not itself admitted into evidence, Davis's expert report further supports the jury's award here. *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013) (holding that questions challenging an expert's damages model "should be resolved under the framework of the Federal Rules of Evidence and through a challenge under *Daubert*" and not "[u]nder the guise of sufficiency of the evidence."). In her expert report, Davis supported the reasonable royalty opinion she ultimately gave to the jury by describing and adopting Musika's full analysis of the *Georgia-Pacific* factors, including those factors that Davis and Musika found to be "neutral," as well as the factors Davis emphasized at trial. *See* Dkt. 2517-4 ("Davis Rep.") ¶¶ 198-251, Exhibits 42, 43, 46-S, 47-S. Indeed, Samsung never challenged the admissibility of Apple's experts' reasonable royalty opinions prior to trial on the basis that they failed to analyze the *Georgia-Pacific* factors sufficiently. *See* Dkt. 927-1 at 4-7 (Samsung *Daubert* motion); 1157 at 11-13 (*Daubert* Order). In light of Davis's trial testimony and the support in her expert report, the Court concludes that Davis's reasonable royalty opinion satisfies the *Whitserve* requirement that

**United States District Court**
For the Northern District of California

experts using the *Georgia-Pacific* factors "should concentrate on *fully* analyzing the *applicable* factors" rather than "cursorily reciting all fifteen." 694 F.3d at 31 (emphases in original).[7]

**2. Apportionment Between Patented and Unpatented Features**

The second ground on which Samsung challenges the reasonable royalty award is Apple's alleged failure to "'give evidence tending to separate or apportion the defendants' profits and the patentee's damages between the patented feature and the unpatented features.'" Samsung JMOL at 26 (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011)). The Court, however, agrees with Apple that Davis sufficiently accounted for the patented and unpatented features in proposing a royalty rate to the jury. In particular, in selecting a rate from the range of possible rates derived from her Income Approach, Davis explicitly stated in her expert report that she adopted Musika's "apportioning [of] [Samsung's] profit for an allowed return on existing tangible and intangible assets consistent with a desired return by investors in the industry, a return for all other intellectual property licensed in, and a return for all other companywide based intellectual property." Davis Rep. Exhibits 46-S, 47-S. As this Court similarly stated in response to Samsung's *Daubert* challenge prior to the first trial, "while Samsung may disagree with [Ms. Davis's] apportionment . . ., [her] basic income approach methodology is sound and is not subject to exclusion under FRE 702 and *Daubert*." *Daubert* Order at 12; *see Versata*, 717 F.3d at 1264. Moreover, Davis's testimony that she used as a check on her proposed royalty rate "the costs to Samsung of being out [of] the market long enough to design around *the patents in this case*," 2013 Trial Tr. 705:19-20 (emphasis added), provided yet another indication that she adequately measured the value of the patented features, rather than the unpatented features, in calculating a reasonable royalty.

[7] *Whitserve* is distinguishable for yet another reason. The expert in *Whitserve* calculated a reasonable royalty rate by starting from a "now discarded rule of thumb that assumes the patentee would get about 25% of the infringer's expected profit" and relying on the *Georgia-Pacific* factors to increase that rate to one that appeared to be up to 86.75% of the infringer's profit. *Id.* at 31-33. In other words, the expert in *Whitserve* used a "bare-bones *Georgia-Pacific* analysis" to approximately triple his starting royalty rate. *Id.* at 33. Davis did not similarly inflate her starting rate using the *Georgia-Pacific* factors. Instead, the record makes clear that Davis picked a rate below the midpoint of the estimated profitability ranges of the relevant products in light of the design-around costs to Samsung and the *Georgia-Pacific* factors. *See* PX25F.16.

United States District Court
For the Northern District of California

This is not a case like *Uniloc*, where the patentee relied on the entire market value rule (i.e., assessing damages based on a percentage of the entire market value of the accused product) without a showing that "'the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.'" 632 F.3d at 1318 (quoting *Garreston v. Clark*, 111 U.S. 120, 121 (1884)). Here, Davis did not purport to rely on the entire market value rule, nor has Samsung accused her of doing so. Davis's determination of a royalty rate based on an apportionment of the results of her Income Approach as well as the cost to Samsung of proceeding without a license to the patented technology (as opposed to a royalty rate that equals a percentage of Samsung's overall revenue for sales of the infringing product) gave the jury sufficient evidence to account for the unpatented features of the infringing phones.

For the foregoing reasons, Samsung's request for judgment as a matter of law as to the jury's reasonable royalty award is DENIED.

**C. The Jury's Award of Infringer's Profits**

The remainder of the jury award ($142,054,256)—the portion not attributable to lost profits or reasonable royalties—is based on Samsung's profits for its infringement of the D'305 and D'677 Patents. Section 289 of Title 35 authorizes damages for design patent infringement of the amount of the infringer's "total profit" for each infringing sale. At trial, the parties agreed on Samsung's gross revenues from infringing sales ($854 million) and essentially agreed on the deductible costs of goods related to those sales ($623 million). *See* 2013 Trial Tr. 692:1-11; 692:25-693:8; 1014:21-1015:4; PDX100.17. The parties centrally disputed the amount of operating expenses to be deducted from Samsung's gross revenues. Davis testified that none of Samsung's claimed operating expenses was directly attributable to the infringing products and therefore Apple's infringer's profits award should be Samsung's gross revenues less its costs of goods, or approximately $231 million. *See* 2013 Trial Tr. 702:24-703:3. Samsung's damages expert, Michael Wagner, testified that all Samsung's operating expenses—including Samsung's overall logistical, advertising, temporary staffing, insurance, depreciation, travel, research and development, and general and administrative expenses, *see* 2013 Trial Tr. 961:4-964:10; SDX3960.002, SDX7001.005—should be allocated to each infringing phone and also deducted from Samsung's

gross revenues, *see id.* 1015:5-16; DX676. After deducting operating expenses, Mr. Wagner proposed a total infringer's profits award of approximately $53 million. *See* DX781.002.

The jury's award of infringer's profits falls exactly halfway between each side's proposed award. Samsung notes that this award of infringer's profits can also be viewed as 61.3960645% of Davis's proposed infringer's profits award. Samsung JMOL at 3.

**1. Samsung's Motion for Judgment as a Matter of Law**

Samsung's motion for judgment as a matter of law as to the jury's infringer's profits award is based on two distinct challenges: (a) the jury entered an improper compromise verdict, and (b) the jury improperly double counted infringing sales by awarding two types of damages for certain infringing sales. The Court addresses both challenges in turn.

**a. Compromise Verdict**

Samsung first contends that the jury's infringer's profit award is an improper compromise verdict. *See* Samsung JMOL at 28-29. This challenge is easily dismissed. A compromise verdict "'is one reached when the jury, *unable to agree on liability*, compromises that disagreement and enters a low award of damages.'" *Romberg v. Nichols*, 970 F.2d 512, 521 (9th Cir. 1992) (quoting *Nat'l R.R. Passenger Corp. v. Koch Indus.*, 701 F.2d 108, 110 (10th Cir. 1983)) (emphasis added), *vacated on other grounds*, *Nichols v. Romberg*, 506 U.S. 1075 (1993). Here, liability was not at issue because the first jury had already found that Samsung infringed Apple's valid patents. "Proof of damages is governed by a less strict standard than proof of liability." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1373 (9th Cir. 1987). The Court agrees with Apple that the jury in the damages retrial "was entitled to choose a damages award within the amounts advocated by the opposing parties." *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1347 (Fed. Cir. 2011).

**b. Double Counting**

Samsung's second challenge warrants a more extensive analysis. Samsung attacks the jury's infringer's profits award on the ground that the verdict is the result of improper double counting. More specifically, Samsung contends that the jury improperly awarded both lost profits and infringer's profits for the same infringing sales. The jury was instructed that it could not award lost profits or reasonable royalties on any sales for which it also awarded infringer's profits. *See*

United States District Court
For the Northern District of California

Dkt. 2784 at 42 (Final Jury Instruction No. 34). Samsung contends that the jury disobeyed this instruction by averaging the parties' overall proposed infringer's profits awards even though Davis and Wagner disagreed as to the number of infringing sales to be used to calculate the infringer's profit award. Samsung JMOL at 30. Because Wagner's infringer's profits calculation captured some phones that Davis included in her lost profits calculation, Samsung contends the jury's averaging of the two proposals impermissibly awarded two forms of damages for the same infringing sale.

An example will help clarify the purported problem. The controversy here stems from the jury's damages award for the Infuse 4G ($99,943,987), which infringes both the '915 Patent and the D'677 Patent. Davis used a two-step process to calculate damages for the Infuse 4G. First, Davis opined, and the jury indisputably accepted, that Apple was entitled to $43,968,916 in lost profits for Infuse 4G sales that would have gone to Apple but for the infringement. *See* PX25G1.2. Second, with respect to all other sales of the Infuse 4G—i.e., sales that Samsung would have kept (for example because of a customer's loyalty to Samsung), sales that would have gone to a third-party, or sales that occurred after the design-around period—Davis opined that Apple was entitled to $91,165,035 in infringer's profits. *See* PX25G1.4. In contrast, Wagner did not believe Apple was entitled to any lost profits, and therefore he attributed *all* the Infuse 4G sales to his proposed infringer's profits award of $42,942,776. *See, e.g.*, 2013 Trial Tr. 994:20-995:1; DX781.002. Samsung contends that the jury necessarily and improperly awarded Apple lost profits and infringer's profits damages on some of the same Infuse 4G sales by adopting Davis's lost profits number, which captures some of the infringing Infuse 4G sales, and by also relying on Wagner's infringer's profits award, which captures all the infringing Infuse 4G sales including those that were part of Davis's lost profits calculation.

The Court finds that if Samsung is correct that the jury averaged both sides' proposed infringer's profits award, then Samsung is also correct that the jury improperly double counted. For the following reasons, however, Samsung's attempt to deconstruct the jury's infringer's profits award goes too far.

As an initial matter, the standard for evaluating a jury's damages verdict is generally lenient. The Court "must uphold the jury's finding of the amount of damages unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). It will be a "rare case in which it is sufficiently certain that the jury['s damages] award was not based on proper consideration of the evidence" and therefore cannot stand. *In re First Alliance Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006).

The proceedings here do not suggest that this is such a case. In the two cases on which Samsung relies to contend that the Court should reverse engineer the jury's infringer's profits award, the Court of Appeals was concerned with whether the jury had relied on an *expert's* "incorrect damages calculation." *Id.* at 1002; *see Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338 (Fed. Cir. 2009) ("What *Lucent's licensing expert proposed* here does not comport with the purpose of damages law or the entire market value rule.") (Emphasis added). Similarly, when this Court closely examined the jury verdict from the first trial, the Court did so out of concern that "the jury's awards for patent infringement . . . [were] based on *Mr. Musika's numbers*," which used "[erroneous] early notice dates." Retrial Order at 18 (emphasis added). Here, in contrast, Samsung maintains that its expert's damages analysis was proper, but that the jury nonetheless acted improperly because it relied on only part of his conclusions. In other words, Samsung asks the Court to conclude that the jury ignored the Court's instructions and reached an improper damages verdict all on its own, even though the Court has no reason to believe the jury was led even partially astray by improper expert testimony. In these circumstances, precedent does not require the Court to deconstruct the jury's award in search of error.

In any event, the Court does not agree with Samsung that the jury's error here is a "mathematical certainty." Samsung Reply at 2 n.1. Unlike the breakdown of the overall award between lost profits, reasonable royalties, and infringer's profit, Samsung fails to justify its contention that the jury *must have* settled on an infringer's profits amount by averaging the two experts' overall infringer's profits proposals. Even Wagner's declaration in support of Samsung's motion for judgment as a matter of law does not say the jury necessarily reached its conclusion in

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

the way Samsung suggests; instead, Wagner merely concludes that "[t]he percentage applied by the jury [to each product that infringed a design patent], 61.3980645%, *can be calculated* by averaging the Samsung profits numbers presented by Ms. Davis . . . and myself." Dkt. 2979 ¶ 14 (emphasis added).

Just as likely, the jury could have halved the overall operating expenses deducted by Wagner ($178,638,595) and deducted that halved amount ($89,319,298) from Davis's proposed infringer's profit award ($231,373,554). Following that logic, the jury would have arrived at the same number for an overall infringer's profits award ($142,054,256) and the same percentage reduction of Davis's proposed infringer's profit award (61.3980645%). Under this scenario, however, the jury would have relied solely on Davis's proposed infringer's profit award as a starting point—which indisputably did not include the lost profits units—and used only Wagner's overall operating expenses figure to reduce that amount. Thus, the jury would not have used Wagner's ultimate infringer's profit figure. In this way, the jury's award could still be a permissible choice "within the amounts advocated by the opposing parties," *Spectralytics*, 649 F.3d at 1347, without double counting any lost profits sales. Samsung does not explore, much less rebut, this or any other possible explanation for the jury's award. Because "juries are presumed to follow their instructions," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and because the Court is able to construe the evidence here in a way that is consistent with the jury's verdict, *see Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 189 (9th Cir. 1989), the Court concludes the jury reached its verdict without double counting.

Accordingly, Samsung's motion for judgment as a matter of law as to the jury's infringer's profits award is therefore DENIED.[8]

---

[8] Samsung also challenges the jury's infringer's profits award on the ground that Samsung's profit was not attributable to its infringement of Apple's design patents. Samsung JMOL at 30. Samsung acknowledges, however, that the Court has already rejected this argument as "clearly foreclosed by Federal Circuit precedent." Retrial Order at 12 (citing *Nike Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1442-43 (Fed. Cir. 1998)); *see Nike Inc.*, 138 F.3d at 1441 ("'It is expedient that the infringer's entire profit on the article should be recoverable,' for 'it is not apportionable' . . . .") (quoting H.R. Rep. No. 1966 at 1 (1886), *reprinted in* 18 Cong. Rec. 834 (1887)). Samsung provides no basis for the Court to reconsider that conclusion now, and the Court declines to do so.

United States District Court
For the Northern District of California

### 2. Apple's Motion for Judgment as a Matter of Law

Apple also moves for judgment as a matter of law on the award of infringer's profits, contending that "[t]he only reasonable conclusion that the jury could have reached . . . was that Apple is entitled to the full amount of Samsung's profits." Apple JMOL at 2. Apple made a similar request for additur after the first trial. The Court rejects Apple's request now just as it did then. *See* Retrial Order at 2. The Seventh Amendment prohibits a judicial increase in a damages award made by a jury. *See Dimick v. Schiedt*, 293 U.S. 474, 486-87 (1935). The jury heard the parties' competing evidence and argument as to how much of Samsung's operating expenses the jury should deduct from Samsung's infringement revenues. The reasonableness of Samsung's proffered overhead allocation formula—based on a three-step methodology that Samsung Telecommunications America's Vice-President of Finance and Operations testified the company used in the ordinary course of business, *see* 2013 Trial Tr. 964:18-965:22, 967:14-17—was a dispute for the jury to resolve. *See Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*, 311 B.R. 378, 401 (S.D.N.Y. 2004), *aff'd*, 153 F. App'x 703 (Fed. Cir. 2005) ("'The reasonableness of the proffered overhead allocation formula is a question of fact in all cases.'") (quoting *Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92, 105 (2d Cir. 1999)). The jury partially credited both sides' positions and reached a reasonable decision. The Court will not disturb the verdict. Apple's request for judgment as a matter of law is therefore DENIED.

## IV. SAMSUNG'S NEW TRIAL MOTIONS

Samsung alleges two bases on which the Court should grant it a new trial. Both bases allege that Apple made improper and prejudicial arguments at trial. The Court is not convinced by either.

### A. Apple's References to Samsung's Revenues From Infringing Sales

First, Samsung argues that Apple improperly referenced Samsung's total infringing revenues 15 times during trial. *See* Samsung Reply at 21. Samsung, however, made no contemporaneous objection to any of these references. At no time during trial did Samsung raise with the Court the concern it raises now: that Apple was improperly presenting an irrelevant revenue number in order to make Apple's requested damages seem relatively insignificant. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) ("[A]llowing a party to wait to

United States District Court
For the Northern District of California

raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error.").

Although Samsung successfully raised a pre-trial objection to certain slides that Apple planned to use during Davis's infringer's profits testimony, Samsung's two-and-a-half line pre-trial objection was sustained and was limited to those particular slides. *See* Dkt. 2700 at 2 (objecting to PDX100.7, PDX100.30, PDX100.31, and PDX100.34); *see also* Dkt. 2721 (sustaining objections). Pointing to the Court's pre-trial ruling sustaining that objection and citing Fed. R. Evid. 103(b), Samsung contends that it did not need to renew its objection during trial. Samsung Reply at 23; *see* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). But Rule 103(b) applies to preserving claims of error as to an adverse ruling, not claims of error that relate to a ruling in a party's favor. *See* Fed. R. Evid. 103(a) (setting out rules for preserving a "claim [of] error *in a ruling* to admit or exclude evidence") (emphasis added). Samsung never alerted the Court to concerns that Apple's use of Samsung's total revenue number at different stages "deliberately ignored the Court's instruction" regarding Davis's infringer's profits testimony; improperly "belittled the calculations of Samsung's damages expert;" or "flaunted Samsung's total revenues in order to mislead the jury into thinking that its [overall] damages calculations were somehow 'conservative.'" Samsung JMOL at 36-37. Indeed, even after Apple's case in chief, Samsung argued merely that it was entitled to judgment as a matter of law that Apple presented no evidence to support an award of damages greater than $379 million, 2013 Trial Tr. at 923:17-21, not that Apple's references to Samsung's revenues were unfairly prejudicial, should have been excluded, or warranted a curative instruction.[9]

Without having alerted the Court to Apple's alleged misconduct during trial, Samsung cannot now establish that it is entitled to a new trial absent a showing of "plain or fundamental

---

9 Apple also used Samsung's revenue during the first trial, without objection from Samsung. *See* 2012 Trial Tr. at 4123:6-10 (Apple's counsel during closing argument: "Samsung's infringing sales have generated $8.160 billion in revenue for Samsung. The damages in this case should be large because the infringement has been massive.").

error." *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 517 (9th Cir. 2004); *see Hemmings*, 285 F.3d at 1193 ("Plain error is a rare species in civil litigation, encompassing only those errors that reach the pinnacle of fault . . . .") (internal quotation marks and citation omitted). Samsung has not made this showing. As Samsung implicitly acknowledges, a portion of Samsung's revenue number was relevant for calculating the award of Samsung's profits. *See* Samsung Reply at 21-22 (noting that only half of the sales that were the subject of the damages retrial were ineligible for infringer's profits) (emphasis added). The Court instructed the jury to determine Samsung's profit "by deducting certain expenses from gross revenue," defined as "all of the infringer's receipts from the sale of articles using any design found infringed." Dkt. 2784 at 39 (Final Jury Instruction No. 31). The jury is presumed to have followed this instruction. *See Richardson*, 481 U.S. at 211.

Moreover, the jury's infringer's profits award—which was in between the two parties' proposals—indicates that the jury followed the Court's instruction on gross revenues. During the damages retrial, both parties' experts agreed on the proper measure of gross revenues in proposing their damages totals. *See, e.g.*, 2013 Trial Tr. at 692 (Davis testimony that she and Wagner agreed on infringer's profits revenues); 1034:5-8 (Wagner testifying that the total revenues number was not "a relevant calculation" and that "[w]e should begin focusing on that smaller number of these phones that are sold that are infringing only the design patent"). Moreover, as discussed above, the jury rendered a verdict supported by substantial evidence. In such a situation, a finding of plain error is inappropriate. *See Settlegoode*, 371 F.3d at 520 (holding that a district court abused its discretion by finding plain error in part because "there was more than sufficient evidence for the jury to find in [plaintiff's] favor"); *Hemmings*, 285 F.3d at 1195 (finding no plain error where "[i]n the absence of counsel's improper statements, we cannot say that we think a different verdict was likely"). Samsung has not explained why a different result is warranted here. Indeed, Samsung has not addressed the plain error standard at all.

For the foregoing reasons, on this record, Samsung cannot establish that allowing the jury to hear Apple's references to Samsung's revenues on all infringing sales amounted to plain error.

**United States District Court**
For the Northern District of California

19

Case No.: 11-CV-01846-LHK
ORDER DENYING POST-TRIAL MOTIONS A134

United States District Court
For the Northern District of California

**B. Apple's Appeal to Prejudice**

Last, Samsung contends that a new trial is warranted under Rule 59 on the basis that Apple appealed to racial, ethnic, and national origin prejudice throughout its case. Samsung relies primarily on Apple counsel's closing argument, which Samsung contends was an inappropriate, prejudicial appeal. For the reasons stated below, the Court finds that while the comments were troubling, a new trial is not warranted under the applicable standard.

Samsung principally relies on the following portion of Apple's closing argument:

> We are extremely fortunate to live in what I'll call the Greater Bay Area. Not only is it beautiful, but we live in the center of one of the most vibrant economies in the world. Intel, Yahoo, Oracle, Facebook, eBay, and hundreds and hundreds of other companies, including Google, and including Apple, and these companies attract talented employees at every level. Even, we heard, Samsung has opened a research center here so that they can take advantage of the talent in this area.
>
> The companies provide jobs. They create technology that improves the way people work. And the company -- and this economy supports an education system that is second to none in the world, Berkeley, Stanford, San Jose State, U.S. [sic] Santa Cruz, even Santa Clara where I went to school.
>
> These educational institutions interact with this economy, interact with these companies and create a place that the whole world knows as Silicon Valley.
>
> But let's be equally clear about one thing. Our vibrant economy absolutely depends on fair competition. It depends on a patent system that encourages inventors to invent, it encourages investors to invest, and it encourages employers to hire.
>
> If we allow that system of law to decay, investors will not invest, people will not take risks, and our economy will disappear.
>
> When I was young, I used to watch television on televisions that were manufactured in the United States. Magnavox, Motorola, RCA. These were real companies. They were well known and they were famous. They were creators. They were inventors. They were like the Apple and Google today.
>
> But they didn't protect their intellectual property. They couldn't protect their ideas. And you all know the result. There are no American television manufacturers today.

2013 Trial Tr. at 1396:14-1397:20. Samsung's counsel immediately objected, stating "[t]his is improper argument, outside the scope, and limited elements that one should not appeal to in a court of law." *Id.* at 1397:21-23. Apple's counsel stated that "I don't think that's right, your honor. This

is an argument about the policy of these laws." *Id.* at 1397:24-25. The Court asked Apple's counsel if he could move on, to which Apple's counsel indicated, "I can," *id.* at 1398:1-2, and did so.

After the jury left the courtroom and entered the deliberation room for deliberations, Samsung's counsel moved for a mistrial. The Court denied the motion without prejudice to renewal in the instant post-trial motions. *Id.* at 1407:8-11. Further, the Court offered Samsung various potential remedies. The Court asked Samsung's counsel if he would like a rebuttal to the arguments in Apple's closing that Samsung's counsel found problematic. *Id.* at 1408:11-13. The Court also offered to bring the jury back into the courtroom to hear the Court's reiteration of the Court's earlier instruction that jurors should not be motivated by sympathies or prejudice. *Id.* at 1414:4-10. Samsung's counsel stated that while he did not believe that this would cure the problem, it would be appropriate. *Id.* at 1414:15-16.

At this point, the Court, over Apple's contention that any curative instruction was unnecessary, brought the jury back to the courtroom. Only twenty-three minutes had elapsed since the jury entered the deliberation room, and the jury gave the Court a note as it reentered the courtroom. *Id.* at 1415:16-18. The note informed the Court that the jury had selected a foreperson and that the jurors needed certain office supplies for their deliberations, including paper, highlighters, and tape. *Id.* at 1415:25-1416:3. After handling the jury note for office supplies, the Court instructed the jurors as follows:

> Now, as I said when I read you final jury instruction number 1, you must follow all of my instructions and not single out some and ignore others. They're all important. I do want to just remind you of jury instruction number 1, which does state that you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy, and any appeal by any of the parties to any prejudice or sympathy is not proper. So with that instruction, I'm going to excuse you back to the jury room to begin deliberations.

*Id.* at 1416:10-19. As the Court's admonishment suggests, this was not the first time the Court had instructed the jury regarding setting aside prejudices. The Court's very first preliminary jury instruction, distributed and read to jurors before opening statements, stated that "you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." *Id*. at 321:10-11. Moreover, the Court provided a similar instruction as the first instruction of the final jury instructions, which were distributed and read to jurors prior to closing arguments: "You must not

**United States District Court**
For the Northern District of California

be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means you must decide the case solely on the evidence before you. You will recall that you took an oath to do so." *Id.* at 1236:25-1237:4. Importantly, each juror had a printed copy of the preliminary jury instructions throughout the entire trial and deliberations and a printed copy of the final jury instructions during closing arguments and deliberations.

The Court begins its analysis by noting that while attorneys have an obligation to serve as fierce advocates for their clients, this obligation must be tempered by attorneys' obligation to ensure that the judicial system is fundamentally fair. Fairness of our system requires that all parties, regardless of race, ethnicity, or national origin, not only receive a trial free from prejudice, but also perceive that they will receive such a trial. This fairness is undermined when counsel either explicitly or implicitly invokes the prejudice of jurors rather than relying on the applicable law and the proven facts. *See LeBlanc v. Am. Honda Motor Co., Inc.*, 688 A.2d 556, 560 (N.H. 1997) ("This sort of argument, which may be indirect or implied, as well as direct or express, is nonetheless an affront to the court.") (internal quotation marks and citation omitted).

Here, the Court finds the implications of Apple counsel's statements in closing argument troubling. The transcript does not capture the full context of counsel's closing argument. *See Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1371 (Fed. Cir. 2013) (noting that a district court's "on-the-scene assessment of the prejudicial effect, if any, carries considerable weight") (internal quotation marks omitted). Counsel's argument clearly suggested an us-versus-them, American-versus-non-American theme to the jury, which could have evoked national origin prejudice. This effect is minimized by the cold transcript, which elides counsel's strategic and effective pauses, timed in a way that created silence for listeners to connect the dots and make troubling inferences. The transcript further does not capture the broader context of the courtroom and the trial, during which the immediate rows behind the attorneys were filled with client representatives with obvious differences in terms of racial and ethnic backgrounds. Therefore, an American-versus-non-American theme, which might not be troubling in every case given Americans and non-Americans are of diverse backgrounds, in the context of this trial also could have been perceived as invoking racial or ethnic prejudice.

United States District Court
For the Northern District of California

Moreover, the impact of statements that call into question the actual and perceived fairness of our judicial system to all parties must be considered in the broader context regarding whether all juries in the United States can fairly adjudicate patent disputes between American companies and foreign companies. Judge Moore's empirical work before joining the U.S. Court of Appeals for the Federal Circuit cites statistical support for a perception of potential jury bias. *See* Kimberly A. Moore, *Xenophobia in American Courts*, 97 Nw. L. Rev. 1497 (2003). Judge Moore's study found that "foreign patent holder win rates in jury trials against domestic infringers (38%) are significantly lower than domestic patent holder win rates against foreign infringers (82%). In contrast, in cases decided by judges, the patentee win rate is almost identical, with domestic patentees winning 35% of the time against foreign infringers, and foreign patentees winning 31% of the time against domestic infringers." *Id.* at 1509-10. Moreover, Judge Moore found that while foreign inventors acquire 45% of patent rights annually, they seek to enforce their patent rights in only 13% of litigated cases, notwithstanding the fact that litigated foreign patents are, according to Judge Moore, likely to be stronger than their domestic counterparts. *Id.* at 1504-05, 1535-36. As Judge Moore states, "[t]he disparity is important in part because it may reflect foreigners' cynicism about their prospects of enforcing patents in U.S. courts." *Id.* at 1504. Judge Moore concluded that "[t]he perceptions, and verifiable accuracy of the perceptions, of xenophobic bias in the U.S. patent litigation process likely have substantial impact on international trade and foreign relations and undermine confidence in the U.S. legal process for foreign and domestic parties alike." *Id.* at 1550.

Particularly in light of this empirical context and the high-profile nature of this litigation, the Court expresses its disapproval and disappointment in the comments that led to the instant motion. Counsel in this case have been exceptionally well prepared, and the Court has no doubt that counsel carefully chose each theme before presenting it to the jury in closing arguments. As the Court expressed after counsel's statement, the Court is particularly troubled by the clear implication of the closing argument that Samsung's foreignness was at issue in this case. 2013 Trial Tr. at 1414:5-6 ("To say American versus non-American company clearly implies foreign.").

Nonetheless, despite the troubling nature of counsel's closing argument, the Court notes that the level of misconduct here does not warrant a mistrial under the Ninth Circuit's standard. *See*

United States District Court
For the Northern District of California

*Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (noting that the Ninth Circuit has "no trouble concluding that [counsel's] remarks were improper" though the comments do not warrant a mistrial). Under Ninth Circuit case law, granting a motion for new trial on the grounds of attorney misconduct is only appropriate where the "flavor of misconduct . . . sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Id.* (internal quotation marks omitted). The Court must consider whether any allegedly offending remarks were isolated or persistent, whether opposing counsel timely objected or moved for a mistrial, and whether the jury's award was excessive. *Id.* As part of this inquiry, the Court must consider when the potentially problematic comments occurred and what proportion of the trial was infected by such comments. *United States v. Rhodes*, 713 F.2d 463, 469 (9th Cir. 1983). The Federal Circuit has suggested that courts should also consider whether counsel persists in making problematic statements even after being admonished by the court to refrain from so doing. *Commil*, 720 F.3d at 1370. Ultimately, "[a] new trial is warranted only if counsel's misconduct affected the verdict." *Mateyko v. Felix*, 924 F.2d 824, 828 (9th Cir. 1990).

In this case, the Court finds that Apple counsel's statements at closing argument, while potentially evoking prejudice, do not meet the standard for two reasons. First, misconduct did not permeate the proceedings. Rather, the problematic comments were confined to a few seconds of the closing argument, which quickly came to an end upon Samsung's objection and this Court's admonishment to Apple's counsel to move on. *Settlegoode*, 371 F.3d at 518 ("[W]here offending remarks occurred principally during opening statement and closing argument, rather than throughout the course of the trial, we are less inclined to find the statements pervaded the trial and thus prejudiced the jury.") (internal quotation marks omitted); *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991) (holding isolated comments in closing argument is insufficient to warrant mistrial).

Samsung contends that at other parts of the trial, Apple evoked racial or national origin prejudice (1) by using the phrase "Samsung Korea" and asking questions regarding whether certain actions were undertaken by Samsung's Korean executives, and (2) by pointing to the fact that

United States District Court
For the Northern District of California

certain Samsung engineers did not speak English. Samsung JMOL at 38-39. The Court disagrees. As a threshold matter, Samsung did not contemporaneously object to any of the references about which it now complains, and Samsung's counsel conceded at the hearing on the instant motion that these questions and comments were not problematic at the time they were asked or made. Transcript of January 30, 2014 Hearing, Dkt. 2945, at 86:15-87:17.

With respect to the first set of questions and comments to which Samsung points, the Court finds that these references were made to explain Samsung's corporate structure and the interplay between various executives. For example, Samsung now contends that the following comment in opening statement by Apple counsel was troublesome:

> You will have Plaintiff's Exhibit 60 to look at. This is a document, the title of it is "STA Competitive Situation Paradigm Shift." I can't translate all of that for you because I don't know what all of it means, but the STA is Samsung Telecommunications of America. It's one of the American subsidiaries of the Korean Samsung Communications Company.

2013 Trial Tr. 348:13-18. The Court finds that these questions and comments did not evoke racial or national origin prejudice. Instead, they aided the jury in understanding the relationship between the various Samsung entities who were Defendants in the litigation and to explain various documents. *See also id.* at 1166:17-1167:4 (asking questions regarding corporate structure to explain the relationships between various Samsung executives discussed in an email exhibit). Importantly, Samsung itself recognized the importance of its corporate structure. On direct, Tim Sheppard, a Samsung executive, testified as follows:

> Q. Where is STA [Samsung Telecommunications America] located?
> A. Its headquarters is in Dallas. It's in Dallas
> Q. And where is the rest of Samsung located?
> A. Samsung is a multinational company. There's operations in many countries, but the headquarters is in Korea.

*Id.* at 953:24-954:3. Samsung strains credulity when it claims that these factual questions and comments about Samsung's corporate structure evoke racial or national origin prejudice.

With respect to the second set of questions and comments to which Samsung points, the Court notes that the line of questioning was directed toward impeaching Samsung's damages expert. Samsung extensively relied on Wagner's conversations with Samsung engineers to contend that Samsung could design around the patents in suit. Accordingly, Apple challenged the reliability

United States District Court
For the Northern District of California

of the information that Wagner received from the engineers by noting the various challenges in the communications between the engineers and Wagner:

> Q. But the design around periods were not something you came up with on yourself, by yourself; correct?
> A. No, I did not.
> Q. So let's make sure that the jury understands how you came up with them. The design around periods were provided to you in telephone calls with Korean engineers of Samsung; correct?
> A. That is correct.
> Q. You don't speak Korean; correct?
> A. I don't.
> Q. They don't speak English; correct?
> A. I think some of them had halting English, but there was a person there from Samsung who translated for them.
> Q. Right. And the person doing the translation was a lawyer who was a Samsung employee who was sitting with the Samsung employee in Korea doing the translation; correct?
> A. That's accurate.
> Q. And you got your design around periods from the translation done by the Samsung lawyers; correct?
> A. Yes.
> Q. And it's true, is it not, that you did nothing on your own to verify whether those design around times were accurate or not?
> A. That's correct. I wouldn't have any experience if I tried to do it to give any value in this courtroom.
> Q. Right. So if there is -- do you know -- do you know whether any of those Samsung engineers are going to testify here and tell the jury what the basis is of those design around periods?
> A. I don't believe so.

*Id.* at 1090:15-1091:18. Here too, Samsung overreaches by claiming that these questions evince or evoke racial or national origin prejudice. Apple's references to Korea and translation were designed to show the following multiple bases for the unreliability of Wagner's testimony on a critical point: (1) Wagner's conversations with Samsung engineers were by international telephone calls and not face-to-face; (2) Wagner could not directly communicate with Samsung engineers and thus could not directly evaluate the Samsung engineers' statements; and (3) most importantly, that the use of an interested party, a Samsung lawyer, as the translator between Wagner and the Samsung engineer rendered Wagner's testimony regarding the design arounds potentially unreliable. Prejudice was not the basis for or effect of this line of questioning. *See also id.* at 1322:19-22 ("Now, Mr. Wagner admitted that his entire theory was dependent upon telephone conversations with Samsung folks in Korea. They didn't speak English, he didn't speak Korean. *There were Samsung lawyers sitting next to them translating.*") (emphasis added). Accordingly, the

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Court finds that the comments to which Samsung points are not rooted in prejudice, and that therefore, attorney misconduct did not "permeate" the proceedings.

Second, there is no evidence that the jury was influenced by Apple's problematic comments during closing argument. To the contrary, here the Court instructed the jury not to be influenced by any prejudices or sympathies multiple times, including once shortly after the problematic statements. "[T]he law presumes that jurors carefully follow the instructions given to them." *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1023 (9th Cir. 2000). This is a "crucial assumption underlying [the] system." *Parker v. Randolph*, 442 U.S. 62, 73 (1979). In cases in which parties have moved for new trials on the basis of attorney misconduct, courts have routinely held that a curative instruction is a factor weighing strongly against granting a new trial. *See Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1025 (Fed. Cir. 2009); *Mateyko*, 924 F.2d at 828. Moreover, here the presumption that the jury was not animated by prejudice is particularly strong in light of the fact that the jury came back twenty-three minutes after the start of deliberations with a note asking for office supplies to aid their deliberations. This suggests that the jury was focused on the task at hand—calculating damages—and was not fixated on any potentially improper argument made by counsel in closing. The jury's verdict further shows that the jury was appropriately focused on the evidence and the relevant law. As discussed above, the jury verdict was not excessive. This is probative evidence that the jury was not unduly affected by prejudicial comments. *See Kehr*, 736 F.2d at 1286 (holding the fact that "the jury's award of damages in this case was not excessive" cut against awarding a new trial on the basis of attorney misconduct).

The authority Samsung cites in support of a new trial is distinguishable. For example, unlike *Commil USA*, 720 F.3d at 1370-71, where the Federal Circuit affirmed a grant of a mistrial when counsel invoked religious prejudice in closing argument and on cross-examination, including after the district court had given a curative instruction, here, counsel's problematic statements were much more confined and did not occur after the Court's curative instruction. Moreover, the holding in *Commil USA* stemmed from deference to the district court's findings. *Id.* at 1370, 1375 (O'Malley, J. concurring in part and dissenting in part) ("I agree with the majority that it is

appropriate to defer to the trial court's first-hand assessment of whether counsel's conduct was sufficiently improper as to call into question the integrity of the jury's verdict.”).

*Caudle v. Dist. of Columbia*, 707 F.3d 354 (D.C. Cir. 2013), is also distinguishable, because in that case, where the D.C. Circuit reversed a denial of a mistrial, counsel made four improper arguments, including making an impermissible “argument after the district court had sustained *three* objections.” *Id.* at 361 (emphasis in original). Unlike *Caudle*, in the instant case, after the Court asked Apple’s counsel to move on from the troubling line of argument, counsel did so, and did not thereafter make any problematic comments.

Moreover, unlike *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1151 (9th Cir. 2001) (emphasis added), where the Ninth Circuit refused to recognize a tribal court judgment because “closing argument [in the tribal court case] was *replete* with appeals to bias,” the problematic statement in the instant case was isolated, not pervasive. *See also City of Cleveland v. Peter Kiewit Sons’ Co.*, 624 F.3d 749, 755 (6th Cir. 1980) (reversing for a new trial where counsel “almost continuously sought to plant the seed in the minds of the jurors that [the defendant] was a very large corporation with international operations,” including in opening statement, examination of multiple witnesses, and closing argument).

Finally, *LeBlanc*, 688 A.2d at 560, in which the New Hampshire Supreme Court, applying New Hampshire law, reversed a denial of a mistrial, is also distinguishable. In *LeBlanc*, counsel asked troubling questions during examination of witnesses regarding Honda’s status as a Japanese company and followed up with a closing argument that evoked Pearl Harbor and inspired xenophobia. *Id.* at 581-82. Despite the fact that counsel objected to both the questioning and the closing argument, the trial “court did not strike the remarks or issue a curative instruction to the jury.” *Id.* at 582. Unlike *LeBlanc*, here, the only objection was to closing argument and a prompt curative instruction was given to the jury.

In sum, the Court finds that Apple counsel’s comments do not warrant a mistrial. Nonetheless, the Court finds this situation troubling. Next month, these parties and these counsel are set to go to trial for a third time. Counsel are encouraged to be mindful of the important role

**United States District Court**
For the Northern District of California

28

Case No.: 11-CV-01846-LHK
ORDER DENYING POST-TRIAL MOTIONS A143

that lawyers play in the actual and perceived fairness of our legal system as they prepare for and litigate the next round of this patent dispute.

**V. CONCLUSION**

For the foregoing reasons, the Court DENIES the parties' post-trial motions.

**IT IS SO ORDERED.**

Dated: February 7, 2014

Lucy H. Koh

LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

**PROOF OF SERVICE**

The undersigned hereby certifies that on May 23, 2014, I electronically filed the foregoing OPENING BRIEF OF DEFENDANTS-APPELLANTS with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Kathleen M. Sullivan
Kathleen M. Sullivan

Case: 14-1335 Document: 33 Page: 250 Filed: 05/23/2014

**CERTIFICATE OF COMPLIANCE**

Counsel for Defendants-Appellants hereby certifies that:

1. The brief complies with the type-volume limitation of this Court's May 19, 2014 Order permitting an opening brief of up to 17,000 words because exclusive of the exempted portions it contains 16,938 words as counted by the word processing program used to prepare the brief; and

2. The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2007 in a proportionately spaced typeface: Times New Roman, font size 14.

Dated: May 23, 2014

/s/ Kathleen M. Sullivan
Kathleen M. Sullivan