Nos. 2014-1335, -1368

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

APPLE INC.,
    *Plaintiff-Cross-Appellant,*

v.

SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC.,
SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,
    *Defendants-Appellants.*

On Appeal from the United States District Court for the Northern District of California, Case No. 11-cv-01846, Hon. Lucy H. Koh

**CORRECTED BRIEF OF *AMICUS CURIAE* THE COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION IN SUPPORT OF DEFENDANTS-APPELLANTS SAMSUNG ET AL.**

Matthew Schruers
  *Counsel of Record*
Computer & Communications
  Industry Association
900 17th Street NW, Suite 1100
Washington, DC 20006
(202) 783-0070
mschruers@ccianet.org

June 3, 2014

# CERTIFICATE OF INTEREST

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Federal Circuit Rule 47.4, Matthew Schruers, counsel for *amicus curiae* the Computer & Communications Industry Association certifies the following:

1. The full name of the party represented by me is the Computer & Communications Industry Association.

2. The name of the real party in interest represented by me is the Computer & Communications Industry Association.

3. The Computer & Communications Industry Association is not a subsidiary of any corporation and has issued no stock.

4. The names of all law firms and attorneys that appeared for the party now represented by me in this proceeding are Matthew Schruers, see below.

June 3, 2014

/s/ Matthew Schruers
Vice President, Law & Policy
Computer & Communications
 Industry Association
900 17th Street NW, Suite 1100
Washington, DC 20006
(202) 783-0070
mschruers@ccianet.org

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ................................................................... iii

INTEREST OF *AMICUS CURIAE* ...........................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................2

ARGUMENT .............................................................................................2

I. The "Article of Manufacture" in Apple's Design Patents Is Not an Entire Phone ...........................................................5

II. The District Court's Interpretation of Section 289 Leads to Unjust Results ..........................................................................7

III. The District Court's Interpretation of Section 289 Would Stifle Industry by Exposing Manufacturers to Multiple Liability .................................................................................8

CONCLUSION ..........................................................................................9

CERTIFICATE OF COMPLIANCE .......................................................11

CERTIFICATE OF SERVICE .................................................................12

# TABLE OF AUTHORITIES

**CASES** *Page(s)*

*Bush & Lane Piano Co. v. Becker Bros.*,
222 F. 902 (2d Cir. 1915) ............................................................. 7, 8

*Bush & Lane Piano Co. v. Becker Bros.*,
234 F. 79 (2d Cir. 1916) ................................................................. 7

*In re Zahn*, 617 F.2d 261 (C.C.P.A. 1980) ...................................... 5

**STATUTES**

35 U.S.C. § 171 ................................................................................ 5

35 U.S.C. § 289 ......................................................................*passim*

**REGULATIONS**

37 C.F.R. § 1.153(a) ....................................................................... 6

# INTEREST OF *AMICUS CURIAE*[1]

The Computer & Communications Industry Association ("CCIA") represents over twenty companies of all sizes providing high technology products and services, including computer hardware and software, electronic commerce, telecommunications, and Internet products and services – companies that collectively generate more than $465 billion in annual revenues.[2]

---

[1] No counsel for any party authored this brief in whole or part; no such party or counsel made a monetary contribution intended to fund its preparation or submission; and no person other than *amicus* made such a contribution. All parties have consented to the filing of this brief.

[2] A list of CCIA members is available at http://www.ccianet.org/members. Appellant Samsung and Google, Inc. are CCIA members, but took no part in the preparation of this brief.

# INTRODUCTION AND SUMMARY OF ARGUMENT

The principle is straightforward: the term "article of manufacture" as used in 35 U.S.C. § 289 must refer to the article in the design patent itself, not a larger device that incorporates the article as one of its components. Were it not, a design patent covering a cup holder would entitle the patent owner to an infringer's profits for all sales of a car that includes an infringing cup holder. A car manufacturer using two separate infringing cup holders might be liable for twice its profits, and so on.

This issue is of great concern to CCIA's member companies, many of whom sell or market complex electronic devices and software products and services that incorporate many different designs. If Judge Koh's interpretation of section 289 is affirmed, CCIA's member companies could be faced with potentially massive exposure to attack using design patents. Such a rule would disproportionately penalize integrators, discouraging enterprises from bringing complex products and services to market.

# ARGUMENT

35 U.S.C. § 289 sets the standard for damages for infringing a design patent (emphases added):

> Whoever during the term of a patent for a design, without license of the owner,

> (1) applies the patented design, or any colorable imitation thereof, to any *article of manufacture* for the purpose of sale, or
>
> (2) sells or exposes for sale any *article of manufacture* to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.
>
> Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement.

The district court incorrectly identified the article of manufacture at issue as entire Samsung phones.[3] This cannot be the correct result for several reasons. First, Apple's design patents do not identify any particular electronic device. Design Patent Nos. D593,087 ('087 patent) and D618,677 ('677 patent) are directed to an outer shell of an unspecified electronic device, and Design Patent No. D604,305 ('305 patent) is directed to a display screen for a graphical user interface for an unspecified device.

Second, the interpretation of section 289 used by the district court would grant a design patent an effective monopoly over an entire smartphone based solely on certain ornamental features. Considering that nearly all of the value of a device like a smartphone comes from its functionality, this breadth of scope would transform a design patent into a sort of super-utility patent, allowing a design

---

[3] Eleven different model phones were found to infringe one or more of Design Patent Nos. D593,087, D618,677 and D604,305. Samsung's profits for those phones were computed to be $398,940,864. Opening Brief of Appellant Samsung at 35 n.3.

patentee to control an industry in a way that would be nearly impossible with utility patents.

Finally, the sheer number of potential design patents that could apply to a single smartphone exposes manufacturers to grossly unjust liability. For example, Apple has 199 active design patents entitled "Electronic device." If Samsung were sued on each of those patents separately, Samsung's potential damages would be many billions of dollars.

If the district court's interpretation of section 289 were affirmed, the result would be damaging to the entire smartphone industry, as well as manufacturing of other electronic devices. Manufacturers would have to account for the risk of excessive liability for design patent infringement, which could result in the loss of the entire profit for a product line several times over. This increased risk would increase costs and likely reduce the number of products available to the public.

Accordingly, CCIA respectfully requests that this Court vacate the lower court's determination of damages based on design patent infringement, and direct the lower court to recompute damages using the articles of manufacture identified in the design patents at issue.

I. **The "Article of Manufacture" in Apple's Design Patents is Not an Entire Phone**

There is no requirement that an award of the infringer's profits under section 289 be assessed on an entire product that is sold. Section 171 states that a design patent must be for a design for an "article of manufacture":

> Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.
>
> The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

35 U.S.C. § 171.

A design for an "article of manufacture" does not have to be embodied in the entire article depicted. *In re Zahn*, 617 F.2d 261, 268 (C.C.P.A. 1980) ("While the design must be embodied in some articles, the statute is not limited to designs for complete articles, or 'discrete' articles, and certainly not to articles separately sold…"). The entire "article of manufacture" in which the design is embodied does, however, have to be depicted in the drawings of the design patent. *Id.* at 268-69 (explaining the difference between the article being illustrated and the parts of the article which embody the claimed design).

For this reason, the "article of manufacture" in the '305 patent cannot be an entire device. The '305 patent has no illustration of any article beyond the graphical user interface itself. Moreover, the title of the '305 patent demonstrates

5

that the article of manufacture is not an entire device. The article of manufacture in the '305 patent, according to the title, is a "Graphical User Interface for a Display Screen or Portion Thereof." The title of a design patent must designate the intended article of manufacture. 37 C.F.R. § 1.153(a) ("The title of the design must designate the particular article."). Therefore it is an error to use another article (namely, a smartphone) as the basis for damages for infringing the '305 patent.

In contrast, the '087 and '677 patents do have "Electronic Device" as their title. But it would make no sense for the "article of manufacture" depicted in the '087 and '677 patents to be the entire device (including internal components). The '087 and '677 patents both expressly acknowledge that the device inside the patented case is irrelevant, and could be a "media player (e.g., music, video and/or game player), media storage device, a personal digital assistant, a communication device (e.g., cellular phone), a novelty item or toy."[4] If the type of device is irrelevant, the article of manufacture in the '087 and '677 patents must be the outer case of the device.

---

[4] This text does not appear in the '087 patent as issued. Apple, however, agreed to an examiner's amendment substituting that text into the specification, as noted by the examiner in the Notice of Allowability issued on March 24, 2009. That examiner's amendment was not included in the printed patent.

6

## II. The District Court's Interpretation of Section 289 Leads to Unjust Results

Because smartphones (and similarly complex electronic devices) provide enormous functionality, the value of a smartphone is much greater than any ornamental feature. Few would buy an empty case that looked like a smartphone but did nothing.

Yet, the district court's interpretation of section 289 allows a design patent owner to capture all of the value of the functions of a smartphone in addition to any value attributable to the infringed design. This cannot be correct, as the Second Circuit recognized nearly a century ago in the *Piano Cases*.[5]

The question in *Piano Case I* was whether the patent owner was entitled to recover the profits made on the infringing piano or just the case. The court realized that allowing the design patentee to receive the profits for the entire piano would be completely unjust:

> We are clearly of the opinion that the rule adopted, giving the owner of a design patent for a receptacle intended to hold an expensive article of manufacture the profits made on the sale of the receptacle and its contents, must certainly lead to inequitable results and cannot be sustained. Lane did not invent a piano, but a piano case; the piano could be made to fit as well in a case of entirely different design. When the patent owner is awarded the profits due to his design he receives all he is entitled to. If the rule be established that a design for a case enables the owner to collect damages for the case not only, but for the contents of the case as well, it will lead to

---

[5] *Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902 (2d Cir. 1915) ("*Piano Case I*"); *Bush & Lane Piano Co. v. Becker Bros.*, 234 F. 79 (2d Cir. 1916) ("*Piano Case II*").

7

results which shock the conscience. A design for a watch case will include the watch itself. A design for a gun case will include the gun, a design for a hat case will include the hat and so on. Indeed, it must logically follow that one who patents a new design for a cigar box may recover the profits made on the cigars which it contains. All that Lane did was to produce a design which added some new ornamental features to the old form of piano case. When he secures the profits made by the seller of that case based on the design itself, he will receive all he is entitled to.

*Piano Case I*, 222 F. at 904-05.

The same reasoning applies in this situation. A smartphone can provide all of its functions without being in a shell that infringes the '087 and '677 patents, and without a display screen that infringes the '305 patents. As noted *infra* at 6, the '087 and '677 patents both expressly acknowledge that the device inside the patented case is irrelevant, and could be a "media player (e.g., music, video and/or game player), media storage device, a personal digital assistant, a communication device (e.g., cellular phone), a novelty item or toy."

### III. The District Court's Interpretation of Section 289 Would Stifle Industry by Exposing Manufacturers to Multiple Liability

Under the district court's interpretation of section 289, infringement of a single design patent would force a manufacturer to disgorge all of its profits for any infringing device. But there are literally dozens (and perhaps many more) relevant design patents owned by Apple alone.

For example, a search of the United States Patent & Trademark Patent Full-Text and Image Database produced a list of 199 different design patents assigned

8

to Apple, each with the title "Electronic device."[6] If Apple were to sue Samsung separately for infringement of each of those patents, it could seek all of Samsung's profits for any infringing devices in each suit. Considering that Samsung's profits in this case were found to be $399 million, Samsung's potential liability would be many billions of dollars.

And this potential liability would extend to any manufacturer of electronic devices or software products or services. If a design patent for a single ornamental feature entitles the patent owner to all profits earned from any device infringing that sole feature, a patentee could strategically employ a portfolio of design patents to defeat Congress's policy choices and "receive[] all he is entitled to" many times over.

## CONCLUSION

For the foregoing reasons, *amicus* CCIA requests that this Court vacate the district court's award of damages for design patent infringement and remand with instructions to determine damages using the correct article of manufacture, *i.e.*, the external case for the '087 and '677 patents and the graphical user interface for the '305 patent.

---

[6] The search was performed on May 29, 2014, and used the following query string: TTL/("electronic device" ANDNOT (white OR adapter OR support OR holder OR fixture OR cover OR backplate OR packag$ OR front OR housing OR component OR display OR interface)) AND AN/apple AND APT/4

9

Respectfully submitted,

/s/ Matthew Schruers
  *Counsel of Record*
Computer & Communications
  Industry Association
900 17th Street NW, Suite 1100
Washington, DC 20006
(202) 783-0070
mschruers@ccianet.org

June 3, 2014

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 2,136 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the types style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/ Matthew Schruers
Computer & Communications
 Industry Association
900 17th Street NW, Suite 1100
Washington, DC 20006
(202) 783-0070
mschruers@ccianet.org

June 3, 2014

## CERTIFICATE OF SERVICE

I hereby certify, that on this 3rd day of June 2014, a true and correct copy of the foregoing Corrected Brief of *Amicus Curiae* the Computer & Communications Industry Association was timely filed electronically with the Clerk of the Court using CM/ECF, which will send notification to all counsel registered to receive electronic notices.

/s/ Matthew Schruers
Computer & Communications
 Industry Association
900 17th Street NW, Suite 1100
Washington, DC 20006
(202) 783-0070
mschruers@ccianet.org